UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| IN RE: FIRE APPARATUS ANTITRUST LITIGATION<br><br>*This Document Relates To*:<br>*Direct Purchaser Class*<br>*All Direct (Non-Class) Actions* | Case No. 2:26-md-03179-WCG<br><br>Hon. William C. Griesbach |

# Memorandum of Law in Support of AIP LLC and American Industrial Partners Capital Fund IV, LP; American Industrial Partners Capital Fund IV (Parallel), LP; AIP CF IV, LLC; AIP/CHC Holdings, LLC; and AIP/CHC Investors, LLC's Individual 12(b)(2) and 12(b)(6) Motion to Dismiss

## TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 3

I. The Parties. ........ 3

II. This Litigation. ........ 5

LEGAL STANDARD ........ 9

I. Personal Jurisdiction. ........ 9

II. Failure to State a Claim. ........ 10

ARGUMENT ........ 11

I. Plaintiffs Fail to Demonstrate That the AIP Defendants Are Subject to Personal Jurisdiction in 12 of the 13 Transferor Courts. ........ 11

A. The AIP Defendants Are Not Subject to General Personal Jurisdiction Outside of Delaware and New York. ........ 11

B. Plaintiffs Fail to Allege That the AIP Defendants Are Subject to Specific Personal Jurisdiction in Any of the Other 12 Transferor Courts. ........ 12

C. Section 12 of the Clayton Act Cannot Cure Plaintiffs' Lack of Sufficient Jurisdictional Allegations. ........ 16

II. Plaintiffs Fail to State an Antitrust Violation by Any AIP Defendant. ........ 17

A. Plaintiffs' Complaints Contain No Allegations That the AIP Defendants Themselves Took Any Action or Made Any Acquisition That Would Violate the Antitrust Laws. ........ 18

1. The Complaints Include No Allegation That the AIP Defendants Participated in a Conspiracy in Violation of Sherman Act Section 1 ........ 18

2. The Acquisitions That Are the Basis of Alleged Antitrust Violations Were Made by REV Group, Not by the AIP Defendants. ........ 19

B. Any Alleged Acts or Violations by REV Group Cannot Be Imputed to the AIP Defendants. ........ 21

1. The AIP Defendants Cannot Be Liable Based on Their Alleged "Ownership and Control" of REV Group. ...................... 23

2. Plaintiffs Fail to Allege That the AIP Defendants "Independently Participated" in REV Group's Alleged Violations. ...................... 25

C. Plaintiffs' State Law Claims Against the AIP Defendants Fail. ............... 30

D. Plaintiffs Are Not Entitled to Injunctive Relief. ...................... 32

III. Plaintiffs' Clayton Act Section 7 and Sherman Act Section 2 Claims Against the AIP Defendants Based on the Acquisitions Are Time-Barred. ......... 32

A. Plaintiffs' Section 7 and Section 2 Claims Against the AIP Defendants Did Not Accrue Within the Applicable Limitations Period. ...................... 33

B. Plaintiffs Plead No Basis for Tolling or Restarting the Statute of Limitations. ...................... 34

1. There Are No Allegations of Concealment by Any AIP Defendant. ...................... 34

2. The Challenged Acquisitions Are Not Continuing Violations. ...................... 34

CONCLUSION ...................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ....................................................................10, 12, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................10

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ....................................................................11, 19, 24

*Banxcorp v. Apax Partners, L.P.*,
2011 WL 1253892 (D.N.J. Mar. 28, 2011)...........................................................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................10

*Biocad JSC v. F. Hoffmann-La Roche*,
942 F.3d 88 (2d Cir. 2019)..................................................................................31

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
883 F. Supp. 1247 (W.D. Wis. 1995), *rev'd in part on other grounds*, 65 F.3d 1046 (7th Cir. 1995)...................................................................................20

*Matter of Bowen Transports, Inc.*,
551 F.2d 171 (7th Cir. 1977) ..............................................................................25

*Brunswick Corp. v. Riegel Textile Corp.*,
578 F. Supp. 893 (N.D. Ill. 1983), *aff'd*, 752 F.2d 261 (7th Cir. 1984) ..................34

*Cancer Found. Inc. v. Cerberus Cap. Mgmt., LP*,
559 F.3d 671 (7th Cir. 2009) ..............................................................................33

*Cargill, Inc. v. Monfort of Colo., Inc.*,
479 U.S. 104 (1986)..........................................................................................32

*Catalina Marketing Intern., Inc. v. Coolsavings.Com, Inc.*,
2003 WL 21542491 (N.D. Ill. July 3, 2003).........................................................16

*Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*,
230 F.3d 934 (7th Cir. 2000) ....................................................................9, 14, 15

*Chamberlain Group, Inc. v. Techtronic Indus. N. Am., Inc.*,
2017 WL 4269005 (N.D. Ill. Sept. 26, 2017) ......................................................10

*City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*,
92 F.4th 381 (2d Cir. 2024) ....................24

*Complete Ent. Res. LLC v. Live Nation Ent., Inc.*,
2016 WL 3457177 (C.D. Cal. May 11, 2016) ....................35

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ....................35

*Conway v. Bulk Petroleum Corp.*,
545 F. Supp. 398 (N.D. Ill. 1982) ....................34

*In re Crop Inputs Antitrust Litig.*,
172 F.4th 570 (8th Cir. 2026) ....................24

*In re Currency Conversion Fee Antitrust Litig.*,
265 F. Supp. 2d 385 (S.D.N.Y. 2003)....................23

*Dailey v. Quality Sch. Plan, Inc.*,
380 F.2d 484 (5th Cir. 1967) ....................19

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................9, 12, 13

*Dental Health Prods. Inc. v. Coleman*,
2022 WL 1611766 (E.D. Wis. May 20, 2022)....................13

*In re Digital Music Antitrust Litig.*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011)....................32

*Elec. Med. Tr. v. U.S. Anesthesia Partners, Inc.*,
2024 WL 5274650 (S.D. Tex. Sept. 27, 2024) ....................26, 28, 29, 30

*Elzeftawy v. Pernix Group, Inc.*,
477 F. Supp. 3d 734 (N.D. Ill. 2020) ....................31

*Esmark, Inc. v. N.L.R.B.*,
887 F.2d 739 (7th Cir. 1989) ....................25

*FTC v. Syngenta Crop Prot. AG*,
711 F. Supp. 3d 545 (M.D.N.C. 2024) ....................27

*FTC v. U.S. Anesthesia Partners, Inc.*,
2024 WL 2137649 (S.D. Tex. May 13, 2024) ....................20, 27, 29, 30

*Genetic Techs. Ltd. v. Interleukin Genetics Inc.*,
2010 WL 3122304 (W.D. Wis. Aug. 9, 2010)....................10

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
564 U.S. 915 (2011) .......... 12

*In re Google Generative AI Copyright Litig.*,
809 F. Supp. 3d 903 (N.D. Cal. 2025) .......... 29

*GovernmentGPT Inc. v. Axon Enterprise Inc.*,
769 F. Supp. 3d 959 (D. Ariz. 2025) .......... 17

*Gregory v. EBF & Associates, L.P.*,
595 F. Supp. 2d 1334 (S.D. Fla. 2009) .......... 15

*Hash Asset Mgmt. Ltd. v. Dma Labs, Inc.*,
2026 WL 352706 (Del. Ch. Feb. 9, 2026) .......... 14

*Hecker v. Deere & Co.*,
496 F. Supp. 2d 967 (W.D. Wis. 2007) .......... 10

*IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*,
136 F.3d 537 (7th Cir. 1998) .......... 14, 16

*Integrated Bus. Info. Serv. (Proprietary) Ltd. v. Dun & Bradstreet Corp.*,
714 F. Supp. 296 (N.D. Ill. 1989) .......... 15

*Invamed, Inc. v. Barr Lab'ys, Inc.*,
22 F. Supp. 2d 210 (S.D.N.Y. 1998) .......... 21

*Joiner v. Ryder Sys. Inc.*,
966 F. Supp. 1478 (C.D. Ill. 1996) .......... 25

*Junco v. Advocate Aurora Health*,
646 F. Supp. 3d 978 (E.D. Wis. 2022) .......... 10, 11

*KM Enters., Inc. v. Global Traffic Techs., Inc.*,
725 F.3d 718 (7th Cir. 2013) .......... 14

*Lantus Direct Purchaser Antitrust Litig.*, 2022 WL 4239367 (D. Mass. Aug. 17, 2022), *report and recommendation adopted*, 2022 WL 4237276 (D. Mass. Sept. 14, 2022) .......... 26

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
847 F.3d 1221 (10th Cir. 2017) .......... 26

*Lun v. Milwaukee Elec. Tool Co.*,
2025 WL 3443536 (E.D. Wis. Dec. 1, 2025) .......... 15

*McCray v. Fid. Nat. Title Ins. Co.*,
636 F. Supp. 2d 322 (D. Del. 2009), *aff'd*, 682 F.3d 229 (3d Cir. 2012) .......... 23, 26

*Mesenbring v. Rollins, Inc.*,
105 F.4th 981 (7th Cir. 2024) ........................................................................18, 22, 25

*Midwestern Mach. Co. v. Nw. Airlines, Inc.*,
392 F.3d 265 (8th Cir. 2004) ..........................................................................33, 35

*Mitchael v. Intracorp, Inc.*,
179 F.3d 847 (10th Cir. 1999) ........................................................................26, 27

*In re Moll Indus., Inc.*,
454 B.R. 574 (Bankr. D. Del. 2011) .................................................................22

*Musharbash v. U.S. Anesthesia Partners, Inc.*,
No. 4:25-cv-00116, Order (ECF No. 90)...................................................28, 29, 30

*In re Niaspan Antitrust Litig.*,
42 F. Supp. 3d 735 (E.D. Pa. 2014) ...................................................................34

*O'Gorman v. City of Chicago*,
777 F.3d 885 (7th Cir. 2015) ............................................................................33

*Osterhaus Pharmacy, Inc. v. Express Scripts, Inc.*,
768 F. Supp. 3d 1186 (W.D. Wash. 2025)...........................................................23

*In re Outpatient Med. Ctr. Emp. Antitrust Litig.*,
630 F. Supp. 3d 968 (N.D. Ill. 2022) .............................................................23, 25

*In re Pa. Title Ins. Antitrust Litig.*,
648 F. Supp. 2d 663 (E.D. Pa. 2009) .............................................................23, 27

*In re Packaged Seafood Prods. Antitrust Litig.*,
2022 WL 836951 (S.D. Cal. Mar. 21, 2022) .......................................................27

*Pro Music Rts., LLC v. Apple, Inc.*,
2020 WL 7406062 (D. Conn. Dec. 16, 2020)........................................................31

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
338 F.3d 773 (7th Cir. 2003) ............................................................................10

*Reapers Hockey Ass'n, Inc. v. Amateur Hockey Ass'n Ill., Inc.*,
412 F. Supp. 3d 941 (N.D. Ill. 2019) .................................................................32

*Sabol v. PayPal Holdings, Inc.*,
2024 WL 3924686 (N.D. Cal. Aug. 23, 2024) .....................................................31

*Sciannella v. AstraZeneca UK Ltd.*,
2024 WL 3327765 (Del. Ch. July 8, 2024), *aff'd*, 340 A.3d 544 (Del. 2025).........................25

*Shat Acres Highland Cattle, LLC, v. Am. Highland Cattle Ass'n*,
2023 WL 7089906 (D. Colo. Oct. 26, 2023) ....................17

*Shuffle Tech Int'l, LLC v. Sci. Games Corp.*,
2015 WL 5934834 (N.D. Ill. Oct. 12, 2015)....................33, 35

*Shujauddin v. Berger Bldg. Prods., Inc.*,
2019 WL 9102043 (E.D. Pa. June 18, 2019) ....................24

*Spanish Broad. Sys. of Fla., Inc v. Clear Channel Commc'ns, Inc.*,
376 F.3d 1065 (11th Cir. 2004) ....................27

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993)....................21

*State v. Waste Mgmt. of Wisconsin, Inc.*,
81 Wis. 2d 555 (1978) ....................31

*Taube v. Hartford Fin. Servs. Grp. Inc.*,
2021 WL 633010 (S.D. Ill. Feb. 18, 2021) ....................28

*Taurus IP v. DaimlerChrysler Corp.*,
519 F. Supp. 2d 905 (W.D. Wis. 2007) ....................14

*In re Testosterone Replacement Therapy Litig.*,
136 F. Supp. 3d 968 (N.D. Ill. 2015) ....................10

*In re Testosterone Replacement Therapy Litig.*,
164 F. Supp. 3d 1040 (N.D. Ill. 2016) ....................9, 11

*Thill Sec. Corp. v. New York Stock Exch.*,
283 F. Supp. 239 (E.D. Wis. 1968)....................17

*Top Rank, Inc. v. Haymon*,
2015 WL 9948936 (C.D. Cal. Oct. 16, 2015)....................21, 25

*Trevino v. Merscorp, Inc.*,
583 F. Supp. 2d 521 (D. Del. 2008)....................22

*United States v. Bestfoods*,
524 U.S. 51 (1998)....................22, 24, 28

*United States v. Sikorsky Aircraft Corp.*,
2023 WL 6883637 (E.D. Wis. Oct. 17, 2023) ....................28

*United Wis. Grain Producers LLC v. Archer Daniels Midland Co.*,
144 F.4th 976 (7th Cir. 2025) ....................20

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 12

*Wallace v. Wood*,
752 A.2d 1175 (Del. Ch. 1999) .......... 14

*In re Wellpath SF Holdco, LLC*,
2025 WL 3165423 (Bankr. S.D. Tex. Nov. 12, 2025) .......... 29

*Whylie Eye Care Ctr. v. Vision Serv. Plain-Cent. Region, Inc.*,
1991 WL 83835 (N.D. Ill. May 10, 1991) .......... 17

*Z Techs. Corp. v. Lubrizol Corp.*,
753 F.3d 594 (6th Cir. 2014) .......... 33, 35

**Statutes**

15 U.S.C. § 1 .......... 6

15 U.S.C. § 2 .......... 6

15 U.S.C. § 15b .......... 33

15 U.S.C. § 18 .......... 7, 19

15 U.S.C. § 22 .......... 17

N.Y. Gen. Bus. Laws § 340(5) .......... 32

**Rules**

Fed. R. Civ. P. 12(b)(2) .......... 9

Fed. R. Civ. P. 12(b)(6) .......... 2, 10, 17, 18, 33

**Other Authorities**

REV Group, *Amended & Restated Shareholders Agreement* (2017),
https://www.sec.gov/
Archives/edgar/data/1687221/000119312517006976/d251368dex101.htm .......... 5

## INTRODUCTION

This case is about the production and sale of fire trucks and fire apparatus. But the Plaintiffs have sued the AIP Defendants, separate entities with distinct roles in the business of investment management, that never made or sold fire trucks or any other relevant products.[1] In fact, the Complaints in this case fail to supply any fact-based allegations aimed directly at the AIP Defendants themselves or that identify any anticompetitive actions taken or acquisitions made by the AIP Defendants. Plaintiffs do not allege that the AIP Defendants conspired with anyone or participated in any anticompetitive conduct. Indeed, the AIP Defendants did not even participate in any relevant market.

Plaintiffs nonetheless seek to rope the AIP Defendants into this litigation because, nearly two decades ago, one of the AIP Defendants (AIP Fund IV) invested in REV Group, the corporate parent of certain fire apparatus manufacturers, and ***REV Group (not any AIP Defendant)*** went on to acquire other manufacturers. But the imposition of liability upon a separate corporate entity (here, each of the AIP Defendants) for another's alleged conduct is inconsistent with a core principle of American corporate law that universally recognizes the protections afforded to separate corporate entities. Plaintiffs have not pleaded any recognized exception to this bedrock principle—such as independent participation in the alleged anticompetitive conduct, veil piercing,

---

[1] "AIP Defendants" refers to (A) the investment funds and a holding entity that invested in REV Group (American Industrial Partners Capital Fund IV LP; American Industrial Partners Capital Fund IV (Parallel), LP; and AIP/CHC Holdings, LLC, respectively), along with the general partner (AIP CF IV, LLC) and managing member (AIP/CHC Investors, LLC) of those entities (collectively, the "AIP Investment Funds"); and (B) AIP LLC, a private equity firm that provided investment advisory services to the AIP Investment Funds, and did ***not*** have an ownership interest in REV Group. Where relevant, AIP LLC will be referred to separately from the other AIP Defendants. "REV Group" refers to REV Group, LLC (formerly REV Group, Inc. and, prior to that, Allied Specialty Vehicles). "Plaintiffs" refers to the Direct Purchaser Plaintiffs and the Direct (Non-Class) Action Plaintiffs.

or fraud—and no such exception applies here. Plaintiffs' allegations only reference acts by some of the AIP Defendants that any substantial and serious financial investor would take: appointing members of REV Group's board and entering into a standard shareholders agreement that granted the AIP Investment Funds approval rights (essentially veto rights) over certain specifically defined material transactions and corporate actions. Based on well-settled legal authority, such allegations are insufficient to state a claim, and the AIP Defendants should be dismissed from these cases.

Further to the above, Plaintiffs' claims based on allegedly anticompetitive acquisitions fail to clear a fundamental hurdle: they are independently time-barred and should be dismissed because every challenged acquisition occurred outside the applicable limitations period.

Separately, Plaintiffs fail to establish personal jurisdiction over the AIP Defendants in all but one of the underlying actions. The AIP Defendants are all based in New York and organized under Delaware law. They lack minimum contacts sufficient for personal jurisdiction in 12 of the 13 districts from which the cases now centralized in this MDL originate.[2] The Direct (Non-Class) Action Plaintiffs nonetheless allege personal jurisdiction in each of those 12 underlying cases based primarily on unrelated investments by the AIP Defendants in unrelated companies and disparate industries (including medical devices, metallurgy, and software solutions for the global apparel industry) in those 12 jurisdictions. Longstanding and controlling precedent confirms that such allegations are insufficient to establish general jurisdiction because the AIP Defendants are

[2] The AIP Defendants acknowledge that general jurisdiction exists over them in New York. Thus, this Court has uncontested jurisdiction to address the AIP Defendants' challenge under Federal Rule of Civil Procedure 12(b)(6) as it pertains to *City of Yonkers v. REV Group, Inc.*, which was originally filed in the Southern District of New York. If the Court does not dismiss Plaintiffs' claims in *City of Yonkers* and the other actions against the AIP Defendants under Rule 12(b)(6), pre-trial proceedings in this Court would be appropriate for *City of Yonkers*, the one case over which personal jurisdiction attached. To that end, the AIP Defendants seek a ruling that, if an eventual trial were to be necessary, the AIP Defendants could be tried on these claims only in New York or Delaware (absent their consent to be tried in another jurisdiction).

not "at home" in any of those states. Plaintiffs' allegations are also insufficient to establish specific jurisdiction because none of the purported conduct at issue in this case arises out of or is in any manner connected to those unrelated investments. As a result, the AIP Defendants must also be dismissed from all but one of the underlying cases based on the separate ground that the transferor courts lack personal jurisdiction.

## BACKGROUND

### I. The Parties.

AIP LLC is a private equity asset management firm organized under the laws of Delaware and headquartered in New York. (DPPC ¶ 45; NCAPC ¶ 69.[3]) AIP LLC does not manufacture fire trucks or any other fire apparatus. (NCAPC ¶ 72.) AIP LLC does not invest its own capital at all (*id.* ¶ 70), and is not alleged to have held any ownership interest in any fire apparatus manufacturer (DPPC ¶¶ 45-47 (alleging that the funds, but not AIP LLC, held ownership interests in REV Group); NCAPC ¶¶ 70, 72-74 (alleging only that individuals affiliated with AIP LLC held positions with funds invested in REV Group)). Rather, like other private equity firms, AIP LLC provides investment advisory services to separate but affiliated investment funds. (NCAPC ¶¶ 71-72.) Each of the AIP Investment Funds is a Delaware limited liability company or a Delaware limited partnership headquartered in New York. (DPPC ¶¶ 46-49; NCAPC ¶¶ 71-72.)[4] Like AIP LLC, none of the AIP Investment Funds manufactured or sold fire trucks or any other fire apparatus.

[3] "DPPC" refers to the Direct Purchaser Plaintiffs' First Amended Consolidated Class Action Complaint, filed May 22, 2026. (ECF No. 59.) "NCAPC" refers to the Direct (Non-Class) Action Plaintiffs' Consolidated Amended Complaint, filed May 20, 2026. (ECF No. 53.) "Complaints" refers to the DPPC and the NCAPC.

[4] For the Court's convenience, the AIP Defendants are reflected on the structure chart attached hereto as Appendix A.

Rather, the Complaints allege that, in 2008, one of the funds whose asset manager was AIP LLC purchased a single fire apparatus manufacturer called E-ONE. (DPPC ¶ 98.) Two years later, in 2010, E-ONE combined with other companies to form Allied Specialty Vehicles, which was later, in 2015, renamed REV Group. (DPPC ¶¶ 100, 102; NCAPC ¶¶ 6-7.) Throughout this entire period, REV Group has been a separate legal entity with its own management and employees separate and apart from any of the AIP Defendants. (DPPC ¶¶ 30, 45-49; NCAPC ¶¶ 63, 69-72.) Over time, REV Group grew through acquisitions of fire apparatus manufacturers other than E-ONE, including, as alleged: Kovatch Mobile Equipment Corp. ("KME") in 2016, Ferrara Fire Apparatus, Inc. ("Ferrara") in 2017, and Spartan Emergency Response ("Spartan") in 2020. (DPPC ¶¶ 105, 109, 113; NCAPC ¶¶ 7-8, 259-60.) Each of these acquisitions was made by ***REV Group***, not by AIP LLC or any other AIP Defendant. (DPPC ¶¶ 105, 109, 113 & 114 Figure 1 (listing "***REV Group's*** Acquisitions of Fire Apparatus Manufacturers") (emphasis added); NCAPC ¶ 8 ("***REV Group*** combined E-ONE, KME, Ferrara, and . . . Spartan under common ownership and control) (emphasis added).) For its part, REV Group has not made any acquisitions since 2020. (*Id.*)

In January 2017, REV Group started trading as a public company on the New York Stock Exchange. (DPPC ¶¶ 30, 106; NCAPC ¶ 7.) In connection with REV Group's initial public offering ("IPO"), the AIP Investment Funds entered into a shareholders agreement with REV Group. (DPPC ¶¶ 107-08; NCAPC ¶ 75.) That shareholders agreement afforded the AIP Investment Funds customary shareholder rights, including the right to designate a majority of REV Group's directors and to approve certain specified major corporate actions of REV Group, among them "mergers or asset sales involving more than 15% of REV Group's consolidated assets or

revenues,"[5] *i.e.*, a right to veto such large mergers or asset sales (as opposed to requiring that any particular merger or sale occur). (*Id.*) Nothing in the shareholders agreement provided that the shareholders could determine REV Group's prices or output, manage REV Group dealers, exchange competitively sensitive information, or negotiate or sign acquisition agreements—and there are no factual allegations that any AIP Defendant ever took such actions. (DPPC ¶¶ 107-08, 109, 113, 151-72; NCAPC ¶¶ 7-8, 75, 150-59, 259-71.) Moreover, the shareholders agreement specified that the AIP Defendants' customary governance rights would terminate when they no longer held at least 15% of REV Group's outstanding common stock. (DPPC ¶ 107; NCAPC ¶ 75.) From the initial public offering in early 2017 through 2020, the AIP Investment Funds collectively held between 52.7% and 53.3% of REV Group's common stock. (DPPC ¶ 119.)

None of the AIP Defendants has owned a majority stake in REV Group since 2021. (*Id.*) More specifically, from 2021 to 2024, following a secondary public offering by REV Group, the AIP Investment Funds' ownership percentages fluctuated between 42.7% and 46.5%. (*Id.* ¶¶ 118-19.) By 2024, the AIP Investment Funds had entirely exited their investment in REV Group, and their governance rights were terminated. (*Id.* ¶¶ 119-20)

## II. This Litigation.

Purchasers of fire trucks and fire apparatus, alleging antitrust violations, filed complaints in federal courts nationwide. The purchasers' complaints were transferred to this Court by the Judicial Panel on Multidistrict Litigation on April 3, 2026, for coordinated or consolidated pre-trial proceedings. (*See, e.g.*, Transfer Order, ECF No. 1.)

---

[5] REV Group, *Amended & Restated Shareholders Agreement* (2017), https://www.sec.gov/Archives/edgar/data/1687221/000119312517006976/d251368dex101.htm.

Three distinct groups of plaintiffs have now filed consolidated complaints: (1) the Direct Purchaser Plaintiffs, representing themselves and a proposed class of direct purchasers of fire trucks and apparatus either from REV Group or from one of two other manufacturers, Oshkosh or Rosenbauer, since January 1, 2016 (DPPC ¶ 1); (2) the Direct (Non-Class) Action Plaintiffs, who originally filed individual complaints in 13 federal district courts around the country[6] (NCAPC ¶¶ 23-62); and (3) the Indirect Purchaser Plaintiffs, representing themselves and a proposed class of others who, since January 1, 2016, purchased fire trucks and apparatus manufactured by subsidiaries of REV Group or Oshkosh, or by Rosenbauer "from a retailer, dealer or other method that does not include direct purchases from the manufacturers" (IPPC ¶ 1).[7]

The Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs bring claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, for an alleged conspiracy among fire apparatus manufacturers to raise prices nationwide. (DPPC ¶¶ 275-81; IPPC ¶¶ 338-56.) The Direct Purchaser Plaintiffs and the Direct (Non-Class) Action Plaintiffs bring claims for attempted monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2. (DPPC ¶¶ 298-303; NCAPC ¶¶ 649-58.) All three complaints allege unlawful mergers and acquisitions among fire apparatus

[6] Those 13 "transferor" courts are the Northern District of California, the Central District of California, the Southern District of California, the District of Oregon, the District of Connecticut, the District of Utah, the Eastern District of Pennsylvania, the District of Arizona, the District of New Mexico, the Southern District of Iowa, the District of Maryland, the Eastern District of Wisconsin, and the Southern District of New York. Pursuant to the Parties' agreement, Defendants' motions to dismiss address all operative complaints pending in the MDL as of July 8, 2026, and three additional complaints that had been filed, but not yet transferred into the MDL, as of that date. (ECF No. 124, at 1 n.1.)

[7] "IPPC" refers to the Indirect Purchaser Plaintiffs' Second Amended Consolidated Class Action Complaint, filed June 16, 2026. (ECF No. 108.)

manufacturers under Section 7 of the Clayton Act, 15 U.S.C. § 18.[8] (DPPC ¶¶ 282-86; NCAPC ¶¶ 471-78; IPPC ¶¶ 357-62.)

The Indirect Purchaser Plaintiffs do not assert any claims against any of the AIP Defendants. The Direct Purchaser Plaintiffs and the Direct (Non-Class) Action Plaintiffs, however, seek to attribute liability to the AIP Defendants for REV Group's purported antitrust violations based on the AIP Defendants' alleged ownership, "direction," and "control" of REV Group. (*E.g.*, DPPC ¶ 53; NCAPC ¶ 75.) To that end, in addition to pointing to the shareholders agreement, Plaintiffs assert generic, conclusory allegations regarding "AIP"—a term Plaintiffs define to include all of the AIP Defendants without differentiating each separate entity's purported involvement. (DPPC ¶ 50; NCAPC ¶ 76.) Plaintiffs allege that this "AIP" exercised "substantial influence" over REV Group's operations and strategy (DPPC ¶ 43); "describes itself as 'operationally-minded' and emphasizes its collaborative, hands-on involvement in the businesses it acquires" (*id.* ¶ 52; NCAPC ¶ 69); "provided funding to enhance, extend, and ensure REV Group's market power and obtained financial rewards as a result" (DPPC ¶ 57); "exercised control over and management of REV Group," including "formulat[ing] and direct[ing] its acquisitions" (NCAPC ¶¶ 75-76); and "manages [its] acquired companies to 'significantly increase' earnings by implementing . . . a 'detailed action plan' that AIP develops and implements 'in partnership with management,'" (DPPC ¶ 97).

---

[8] The Direct (Non-Class) Purchaser Plaintiffs and Indirect Purchaser Plaintiffs also bring state-law claims, which are addressed by the motions to dismiss filed by other Defendants. The AIP Defendants adopt and incorporate those motions as relevant. *See* Memorandum in Support of Defendants' Joint Motion to Dismiss Non-Class Plaintiffs' Complaint, Part VIII & App. A; Memorandum of Law in Support of Defendants' Joint Motion to Dismiss the Indirect-Purchaser Plaintiffs' State Law Claims; *see also* Memorandum of Law in Support of Defendants' Joint Motion to Dismiss Class Plaintiffs' Consolidated Amended Complaints; Memorandum in Support of Defendants' Joint Motion to Dismiss for Lack of Antitrust Standing.

Importantly, neither Complaint alleges that the AIP Defendants participated in (or even knew about) a supposed scheme to exchange information through the Fire Apparatus Manufacturers Association ("FAMA") or had any communications with any "Manufacturer Defendants" other than REV Group (the parent entity of certain manufacturers). Nor, again, does either Complaint allege that the AIP Defendants manufactured or sold fire trucks or other apparatus. The Direct Purchaser Plaintiffs even concede (as they must) that none of REV Group's acquisitions of fire apparatus manufacturers was made by any of the AIP Defendants. (DPPC ¶¶ 105, 109, 113.)

Likewise, Plaintiffs' allegations related to the transferor courts' purported personal jurisdiction over the AIP Defendants rely heavily on the AIP Defendants' alleged control over REV Group and ***not*** on the AIP Defendants' own actions taken in or their presence in those jurisdictions. The Direct (Non-Class) Action Plaintiffs include conclusory allegations (1) that the AIP Defendants "exercised control and/or management over REV Group," and that (a) REV Group sells fire apparatus in the districts, or (b) in the case of the Eastern District of Wisconsin, is headquartered in the district (NCAPC ¶¶ 85, 92); and (2) that the AIP Defendants "have acquired, and exercised control and/or management over" different companies in industries entirely unrelated to fire apparatus and this litigation, ranging from a medical device company to a flexographic and digital printing firm (*id.* ¶¶ 85-94). The Direct Purchaser Plaintiffs' jurisdictional allegations similarly amount only to conclusory contentions that (1) "AIP maintained substantial operational control over REV Group" and "[a]cting through REV Group, AIP . . . sold fire apparatus . . . in Wisconsin" (DPPC ¶¶ 53, 63); (2) "[i]n 2016, AIP moved REV Group's headquarters to Milwaukee, Wisconsin" (*id.* ¶ 61); (3) "AIP . . . owned and managed" two unrelated companies in unrelated industries headquartered in Wisconsin (*id.* ¶ 59); and (4) "AIP

currently holds assets located in Wisconsin and/or continues to conduct business in Wisconsin" (*id*. ¶ 62).[9]

## LEGAL STANDARD

### I. Personal Jurisdiction.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that the Court has personal jurisdiction. *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 939 (7th Cir. 2000). An MDL Court's jurisdiction is derivative of the transferor court's jurisdiction. *In re Testosterone Replacement Therapy Litig.*, 164 F. Supp. 3d 1040, 1045 (N.D. Ill. 2016). If the transferor court lacks jurisdiction, so does the MDL Court. *Id*.

The Due Process Clause of the Fourteenth Amendment limits the personal jurisdiction of courts over out-of-state defendants*. See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). A plaintiff can bring an out-of-state defendant into a foreign court only "if the defendant has certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 126 (citation modified). Two forms of personal jurisdiction satisfy that standard: general personal jurisdiction and specific personal jurisdiction. A court can exercise general personal jurisdiction only when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 139. "Specific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the

---

[9] Plaintiffs have had notice of the AIP Defendants' intention to move for lack of personal jurisdiction since at least January 16, 2026, when some of the AIP Defendants filed an opposition on jurisdictional grounds to the City of Revere's motion to transfer the *Revere* Action from the District of Massachusetts to the Eastern District of Wisconsin. (ECF No. 100, *City of Revere v. AIP LLC et al*., Case No. 1:25-cv-13462 (D. Mass. Jan. 16, 2026).)

proposed forum state." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (emphasis in original).

"[D]ue process . . . requires that each defendant's contacts with the forum state be assessed individually." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003). For that reason, jurisdictional allegations that lump multiple defendants together without pleading each individual defendant's jurisdictional contacts are insufficient. *Chamberlain Group, Inc. v. Techtronic Indus. N. Am., Inc.*, 2017 WL 4269005, at *2-3 (N.D. Ill. Sept. 26, 2017). Nor can plaintiffs "rely on conclusory allegations unsupported by factual assertions" to make a prima facie showing of personal jurisdiction. *In re Testosterone Replacement Therapy Litig.*, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015) (citation modified). Instead, plaintiffs must provide "specific allegations" to "show[] that exercising personal jurisdiction . . . would be appropriate." *Genetic Techs. Ltd. v. Interleukin Genetics Inc.*, 2010 WL 3122304, at *2 (W.D. Wis. Aug. 9, 2010).

## II. Failure to State a Claim.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Hecker v. Deere & Co.*, 496 F. Supp. 2d 967, 971 (W.D. Wis. 2007) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In evaluating a Rule 12(b)(6) motion, courts "should engage in a two-part analysis." *Junco v. Advocate Aurora Health*, 646 F. Supp. 3d 978, 982 (E.D. Wis. 2022). "First, the court must accept the well-pleaded facts in the complaint as true while separating out legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citation modified). After

"excising the allegations not entitled to the presumption of truth," the court then determines whether the fact-based allegations that remain "plausibly suggest an entitlement to relief." *Id.* (citation modified).

As with jurisdictional allegations, group pleading and allegations that lump multiple defendants together are impermissible under Rule 12(b)(6). *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Liability is personal. . . . A complaint based on a theory of collective responsibility must be dismissed.").

## ARGUMENT

### I. Plaintiffs Fail to Demonstrate That the AIP Defendants Are Subject to Personal Jurisdiction in 12 of the 13 Transferor Courts.

In this multidistrict litigation, this Court derives its jurisdiction from each of the underlying transferor courts. *See In re Testosterone Replacement Therapy Litig.*, 164 F. Supp. 3d at 1045. But 12 of the 13 transferor courts have no general or specific personal jurisdiction over the AIP Defendants. The AIP Defendants are subject to general personal jurisdiction only in Delaware (where no cases have been filed) and New York. The 12 transferor courts outside New York lack ***specific*** personal jurisdiction over the AIP Defendants because this litigation does not arise out of any of the AIP Defendants' alleged activities in the states where those courts sit. Nor can Plaintiffs save their deficient jurisdictional allegations by invoking Section 12 of the Clayton Act. The statute authorizes nationwide service of process in antitrust actions ***exclusively against corporations***, ***not*** limited liability companies ("LLCs") or limited partnerships ("LPs") such as the AIP Defendants. Accordingly, the AIP Defendants must be dismissed from all cases filed outside New York.

#### A. The AIP Defendants Are Not Subject to General Personal Jurisdiction Outside of Delaware and New York.

A court has general personal jurisdiction over a defendant only "when [the defendant's] affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home

in the forum State." *Daimler*, 571 U.S. at 127. In all but the most "exceptional case[s]," a company is "at home" only in the states where it is incorporated and where it maintains its principal place of business. *Id.* at 138-39 & n.19. As Plaintiffs allege, the AIP Defendants are organized in Delaware and have their principal places of business in New York. (DPPC ¶¶ 45-49; NCAPC ¶¶ 69, 71-72.) Therefore, the AIP Defendants are subject to general personal jurisdiction only in those two states. This is not an exceptional case in which Plaintiffs have alleged that the AIP Defendants' contacts with some state other than Delaware or New York are so systematic and continuous that they are essentially at home there. At most, Plaintiffs have alleged that some of the AIP Defendants invested in discrete businesses operating in other states or held limited, unspecified assets located in other states. (DPPC ¶ 62; NCAPC ¶¶ 85-94.) Those limited contacts do not confer general personal jurisdiction outside Delaware (again, where no case has been filed) and New York. *See Daimler*, 571 U.S. at 123, 138-39 (rejecting "exorbitant exercise[]" of general personal jurisdiction over defendant in forum state even though defendant's subsidiary had multiple facilities, including a regional office, and made substantial sales in that state).

### B. Plaintiffs Fail to Allege That the AIP Defendants Are Subject to Specific Personal Jurisdiction in Any of the Other 12 Transferor Courts.

A court has specific personal jurisdiction over an out-of-state defendant only when (1) the "defendant *himself*" creates contacts with the forum state, *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis in original); and (2) the suit "arises out of or relates to the defendant's contacts with the forum," *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 923-24 (2011) (citation modified). In other words, the only contacts relevant for specific personal jurisdiction are those that the defendant itself creates ***and*** "that [are] related to [the defendant's] allegedly unlawful activity." *Advanced Tactical*, 751 F.3d at 801.

Here, Plaintiffs purport to demonstrate specific jurisdiction by alleging two general categories of contacts by the AIP Defendants in the 12 states at issue: that (1) some of the AIP Defendants invested in separate and unrelated businesses located in those states (NCAPC ¶¶ 85-94); and (2) "the AIP Defendants . . . exercised control and/or management over REV Group, which sells fire apparatuses" in those states (*id.* ¶ 85). Neither category, nor the combination of the two, is sufficient to establish specific personal jurisdiction over any AIP Defendant.

First, Plaintiffs' causes of action do not arise out of the AIP Defendants' alleged investments in different companies, in entirely unrelated industries, that happen to be located in the same state as a transferor court. Specific jurisdiction exists only when a plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Daimler,* 571 U.S. at 127 (citation modified). But Plaintiffs' claims regarding the manufacture and sale of fire apparatus in no way "arise out of" the AIP Defendants' investments in unrelated companies, such as "a leading provider of lubricants and distributor of less-than-truckload fuel"; "a major paint and architectural coatings business"; "an end-to-end engineering firm"; "a leading provider of integrated hardware and software solutions for the global apparel industry"; and "a metallurgy manufacturer." (NCAPC ¶¶ 86-94.) Accordingly, the Court should reject Plaintiffs' attempt to bootstrap specific jurisdiction over the AIP Defendants based on contacts unrelated to this suit. *See, e.g.*, *Dental Health Prods. Inc. v. Coleman*, 2022 WL 1611766, at *3 (E.D. Wis. May 20, 2022) (unrelated contacts with forum state insufficient where plaintiff did not offer any evidence of "litigation-specific conduct" in forum state).

Plaintiffs' allegations regarding "AIP['s] . . . control over and management of REV Group" (NCAPC ¶ 75) fare no better. "[C]onstitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities

are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Central States*, 230 F.3d at 943. In other words, the "activities of a subsidiary may suffice to assert jurisdiction over the parent" only "if there is some basis for piercing the corporate veil." *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 733 (7th Cir. 2013); *accord IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998).

Plaintiffs allege none of the exceptional facts necessary to pierce the corporate veil.[10] The Complaints lack any allegation that any of the AIP Investment Funds, their separately organized investment advisor AIP LLC, or REV Group disregarded corporate formalities, failed to keep corporate records, intermingled assets, or conducted themselves in any other manner to trigger veil piercing under governing Delaware law. Instead, the allegations reflect nothing beyond "an ordinary parent-subsidiary relationship that observes corporate formalities," and the contacts of the subsidiary therefore cannot create personal jurisdiction for the parent. *KM Enters.*, 725 F.3d at 733. Indeed, Plaintiffs' allegations, as well as the SEC filings incorporated by reference in the Complaints, are consistent with a typical major investor relationship, and are insufficient to attribute REV Group's jurisdictional contacts to the AIP Defendants. *See, e.g.*, *IDS*, 136 F.3d at 540 (affirming grant of motion to dismiss for lack of personal jurisdiction, holding that

[10] Courts generally look to the state of incorporation or formation—here, Delaware (DPPC ¶¶ 45-49; NCAPC ¶¶ 69, 71-72)—for the law regarding when the corporate form can be disregarded. *Taurus IP v. DaimlerChrysler Corp*., 519 F. Supp. 2d 905, 919 (W.D. Wis. 2007). Under Delaware law, veil piercing requires that "the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999). "In determining whether veil piercing is appropriate, the Court may consider (1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *Hash Asset Mgmt. Ltd. v. Dma Labs, Inc.*, 2026 WL 352706, at *7 (Del. Ch. Feb. 9, 2026) (citation modified). The Complaints allege zero facts to support any one of these factors, let alone that the AIP Defendants created or used REV Group for the purpose of defrauding Plaintiffs in their purchase of fire trucks.

"[p]arents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent" but are not subject to personal jurisdiction solely on that basis); *Central States*, 230 F.3d at 945 (affirming grant of motion to dismiss for lack of personal jurisdiction, "adopt[ing] the rule that a corporate parent may provide administrative services for its subsidiary in the ordinary course of business without calling into question the separateness of the two entities for purposes of personal jurisdiction"); *Lun v. Milwaukee Elec. Tool Co.*, 2025 WL 3443536, at *4 (E.D. Wis. Dec. 1, 2025) (granting motion to dismiss for lack of personal jurisdiction where parent company's employees allegedly "manage[d] supply chain" for subsidiary); *Integrated Bus. Info. Serv. (Proprietary) Ltd. v. Dun & Bradstreet Corp.*, 714 F. Supp. 296, 300-01 (N.D. Ill. 1989) (granting motion to dismiss for lack of personal jurisdiction over parent company of in-forum subsidiary despite overlapping executives and directors).

Those deficiencies doom Plaintiffs' assertions of specific personal jurisdiction over each of the AIP Defendants, but the deficiencies are particularly pronounced as to AIP LLC. Unlike the AIP Investment Funds, AIP LLC is not even alleged to have invested in REV Group, either directly or as a general partner or managing member of a fund. (DPPC ¶¶ 45-47; NCAPC ¶¶ 69-72.) *See, e.g.*, *Gregory v. EBF & Associates, L.P.*, 595 F. Supp. 2d 1334, 1340-41 (S.D. Fla. 2009) (no personal jurisdiction where defendant had "absolutely no ownership interest in" entity with asserted jurisdictional contacts).

For the same reasons, the Direct Purchaser Plaintiffs' focus on REV Group's contacts with Wisconsin do not establish the existence of personal jurisdiction over the AIP Defendants in Wisconsin (as a state with a transferor court).[11] In addition to generalized and conclusory

[11] As noted above in footnote 2, the AIP Defendants acknowledge that pre-trial proceedings, including ruling on the AIP Defendants' 12(b)(6) motion, are appropriate in this Court with respect

allegations about ownership and control of REV Group (DPPC ¶ 53; NCAPC ¶ 92), the Direct Purchaser Plaintiffs baldly allege that, a decade ago, "AIP moved REV Group's headquarters to Milwaukee, Wisconsin" (DPPC ¶ 61). Plaintiffs provide no more detail and do not specify which of the AIP Defendants supposedly relocated the headquarters or how. As explained above, parent companies can "control, direct and supervise" a subsidiary without creating personal jurisdiction in the subsidiary's home forum. *IDS*, 136 F.3d at 540. This includes taking action like moving a subsidiary's headquarters. *See, e.g.*, *Catalina Marketing Intern., Inc. v. Coolsavings.Com, Inc.*, 2003 WL 21542491, at *3-4 (N.D. Ill. July 3, 2003) (no veil piercing and thus no personal jurisdiction despite allegations that parent company exercised day-to-day control over in-forum subsidiary, coordinated banking arrangements, had overlapping boards of directors, and caused subsidiary to change its place of incorporation). In any event, Plaintiffs' antitrust claims relate to the manufacture and sale of fire trucks; they do not arise out of a relocation of REV Group's headquarters ten years ago. Because "[s]pecific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state," *Advanced Tactical*, 751 F.3d at 801 (emphasis in original), that allegation cannot support the assertion of jurisdiction by the Wisconsin transferor court over the AIP Defendants. And neither can allegations that the AIP Defendants held unrelated and unspecified assets and conducted unrelated and unspecified business in Wisconsin. (DPPC ¶ 62; NCAPC ¶ 92.)

### C. Section 12 of the Clayton Act Cannot Cure Plaintiffs' Lack of Sufficient Jurisdictional Allegations.

Section 12 of the Clayton Act does not authorize personal jurisdiction over any of the AIP Defendants. The statute allows for nationwide service of process in any "suit, action, or proceeding

---

to the single case originally filed in New York (*City of Yonkers v. Rev Group, Inc. et al.*, No. 7:26-cv-03894 (S.D.N.Y. May 11, 2026), *see* ECF No. 92).

under the antitrust laws against a ***corporation***." 15 U.S.C. § 22 (emphasis added). And Section 12 is strictly construed to reach only ***corporations*** and ***not*** limited liability companies or partnerships like each of the AIP Defendants. *See, e.g.*, *Thill Sec. Corp. v. New York Stock Exch.*, 283 F. Supp. 239, 242 (E.D. Wis. 1968) ("[I]t is clear that [Section 12] . . . applies only to corporations."); *Shat Acres Highland Cattle, LLC, v. Am. Highland Cattle Ass'n*, 2023 WL 7089906, at *3 & n.3 (D. Colo. Oct. 26, 2023) (holding Section 12 inapplicable to limited liability companies); *Whylie Eye Care Ctr. v. Vision Serv. Plain-Cent. Region, Inc.*, 1991 WL 83835, at *3 (N.D. Ill. May 10, 1991) (state long-arm statutes, not Section 12, apply to partnerships); *GovernmentGPT Inc. v. Axon Enterprise Inc.*, 769 F. Supp. 3d 959, 978-79 (D. Ariz. 2025) (collecting cases) ("there is no question that Section 12 does not apply" to entities not formed as corporations).

Because none of the AIP Defendants is a corporation, Section 12 of the Clayton Act plainly does not apply.

## II. Plaintiffs Fail to State an Antitrust Violation by Any AIP Defendant.

Rule 12(b)(6) requires that all the claims against the AIP Defendants be dismissed for an independently sufficient reason: the Complaints do not plausibly plead that any AIP Defendant violated any antitrust laws. Plaintiffs do not allege that the AIP Defendants ***themselves*** conspired with anyone, acquired any competitors, or attempted to monopolize any relevant market. Indeed, Plaintiffs do not allege that the AIP Defendants even participated in any fire truck or fire apparatus market ***at all***.

Because Plaintiffs do not—and cannot—plead that the AIP Defendants themselves violated any antitrust laws, they attempt instead to turn basic American corporate law on its head. Specifically, Plaintiffs purport to impute REV Group's alleged actions to the AIP Defendants based only on conclusory allegations about the AIP Defendants' supposed ownership, direction, and control of REV Group. But it is "a general principle of corporate law deeply ingrained in our

economic and legal system" that a parent company "is not liable for the acts of its subsidiaries." *Mesenbring v. Rollins, Inc.*, 105 F.4th 981, 984 (7th Cir. 2024) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). Only truly exceptional facts can overcome that bedrock principle. Plaintiffs do not—and cannot—allege any exceptional facts about the AIP Defendants (only some of which even invested in REV Group). Accordingly, the claims against the AIP Defendants should be dismissed.[12]

### A. Plaintiffs' Complaints Contain No Allegations That the AIP Defendants Themselves Took Any Action or Made Any Acquisition That Would Violate the Antitrust Laws.

#### 1. The Complaints Include No Allegation That the AIP Defendants Participated in a Conspiracy in Violation of Sherman Act Section 1.

The Direct Purchaser Plaintiffs assert a claim of conspiracy in restraint of trade against all Defendants, including the AIP Defendants. (DPPC ¶¶ 275-81.) But they allege no facts connecting any AIP Defendant to any supposed conspiracy. Instead, the Direct Purchaser Plaintiffs allege only that the "Manufacturer Defendants"—expressly defined to ***exclude*** the AIP Defendants—conspired to fix prices and restrict output through the trade association FAMA. (DPPC ¶¶ 2-3, 151.) As if that explicit exclusion of the AIP Defendants from the defined term "Manufacturer Defendants" were not enough, the Direct Purchaser Plaintiffs' Complaint is devoid of any allegation that any AIP Defendant attended any FAMA meeting, received or shared any reports or information from FAMA, or interacted with FAMA or any "Manufacturer Defendant" other than REV Group itself. And for good reason: the Direct Purchaser Plaintiffs allege that FAMA's membership was limited to manufacturers of firefighting or fire protection apparatus and related components and products. (DPPC ¶ 159.) The Complaints, however, are abundantly clear that AIP

[12] For the Court's convenience, a table summarizing the Rule 12(b)(6) grounds for dismissal of Plaintiffs' claims against the AIP Defendants is attached hereto as Appendix B.

LLC is a private equity firm and the AIP Investment Funds are its affiliated investment funds and related entities (*id.* ¶¶ 45-51), ***not*** manufacturers eligible for FAMA membership.

Accordingly, there is no allegation that any of the AIP Defendants could have even joined FAMA or that they participated in any antitrust conspiracy. Put simply, based on the face of their own Complaint, the Direct Purchaser Plaintiffs allege a conspiracy in which no AIP Defendant participated, thereby failing to state a claim against the AIP Defendants. *See Knight*, 725 F.3d at 818 ("[I]t remains essential [at the pleading stage] to show that a particular defendant joined the conspiracy and knew of its scope.").

### 2. The Acquisitions That Are the Basis of Alleged Antitrust Violations Were Made by REV Group, Not by the AIP Defendants.

Plaintiffs fail to state Sherman Act Section 2 and Clayton Act Section 7 claims directly against the AIP Defendants: the Complaints do not plausibly allege that any AIP Defendant made any acquisitions that lessened competition or were otherwise anticompetitive.[13] Clayton Act Section 7 prohibits acquisitions whose effect "may be substantially to lessen competition, or to tend to create a monopoly" and imposes liability only on the acquiring person. 15 U.S.C. § 18; *see Dailey v. Quality Sch. Plan, Inc.*, 380 F.2d 484, 488 (5th Cir. 1967) (dismissing Section 7 claim against seller because "§ 7 by its terms proscribes only the acquiring corporation"). The Complaints expressly allege that ***it was REV Group, not any of the AIP Defendants***, that acquired fire-truck manufacturers KME, Ferrara, and Spartan. (DPPC ¶ 105 ("In 2016 . . . REV Group

[13] The alleged violations of Section 7 of the Clayton Act and Section 2 of the Sherman Act are based on REV Group's acquisitions of KME, Ferrara, and Spartan. (DPPC ¶¶ 105, 109, 113; NCAPC ¶¶ 7-8, 127-33.) AIP Fund IV's 2008 acquisition of E-ONE—the AIP Defendants' first and only acquisition of a fire apparatus manufacturer—in itself cannot have reduced competition in any relevant market or otherwise be anticompetitive. (DPPC ¶ 98 (characterizing the acquisition of E-ONE as market entry); NCAPC ¶ 258 (same).) In addition, any claim premised on the E-ONE acquisition, which dates back nearly two decades, is entirely time-barred. *See* Part III *infra*.

purchased KME . . . ."); *id.* ¶ 109 ("Shortly after the IPO, in March 2017, under AIP's direction and control . . . REV Group completed the acquisition of . . . Ferrara . . . ."); *id.* ¶ 113 ("In 2020 . . . AIP-controlled REV Group purchased Spartan. . . .").) Plaintiffs cannot state a Section 7 claim against the AIP Defendants based on acquisitions they did not make. *See FTC v. U.S. Anesthesia Partners, Inc.*, 2024 WL 2137649, at *4 (S.D. Tex. May 13, 2024) (dismissing Section 7 and Section 2 claims against private equity investor premised on portfolio company's alleged anticompetitive acquisitions where there was no allegation that investor's own acquisition of portfolio company stock violated the antitrust laws). Plaintiffs' Section 7 claim thus must be dismissed.

Plaintiffs' Sherman Act Section 2 attempted monopolization claim, which is premised on these same acquisitions, fares no better. Plaintiffs fail to plead plausibly any anticompetitive (or exclusionary) conduct by any AIP Defendant. *See United Wis. Grain Producers LLC v. Archer Daniels Midland Co.*, 144 F.4th 976, 980 (7th Cir. 2025) (exclusionary conduct is a required element of an attempted monopolization claim); *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 883 F. Supp. 1247, 1257 (W.D. Wis. 1995) ("Improper conduct [in pursuit of monopoly] is conduct characterized as 'exclusionary,' 'anti-competitive' or 'predatory'" as "distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident"), *rev'd in part on other grounds*, 65 F.3d 1046 (7th Cir. 1995). The sole exclusionary conduct on which Plaintiffs base their attempted monopolization claim is ***REV Group's*** allegedly anticompetitive acquisitions. (DPPC ¶ 299; NCAPC ¶ 653.) Indeed, despite conclusory references to "AIP's acquisitions" (DPPC ¶ 114) or the "AIP Defendants and REV Group's acquisitions" (NCAPC ¶ 475), and bald statements that the AIP Defendants "directly and actively participated in" them (*id.* ¶ 472), Plaintiffs fail to provide any non-conclusory, fact-

based allegations that any AIP Defendant played any role in the KME, Ferrara, or Spartan acquisitions.[14]

Separately, Plaintiffs' attempted monopolization claim must also be dismissed because none of the AIP Defendants ever participated in any fire truck or fire apparatus market. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993) (attempted monopolization requires proof of "the defendant's economic power in [the relevant] market"); *Banxcorp v. Apax Partners, L.P.*, 2011 WL 1253892, at *6 (D.N.J. Mar. 28, 2011) (attempted monopolization claim against parent dismissed where plaintiff "d[id] not allege that [parent] [wa]s a competitor in the relevant market," merely that parent was "an advisor to" its subsidiary); *Invamed, Inc. v. Barr Lab'ys, Inc.*, 22 F. Supp. 2d 210, 219 (S.D.N.Y. 1998) (same, where "[a]ll of the exclusionary conduct in the complaint [wa]s alleged to have been undertaken by [the subsidiary] only"); *Top Rank, Inc. v. Haymon*, 2015 WL 9948936, at *17 (C.D. Cal. Oct. 16, 2015) (dismissing attempted monopolization claim against investors, finding "investment and alleged management and control over [the portfolio company] via their veto or approval power over 'Major Decisions'" insufficient to plead plausibly that investors were competitors in the relevant market).

### B. Any Alleged Acts or Violations by REV Group Cannot Be Imputed to the AIP Defendants.

Because they cannot state claims based directly on the AIP Defendants' own acts and deeds, Plaintiffs attempt to impute REV Group's alleged activities to the AIP Defendants. But it

---

[14] Tellingly, despite Plaintiffs' attempts to obfuscate the issue through conclusory allegations and improper group pleading (*see, e.g.*, NCAPC ¶¶ 259-60 (alleging without support that "AIP and REV Group" acquired KME, Ferrara, and Spartan)), they acknowledge throughout the Complaints that these were in fact REV Group's acquisitions (*see* NCAPC ¶ 8 (alleging that it was REV Group that "combined E-ONE, KME, Ferrara, and now Spartan under common ownership and control"); *id.* ¶ 65 ("REV Group acquired KME"); *id.* ¶ 128 ("REV Group acquired Ferrara"); *id.* ¶ 129 ("REV Group acquired Spartan Motors' emergency response segment"); DPPC Fig. 1).

is a "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation is not liable for the acts of its subsidiaries." *Mesenbring*, 105 F.4th at 984 (citing *Bestfoods*, 524 U.S. at 61). A parent company's "control" over a subsidiary, which may include "election of directors, the making of by-laws and the doing of all other acts incident to the legal status of stockholders," does not extend subsidiary liability to the parent. *Bestfoods*, 524 U.S. at 61-62 (citation modified). Even if a parent company "monitor[s] the subsidiary's performance, supervis[es] the subsidiary's financial and capital budget decisions, and articulat[es] general policies and procedures," the parent is not liable for its subsidiary's actions unless the parent's actions are "eccentric" under accepted corporate norms. *Id.* at 72 (citation modified).

This foundational principle applies with full force in the antitrust context. Where a company is claimed to have violated the antitrust laws, allegations of "ownership and control" over that company by a parent or investor are insufficient to state an antitrust claim against the parent or investor.[15] Indeed, relying on the fundamental principle of corporate separateness, courts

---

[15] The vast majority of controlling decisions analyze the doctrine of corporate separateness in the context of a subsidiary and its parent operating company. While those cases themselves dispose of Plaintiffs' claims against the AIP Defendants, the AIP Defendants are even further removed from any imputation of the allegations against REV Group because they are investment funds (and, in the case of AIP LLC, those funds' investment advisor), rather than a parent operating company. *Bestfoods* and similar cases recognize that corporate separateness may be disregarded only in narrow circumstances where, among other things, "stock ownership has been resorted to, not for the purpose of participating in the affairs of a corporation in the normal and usual manner, but for the purpose . . . of controlling a subsidiary company so that it may be used as a mere agency or instrumentality of the owning company." 524 U.S. at 62-63; *see Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528-29 (D. Del. 2008) (requiring allegations "that the corporation and its shareholders operated as a single economic entity," including whether "the corporation is merely a facade for the operations of the dominant stockholder or stockholders") (citation modified). Unlike a parent operating company, which may operate a similar or related line of business to its subsidiary, or file consolidated financial statements along with its subsidiary, REV Group can in no way be confused for an "instrumentality" or "facade" of the AIP Defendants, who do not manufacture or sell fire trucks (or any other goods) in the first place. *See In re Moll Indus., Inc.*, 454 B.R. 574, 589-90 (Bankr. D. Del. 2011) (granting motion to dismiss, finding that

have dismissed antitrust claims against a parent company even when the plaintiff purported to bolster their "ownership and control" allegations by pleading that the parent "shap[ed] the company policies at issue and participat[ed] in crafting, approving, and implementing the unlawful conduct," *Osterhaus Pharmacy, Inc. v. Express Scripts, Inc.*, 768 F. Supp. 3d 1186, 1198 (W.D. Wash. 2025); or "g[ave] their assent and approval to their respective subsidiaries' conduct," *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 687-88 (E.D. Pa. 2009). In short, the "unadorned invocation of dominion and control is simply not enough." *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003).

Because there is no "averment that [a] corporate parent defendant[] directly entered into [allegedly anticompetitive] agreements," or operated as the alter ego of the subsidiary, foundational principles of American corporate law prevent Plaintiffs from blurring the line between distinct entities based on conclusory allegations of "ownership and control." *McCray v. Fid. Nat. Title Ins. Co.*, 636 F. Supp. 2d 322, 335 (D. Del. 2009), *aff'd*, 682 F.3d 229 (3d Cir. 2012); *see In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 630 F. Supp. 3d 968, 991-93 (N.D. Ill. 2022) (dismissing claims against parent where plaintiffs failed to show parent's direct involvement in the alleged antitrust conspiracy or plead facts sufficient to pierce the corporate veil).

### 1. The AIP Defendants Cannot Be Liable Based on Their Alleged "Ownership and Control" of REV Group.

Plaintiffs attempt—and fail—to impute liability to the AIP Defendants for REV Group's alleged activities by relying on utterly conclusory allegations of ownership and control. (*See, e.g.*, DPPC ¶¶ 54-56; NCAPC ¶¶ 70-74.) Plaintiffs try to dress up their insufficient allegations by ascribing actions to "Defendants" as an undifferentiated group, without specifying which

---

manufacturing business and hedge fund investor "were separate businesses, operating in completely different fields" such that the former was not mere facade of the latter).

Defendant purportedly did what (*see, e.g.*, DPPC ¶¶ 132-34, 149; NCAPC ¶¶ 15-18, 332-35), and by enumerating the customary prescribed shareholder rights some of the AIP Defendants held under the shareholders agreement (DPPC ¶¶ 107-08; NCAPC ¶ 75). But neither tack works.

To begin with, Plaintiffs' group-pleaded allegations should be ignored because a "complaint based on a theory of collective responsibility must be dismissed." *Knight*, 725 F.3d at 818; *Shujauddin v. Berger Bldg. Prods., Inc.*, 2019 WL 9102043, at *1 n.2 (E.D. Pa. June 18, 2019) ("An allegation against multiple defendants that is bereft of specific wrongdoing by those proposed defendants is insufficient to state a claim.") (citation modified); *In re Crop Inputs Antitrust Litig.*, 172 F.4th 570, 578 (8th Cir. 2026) (affirming dismissal of complaint with prejudice, holding that "[a]llegations that vaguely refer to 'Manufacturer Defendants,' 'Wholesaler Defendants,' or 'Retailer Defendants' do not meet the requirement to plead 'who, did what, to whom (or with whom), where, and when'") (citation modified); *City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*, 92 F.4th 381, 410 (2d Cir. 2024) (affirming dismissal where plaintiff "bundled [the defendants] together").

Nor do Plaintiffs' allegations concerning the usual rights afforded under the shareholders agreement provide any basis for asserting antitrust liability against any AIP Defendant. Rather, Plaintiffs' invocation of that agreement amounts to the unremarkable allegation that, at the time the challenged acquisitions were consummated, some of the AIP Defendants as shareholders could nominate a majority of REV Group's directors and had reserved shareholder approval rights over certain material REV Group corporate matters, such as selling the company, approving certain large mergers, or filing for bankruptcy. (DPPC ¶¶ 107-08; NCAPC ¶ 75.) Those allegations merely describe the rights "incident to the legal status of stockholders," they do not allege the kind of "eccentric" control required to fundamentally upend American corporate law. *Bestfoods*, 524 U.S.

at 61-62, 72 (citation modified); *see Matter of Bowen Transports, Inc.*, 551 F.2d 171, 179 (7th Cir. 1977) ("Actual domination, rather than the opportunity to exercise control, must be shown.") (citation modified).

Indeed, parents "are almost always 'active participants' in the affairs of an owned corporation." *Esmark, Inc. v. N.L.R.B.*, 887 F.2d 739, 759 (7th Cir. 1989). For that reason, "in the usual case, the exercise of such control over a subsidiary's actions is entirely permissible, and does not result in the owner's personal liability." *Id.*; *Mesenbring*, 105 F.4th at 984-85 (parent's rights to set subsidiary's revenue and profit targets and budgetary strategy and to approve its expenditures were "'a normal incident of ownership' in a parent-subsidiary relationship" and insufficient to impute subsidiary's liability to parent). Thus, courts have held, including at the pleading stage, that plaintiffs fail to allege that a parent exercises unusual control over its subsidiary when the plaintiff pleads that the parent had supermajority voting rights giving it veto power over some corporate actions; could appoint the subsidiary's directors; installed its own former executives in key roles with the subsidiary; and provided financial services, procurement activities, and other shared services to the subsidiary. *See Sciannella v. AstraZeneca UK Ltd.*, 2024 WL 3327765, at *19-22 (Del. Ch. July 8, 2024), *aff'd*, 340 A.3d 544 (Del. 2025); *see also Top Rank*, 2015 WL 9948936, at *17 (dismissing attempted monopolization claim against investors despite allegations of "control over [the portfolio company] via . . . veto or approval power over 'Major Decisions'"); *Joiner v. Ryder Sys. Inc.*, 966 F. Supp. 1478, 1485 (C.D. Ill. 1996) ("it is entirely appropriate" for a parent company to approve subsidiary's large investments, acquisitions, or disposition of assets).

### 2. Plaintiffs Fail to Allege That the AIP Defendants "Independently Participated" in REV Group's Alleged Violations.

Plaintiffs do not plead that any AIP Defendant had "direct" involvement or "independent participation" in the alleged antitrust violations. *See, e.g.*, *In re Outpatient Med. Ctr.*, 630 F. Supp.

3d at 991 (granting motion to dismiss because "courts continue to find a parent liable only when it was directly involved in the anticompetitive conduct"); *Elec. Med. Tr. v. U.S. Anesthesia Partners, Inc.*, 2024 WL 5274650, at *6 (S.D. Tex. Sept. 27, 2024) (dismissing Section 1, Section 2, and Section 7 claims against private equity firm where no allegations showed "independent participation" in portfolio company's alleged unlawful agreements and acquisitions during limitations period); *see also Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1237 (10th Cir. 2017) (plaintiff is "required to come forward with evidence that each defendant independently participated in the enterprise's scheme, to justify holding that defendant liable as part of the enterprise"); *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 857 (10th Cir. 1999) (same); *Lantus Direct Purchaser Antitrust Litig.*, 2022 WL 4239367, at *27 (D. Mass. Aug. 17, 2022) (rejecting Section 2 claim where plaintiffs did "not present[] evidence that [corporate affiliate] independently engaged in the anticompetitive conduct"), *report and recommendation adopted*, 2022 WL 4237276 (D. Mass. Sept. 14, 2022).

With respect to the conspiracy claim, the Direct Purchaser Plaintiffs plead no facts connecting any of the AIP Defendants to any of the alleged conspiracy's other participants and do not allege that the AIP Defendants even knew about the purported price-fixing among the relevant REV Group subsidiaries and the other Manufacturer Defendants, much less participated in it. This pleading deficiency alone defeats Plaintiffs' claim. *See McCray*, 636 F. Supp. 2d at 335 (granting motion to dismiss because, "[w]ithout some averment that the corporate parent defendants directly entered into agreements . . . , the plaintiffs have not alleged enough to establish that the corporate parent defendants entered into a conspiracy to fix title insurance prices"). Indeed, courts have held a parent entity liable for directly participating in a subsidiary's anticompetitive agreements only in extreme circumstances not present here—such as when the parent itself signed the unlawful

agreement, *FTC v. Syngenta Crop Prot. AG*, 711 F. Supp. 3d 545, 586 (M.D.N.C. 2024), or assured the subsidiary's co-conspirators "on an 'owner to owner' basis" that the parent would "support and enforce the [subsidiary's] collusive pricing agreements," *In re Packaged Seafood Prods. Antitrust Litig.*, 2022 WL 836951, at *10 (S.D. Cal. Mar. 21, 2022).

Likewise, with respect to the alleged anticompetitive acquisitions underlying their other antitrust claims, Plaintiffs have pleaded no facts showing direct involvement or independent participation by any of the AIP Defendants. At the outset, generic allegations that the AIP Defendants continued to hold shares in REV Group and thus purportedly profited from its alleged anticompetitive conduct (DPPC ¶ 57; NCAPC ¶ 76) do not state a claim against the AIP Defendants. "[R]eceiving profits from an entity that may be violating antitrust laws" is not independent conduct that violates the antitrust laws. *FTC*, 2024 WL 2137649, at *4. Moreover, the Complaints do not identify any AIP Defendant as a party or signatory to any REV Group acquisition agreement. And while the Direct (Non-Class) Action Plaintiffs include a throwaway assertion that the AIP Defendants "directly and actively participated in" the acquisitions (NCAPC ¶ 472), that conclusory incantation is a legal conclusion unsupported by factual allegations identifying what any AIP Defendant actually did in connection with any of the challenged acquisitions, and is therefore entitled to no weight on a motion to dismiss. *See Spanish Broad. Sys. of Fla., Inc v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1075 (11th Cir. 2004) (conclusory allegation of parent's "veto power" over subsidiary's "merger and stock decisions" insufficient to plead attempted monopolization); *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d at 689 (rejecting allegations of "approval and assent" and "ownership and control" as bases for liability against parent companies). Rather, Plaintiffs' allegations regarding the AIP Defendants merely describe actions that at most are "typical of any parent and subsidiary" relationship, *Mitchael*, 179

F.3d at 857 n.12, and therefore are insufficient to show independent participation in REV Group's alleged anticompetitive acts. *Compare, e.g.*, DPPC ¶¶ 52, 97 (AIP generally describes itself as "operationally-minded" and works "in partnership with management"), *with Elec. Med. Trust*, 2024 WL 5274650, at *6 (dismissing monopolization claim even though private equity firm alleged to have "earmarked" competitor as "potential acquisition").

Finally, Plaintiffs attempt to plead that the AIP Defendants independently participated in REV Group's alleged antitrust violations through the actions of the AIP LLC-affiliated directors who served on REV Group's board. (*See, e.g.*, DPPC ¶¶ 108, 120 (board-appointment rights gave AIP "management and control over REV Group's strategic direction and major corporate decisions").) The Supreme Court's *Bestfoods* decision is fatal to this theory: under *Bestfoods*, a subsidiary's directors who were appointed by that subsidiary's parent company are "presumed" to be acting on behalf of the subsidiary, not the parent. *See* 524 U.S. at 69 (noting the "general presumption" that dual-hatted directors and officers "are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary") (citation modified). Accordingly, the actions of REV Group board members who were appointed by AIP LLC are presumed to be the actions of REV Group (not of AIP LLC or any other AIP Defendant) and, as such, cannot serve as a basis to impute liability to any AIP Defendant for purposes of surviving this motion to dismiss. *See Musharbash v. U.S. Anesthesia Partners, Inc.*, No. 4:25-cv-00116, Order (ECF No. 90) at 12 (S.D. Tex. Aug. 25, 2025) (granting motion to dismiss because, under *Bestfoods*, investor-affiliated directors' actions on portfolio company's board cannot be attributed to the investor); *Taube v. Hartford Fin. Servs. Grp. Inc.*, 2021 WL 633010, at *5 (S.D. Ill. Feb. 18, 2021) (applying *Bestfoods* to dismiss alter ego theory because dual corporate officers' actions on behalf of one entity cannot be imputed to another entity); *see also United States v. Sikorsky Aircraft Corp.*, 2023

WL 6883637, at *21, *24 (E.D. Wis. Oct. 17, 2023) (under *Bestfoods*, dual officer's knowledge acquired as an officer of one company could not be imputed to the other company); *In re Google Generative AI Copyright Litig.*, 809 F. Supp. 3d 903, 919 n.8 (N.D. Cal. 2025) (granting motion to dismiss because "courts presume that the [dual-hatted] officer acts on behalf of the subsidiary when acting *for* the subsidiary" and plaintiffs failed to allege "facts tending to exclude the possibility that [the] joint officers were acting on [the subsidiary's] behalf") (emphasis in original); *In re Wellpath SF Holdco, LLC*, 2025 WL 3165423, at *1 (Bankr. S.D. Tex. Nov. 12, 2025) (holding that private equity fund's placement of representatives on a portfolio company's board and fund's oversight of the portfolio company's finances and capital decisions were consistent with normal investor status and could not serve as the basis for direct liability against the fund).

The recent *U.S. Anesthesia Partners* litigation confirms that dismissal is warranted here. In that case, two federal judges in three separate decisions dismissed antitrust claims brought by private plaintiffs and the Federal Trade Commission against Welsh Carson Anderson & Stowe ("Welsh Carson"), a private equity firm.[16] Each of the three related cases was based on alleged violations by a portfolio company, U.S. Anesthesia Partners, Inc. ("USAP"), in which investment funds managed by Welsh Carson held ownership interests at various times. Like Plaintiffs here, the *U.S. Anesthesia Partners* plaintiffs attempted to mischaracterize a private equity fund's ordinary investor rights in order to impute liability to the investment fund and its affiliated private equity firm for the alleged antitrust violations of a portfolio company. The plaintiffs alleged, among other things, that Welsh Carson created USAP, "spearheaded" its market consolidation

[16] *See FTC v. U.S. Anesthesia Partners, Inc.*, 2024 WL 2137649 (S.D. Tex. May 13, 2024) (Hoyt, J.); *Elec. Med. Tr. v. U.S. Anesthesia Partners, Inc.*, 2024 WL 5274650 (S.D. Tex. Sept. 27, 2024) (Bennett, J.); *Musharbash v. U.S. Anesthesia Partners, Inc.*, No. 4:25-cv-00116, Order (ECF 90) (S.D. Tex. Aug. 25, 2025) (Bennett, J.).

strategy, had previously held a majority stake in USAP and the authority to fill a majority of USAP's board for many years, handpicked USAP's entire executive team from the ranks of other companies in which Welsh Carson had invested, developed tools for identifying acquisition targets, researched acquisition targets, and approved transactions. *FTC*, 2024 WL 2137649, at *2; *Elec. Med. Tr.*, 2024 WL 5274650, at *2; *Musharbash*, Order at 3-4.

The district court that dismissed the FTC's claims against Welsh Carson reasoned that these allegations of "hands-on" conduct, including with respect to challenged acquisitions, were insufficient to "to expand antitrust liability to reach active investors in companies that are alleged to violate antitrust law." *FTC*, 2024 WL 2137649, at *5-6. In one of the other cases, the court explained that the customary shareholder rights the plaintiffs alleged—like the ability to appoint directors—were insufficient to confer liability on Welsh Carson. *Elec. Med. Tr.*, 2024 WL 5274650, at *6. The *Electric Medical Trust* court emphasized that Welsh Carson did not independently participate in any acquisitions during the limitation period. *Id.* The same is true here, where Plaintiffs have not alleged that any AIP Defendant independently participated in any of REV Group's acquisitions, and indeed, no such acquisitions occurred within the limitations period at any rate. Also, citing *Bestfoods*, the same court (in a separate decision) rejected the theory that Welsh Carson–affiliated directors' actions as members of USAP's board could be attributed to Welsh Carson, holding that such directors "are presumed to have been acting on behalf of USAP, not on behalf of Welsh Carson." *Musharbash*, Order at 12 (citing *Bestfoods*, 524 U.S. at 69).

The legal principles of the *U.S. Anesthesia Partners* cases apply with equal force here. The claims against the AIP Defendants should be dismissed accordingly.

### C. Plaintiffs' State Law Claims Against the AIP Defendants Fail.

All of the Direct (Non-Class) Action Plaintiffs' state law claims fail for the same reason Plaintiffs' federal antitrust claims do: there are no non-conclusory, well-pled factual allegations of

independent participation by any of the AIP Defendants in any purported state-law violation. Because the state antitrust statutes are modeled after the federal statutes, state and federal antitrust claims "rise and fall together." *Sabol v. PayPal Holdings, Inc.*, 2024 WL 3924686, at *4 (N.D. Cal. Aug. 23, 2024) (citation modified) (dismissing California Cartwright Act claims); *see Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 101 (2d Cir. 2019) (dismissing New York Donnelly Act claims because "the state statute is modeled after the Sherman Act and 'should generally be construed in light of Federal precedent'") (citation modified); *Pro Music Rts., LLC v. Apple, Inc.*, 2020 WL 7406062, at *10 (D. Conn. Dec. 16, 2020) (dismissing claims under Connecticut's state antitrust laws on the same grounds); *State v. Waste Mgmt. of Wisconsin, Inc.*, 81 Wis. 2d 555, 569 (1978) ("[T]he construction of [the Wisconsin antitrust statute] is controlled by federal decisions under the Sherman Act."). Thus, all of the state law claims should be dismissed.[17]

Moreover, all but one of the state law claims against the AIP Defendants—Count 16 of the NCAPC under the Donnelly Act, New York General Business Law § 340(1)—fail for an additional reason: those states lack personal jurisdiction over any of the AIP Defendants, and claims arising under their laws are thus barred under the presumption against extraterritorial application of law. *See Elzeftawy v. Pernix Group, Inc.*, 477 F. Supp. 3d 734, 784-87 (N.D. Ill. 2020) (dismissing claims as "an impermissibly extraterritorial application" of the relevant statute where plaintiff "failed to adequately allege a connection between [defendant's] purported conduct and the state").

The Donnelly Act claim, the sole state law claim not subject to the presumption against extraterritoriality, is identical to and fails for the same reason as the federal antitrust claims against

[17] The AIP Defendants also incorporate by reference the statute of limitation and state-specific statutory arguments for dismissal advanced by the other Defendants. *See* Memorandum in Support of Defendants' Joint Motion to Dismiss Non-Class Plaintiffs' Complaint, Part I & App. B; *id.* Part VIII & App. A at 4-24.

the AIP Defendants: it hinges exclusively on conduct of REV Group that cannot be imputed to any AIP Defendant as an outside investor. *See, e.g.*, *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 419 (S.D.N.Y. 2011) (dismissing Donnelly Act claims alongside federal antitrust claims against parent companies where there were no allegations that any of them "did anything actionable in the alleged antitrust conspiracy" and no basis alleged to pierce the corporate veil). It is also time-barred because it challenges acquisitions that are well outside the applicable four-year statute of limitations, *see* N.Y. Gen. Bus. Laws § 340(5); *see also* Part III *infra*.

### D. Plaintiffs Are Not Entitled to Injunctive Relief.

Because the Complaints fail to state a claim against the AIP Defendants under the federal antitrust laws, there is also no basis for the injunctive relief sought by the Direct Purchaser Plaintiffs. (DPPC ¶¶ 287-97.) An injunction is not a freestanding cause of action; it is a remedy that can be granted only where a valid underlying legal claim exists. *See Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 113 (1986). No claim has been stated against any of the AIP Defendants, and Count III should be dismissed. *See Reapers Hockey Ass'n, Inc. v. Amateur Hockey Ass'n Ill., Inc.*, 412 F. Supp. 3d 941, 957-58 (N.D. Ill. 2019) (dismissing declaratory judgment claim after finding no substantive federal antitrust claims).

## III. Plaintiffs' Clayton Act Section 7 and Sherman Act Section 2 Claims Against the AIP Defendants Based on the Acquisitions Are Time-Barred.

Plaintiffs' Section 7 and Section 2 claims fail for the additional reason that all of the challenged acquisitions fall outside the limitations period.[18]

[18] Statute of limitations is a separate and independent basis for dismissal of Counts 1 and 22 of the Direct (Non-Class) Action Plaintiffs' Complaint and Counts 2 and 4 of the Direct Purchaser Plaintiffs' Complaint. *See* Memorandum in Support of Defendants' Joint Motion to Dismiss Non-Class Plaintiffs' Complaints, Part I & App. B.

### A. Plaintiffs' Section 7 and Section 2 Claims Against the AIP Defendants Did Not Accrue Within the Applicable Limitations Period.

Where it appears from the face of the complaint that a claim accrued outside the limitations period, dismissal under Rule 12(b)(6) is proper. *See O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015). Antitrust claims by private plaintiffs must be "commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. The first complaints naming the AIP Defendants in this litigation were filed in November 2025, meaning that Plaintiffs must allege claims that accrued no earlier than November 2021. They do not.

Because acquisitions are discrete occurrences, claims challenging them under either Section 7 or Section 2 "accrue[] at the time of the merger or acquisition." *See Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 269 (8th Cir. 2004) (citation modified); *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 604 (6th Cir. 2014) ("As with the Sherman Act, a Section 7 cause of action challenging an acquisition accrues at the time of the merger or acquisition . . . ."); *Shuffle Tech Int'l, LLC v. Sci. Games Corp.*, 2015 WL 5934834, at *14 (N.D. Ill. Oct. 12, 2015) (same). Plaintiffs challenge acquisitions—made by REV Group, not by the AIP Defendants—that were consummated prior to 2021, with the oldest acquisitions alleged to have occurred nearly two decades ago and the most recent alleged to have taken place more than six years ago, in February 2020. (DPPC ¶¶ 98, 105, 109, 113; NCAPC ¶¶ 7-8, 258-60; *see also* Memorandum in Support of Defendants' Joint Motion to Dismiss Non-Class Plaintiffs' Complaint, Part I.A at 12 & n.11.) Plaintiffs' Section 7 and Section 2 claims, therefore, did not accrue within the four-year limitations period, and must therefore be dismissed as untimely. *See, e.g.*, *Cancer Found. Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009) (affirming dismissal where it was "clear from the face of the . . . complaint" that plaintiffs' claims were "hopelessly time-barred").

### B. Plaintiffs Plead No Basis for Tolling or Restarting the Statute of Limitations.

No tolling theory or exception can resurrect Plaintiffs' expired Section 7 and Section 2 claims.

#### 1. There Are No Allegations of Concealment by Any AIP Defendant.

Plaintiffs do not—and cannot—allege that any of the challenged acquisitions was wrongfully or fraudulently concealed by any AIP Defendant so as to toll the statute of limitations. *See Conway v. Bulk Petroleum Corp.*, 545 F. Supp. 398, 400, 400 n.3 (N.D. Ill. 1982) (tolling requires, among other things, active, wrongful, and successful concealment of the allegedly unlawful conduct; "mere nondisclosure" is not enough). Indeed, the Complaints acknowledge that ***all*** of the relevant acquisitions were disclosed through press releases, other public announcements, regulatory filings, public industry reports, and other media. (DPPC ¶¶ 98, 100, 105, 109, 113; NCAPC ¶¶ 7-8.) The fraudulent concealment doctrine is thus unavailable to Plaintiffs. *See In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 748 (E.D. Pa. 2014) (no fraudulent concealment where defendants affirmatively disclosed the material terms of the alleged unlawful agreements in press releases and in SEC filings, even though they refused to disclose certain details and falsely characterized the settlement agreements as procompetitive); *Brunswick Corp. v. Riegel Textile Corp.*, 578 F. Supp. 893, 898 (N.D. Ill. 1983) (doctrine of fraudulent concealment is unavailable where it is apparent from the complaint itself "that [plaintiff] either knew or could have discovered, through reasonable diligence, the facts upon which its cause of action is premised"), *aff'd*, 752 F.2d 261 (7th Cir. 1984).

#### 2. The Challenged Acquisitions Are Not Continuing Violations.

Nor can the continuing violation exception to the accrual rules save Plaintiffs' Section 7 and Section 2 claims against the AIP Defendants. The continuing violation doctrine requires a new, independent unlawful act, not the "merely unabated inertial consequences" of a prior

occurrence, to restart the statute of limitations. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1052 (8th Cir. 2000) (citation modified). "[E]ven if [a] merger itself was unlawful, the continued existence of the merged entity is not a continuing violation." *Midwestern Mach. Co.*, 392 F.3d at 271. "Once a merger is completed, there is no continuing violation . . . that would justify extending the statute of limitations beyond four years." *Id.*; *accord Shuffle Tech Int'l*, 2015 WL 5934834, at *14 (rejecting plaintiff's continuing-violation argument and dismissing Section 7 claim as time-barred); *Complete Ent. Res. LLC v. Live Nation Ent., Inc.*, 2016 WL 3457177, at *1 (C.D. Cal. May 11, 2016) (rejecting use of continuing violation doctrine as a "backdoor around the Clayton Act statute of limitations for challenging a merger").

To the extent Plaintiffs allege injury in the form of higher prices or lower output or quality made possible by the challenged acquisitions (DPPC ¶¶ 283, 301), such injury would be the consequence of the acquisitions, not an independent violation sufficient to restart the statute of limitations. "[P]rofits, sales, and other benefits accrued as the result of an initial wrongful act are not treated as 'independent acts.' Rather, they are uniformly viewed as 'ripples' caused by the initial injury, not as distinct injuries themselves." *Z Techs. Corp.*, 753 F.3d at 600.

The acquisitions underlying Plaintiffs' Section 7 and Section 2 claims are by their nature and as a matter of law not "continuing," and there are no allegations of post-acquisition independent unlawful conduct that would trigger the continuing violation doctrine. Plaintiffs' untimely Section 7 and Section 2 claims should therefore be dismissed.

**CONCLUSION**

For these reasons, the AIP Defendants respectfully request that the Court grant this Motion and (1) dismiss the underlying actions filed in the 12 districts outside New York for lack of personal jurisdiction, (2) dismiss all claims against them for failure to state a claim, and (3) dismiss the Clayton Act Section 7 and Sherman Act Section 2 claims as untimely.

Dated: August 17, 2026

Respectfully submitted,

/s/ *Daniel E. Conley*

Paul C. Cuomo (Bar No. 457793)
Ed Duffy (Bar No. 359847)
Megan Tankel (Bar No. 90003303)
Alexander Kraszewski (Bar No. 1781948)
BAKER BOTTS LLP
700 K Street NW
Washington, DC 20001
(202) 639-7700
paul.cuomo@bakerbotts.com
ed.duffy@bakerbotts.com
megan.tankel@bakerbotts.com
alexander.kraszewski@bakerbotts.com

Daniel E. Conley (Bar No. 1009443)
QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
(414) 277-5000
Daniel.conley@quarles.com

Jane E. Willis (Bar No. 568024)
Daniel V. McCaughey (BBO # 662037)
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199-3600
(617) 951-7000
Jane.Willis@ropesgray.com
Daniel.McCaughey@ropesgray.com

*Counsel for AIP LLC, American Industrial Partners Capital Fund IV, LP, American Industrial Partners Capital Fund IV (Parallel), LP, AIP CF IV, LLC, AIP/CHC Holdings, LLC and AIP/CHC Investors, LLC*