**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

| | |
|---|---|
| IN RE: FIRE APPARATUS ANTITRUST LITIGATION | Case No. 2:26-md-03179-WCG<br><br>MDL No. 3179<br><br>Hon. William C. Griesbach |
| This document relates to:<br><br>*Direct Purchaser Plaintiff Class Action Track*<br><br>*Indirect Purchaser Plaintiff Class Action Track*<br><br>*City of Leominster v. Oshkosh Corp., et al.*,<br>Case No. 26-cv-01105<br><br>*City of Providence v. Oshkosh Corp., et al.*,<br>Case No. 26-cv-01198 | |

**MEMORANDUM IN SUPPORT OF DEFENDANT REV GROUP, LLC's**
**<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. Class Plaintiffs, Leominster, and Providence Fail to Plead a Section 1 Claim Against REV Group ........ 3

II. Class Plaintiffs, Leominster, and Providence Fail to Plead That REV Group Is Vicariously Liable for Actions of its Subsidiaries Under An Alter-Ego Theory ........ 5

III. The Analogous State Law Claims Against REV Group Fail Alongside Plaintiffs' Deficient Section 1 Claims ........ 8

CONCLUSION ........ 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Needle, Inc. v. Nat'l Football League*,
560 U.S. 183 (2010) ....................2

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ....................5

*In re Cal. Title Ins. Antitrust Litig.*,
2009 WL 1458025 (N.D. Cal. May 21, 2009) ....................2, 5

*In re Chocolate Confectionary Antitrust Litig.*,
641 F. Supp. 2d 367 (M.D. Pa. 2009) ....................6

*In re Chocolate Confectionary Antitrust Litig.*,
674 F. Supp. 2d 580 (M.D. Pa. 2009) ....................7

*City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*,
830 F. Supp. 2d 550 (S.D. Ill. 2011) ....................6

*Copperweld Corp. v. Indep. Tube Corp.*,
467 U.S. 752 (1984) ....................4

*Cornielsen v. Infinium Capital Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) ....................5

*H.J., Inc. v. Int'l Tel. & Tel. Corp.*,
867 F.2d 1531 (8th Cir. 1989) ....................6

*In re Humira (Adalimumab) Antitrust Litig.*,
465 F. Supp. 3d 811 (N.D. Ill. 2020) ....................8

*IDS Life Ins. Co. v. SunAmerica, Inc.*,
136 F.3d 537 (7th Cir. 1998) ....................6

*Mayor & City Council of Baltimore v. AbbVie Inc.*,
42 F.4th 709 (7th Cir. 2022) ....................8

*Motorola Mobility LLC v. AU Optronics Corp.*,
775 F.3d 816 (7th Cir. 2014) ....................6

*In re Outpatient Med. Ctr. Emp. Antitrust Litig.*,
630 F. Supp. 3d 968 (N.D. Ill. 2022) ....................2

*Robinson v. HP, Inc.*,
2025 WL 2802077 (N.D. Ill. Sept. 30, 2025) ....................8

*Rocha v. Rudd*,
826 F.3d 905 (7th Cir. 2016) ....................5

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
801 F.3d 412 (4th Cir. 2015) ....................2

*In re Tamoxifen Citrate Antitrust Litig.*,
277 F. Supp. 2d 121 (E.D.N.Y. 2003)....................8

*United States v. Bestfoods*,
524 U.S. 51 (1998) ....................6, 7

**Other Authorities**

1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 43
(rev. ed. 2025) ....................5

## INTRODUCTION[1]

Class Plaintiffs, the City of Leominster, and the City of Providence all fail to plausibly allege an agreement to restrict output, fix prices, or exchange competitively sensitive information, as needed to state a claim under Section 1 of the Sherman Act and its state-law counterparts. These plaintiffs also lack antitrust standing. Their claims should be dismissed on either basis. This brief addresses an additional pleading defect specific to the Section 1 claims, and related state law claims, against defendant REV Group, LLC ("REV Group").[2] Even if Plaintiffs alleged a plausible conspiracy among fire truck *manufacturers*, and even if Plaintiffs had standing to pursue those claims, they *still* fail to plead that REV Group—a corporate parent that is *not* a fire truck manufacturer—engaged in any conduct that violates Section 1 (or state law analogs). This is a separate and independent basis for dismissal of those claims as to REV Group.

Under black-letter law, REV Group (the parent) is distinct from its subsidiaries (the manufacturers). And under Section 1, liability must be premised on a defendant's *own* agreement to restrain trade, not on generalized allegations about the conduct of a corporate family, or on conduct allegedly undertaken by separately incorporated subsidiaries. Here, Plaintiffs' theory of liability depends entirely on circumstantial allegations of an agreement or conspiracy to restrict trade—but all of those circumstantial allegations are directed at *manufacturers*, which REV Group is concededly not. Nor is REV Group even a member of FAMA, the trade association through

[1] The acronyms in this Motion are defined in the Glossary included in Defendants' Joint Motion to Dismiss Class Plaintiffs' Consolidated Amended Complaints.

[2] Providence originally named Terex Corporation, REV Group's parent corporation following a February 2026 merger, as a defendant (Prov. Compl.) ¶ 37, but stipulated with REV Group to substitute Terex Corporation with REV Group as a defendant in place of Terex (ECF No. 137.) Leominster names "REV Group, Inc." as a defendant. Following REV Group's merger with Terex Corporation, (*see* Leo. Compl. ¶ 30), "REV Group, LLC" became the surviving entity to REV Group, Inc. *See* ECF 136, at ¶ 2.

which the manufacturer defendants allegedly orchestrated their conspiracy. Thus, to the extent those allegations state a claim at all (they do not), they fail to state a claim against REV Group in any event. Because Plaintiffs also fail to plead facts sufficient to impute the conduct of REV Group's subsidiaries to REV Group itself, the Section 1 claims (and analogous state law claims) asserted against REV Group should all be dismissed.

## ARGUMENT[3]

Section 1 of the Sherman Act imposes liability only where there is an agreement between separate economic actors to restrict trade. *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 196 (2010). "Normally, a parent company cannot be held liable for the acts of its subsidiaries." *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 630 F. Supp. 3d 968, 991 (N.D. Ill. 2022) (dismissing Section 1 claim against parent corporation). Thus, to state a Section 1 claim against a parent entity, a plaintiff "either must set forth facts establishing direct participation in the alleged conspiracy or set forth sufficient allegations showing that the [parent entity is] vicariously liable for the acts of [its] subsidiary corporations." *In re Cal. Title Ins. Antitrust Litig.*, 2009 WL 1458025, at *7 (N.D. Cal. May 21, 2009); *see also In re Outpatient Med. Ctr.*, 630 F.3d at 991 ("[C]ourts continue to find a parent liable [under Section 1] only when it was directly involved in the anticompetitive conduct."); *cf. SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423 (4th Cir. 2015) (dismissing antitrust claims against parent corporations for failure to plead alter ego liability).

Plaintiffs fail on both fronts. First, they do not plead facts sufficient to establish REV Group's participation in an alleged conspiracy. Second, they do not plead facts sufficient to show that REV Group is vicariously liable for the acts of its subsidiaries. For these same reasons, Class

[3] Unless stated otherwise, all quotes herein are "cleaned up." *See Birkley v. Amazon.com Servs. LLC*, 813 F. Supp. 3d 906, 910 (E.D. Wis. 2025) (Griesbach, J.) (adopting this convention).

Plaintiffs' claims under the state-law counterparts to Section 1, which rise and fall with their federal claims, also fail. Likewise, the copycat Leominster and Providence complaints, which are predicated on nearly identical factual allegations and legal theories, fail to state a claim for violation of Section 1 or its state-law analogs.

## I. Class Plaintiffs, Leominster, and Providence Fail to Plead a Section 1 Claim Against REV Group

As explained in Defendants' joint briefs, Plaintiffs fail to allege any direct evidence of an agreement to restrict output or raise prices. (*See generally* Class Br.; Leominster/Providence Br.) Instead, Plaintiffs rely on circumstantial "evidence" to support the *inference* of an illegal agreement—primarily (i) that fire apparatus manufacturers "failed to add manufacturing capacity" in response to demand (DPPC ¶¶ 190–92; IPPC ¶¶ 255–57; *see also* Leo. Compl. ¶¶ 134-137; Prov. Compl. ¶¶ 115–118); (ii) parallel price increases (*see* DPPC ¶ 236, IPPC ¶¶ 275–77; Leo. Compl. ¶¶ 121, 138–139; Prov. Compl. ¶¶ 124–126); and (iii) membership in a manufacturers' trade association, FAMA (*see* DPPC ¶¶ 149–77; IPPC ¶¶ 209-234; Leo. Compl. ¶¶ 90–116; Prov. Compl. ¶¶ 87–104). But Plaintiffs' *inference* of an illegal agreement to raise prices or restrict output completely falls apart with respect to REV Group, as REV Group is not alleged to have manufactured or sold fire apparatus, nor is it alleged to be a member of FAMA.

*First*, on Plaintiffs' own allegations, REV Group does not manufacture or sell fire apparatus. To the contrary, Plaintiffs allege that the products that they purchased were manufactured—and, in the case of the DPPs, sold—by REV Group's *subsidiaries*. *See, e.g.*, DPPC ¶¶ 10, 12, 14, 18, 31 (alleging that REV Group's *subsidiaries* manufactured and sold Fire Apparatus to Plaintiffs); IPPC ¶¶ 38, 46, 74, 86, 98 106 (same); Leo. Compl. ¶¶ 28–29 (same); Prov. Compl. ¶¶ 39–40 (same). For example, they allege that they purchased "E-One truck[s]" (IPPC ¶ 38) or "a Spartan ER S-180 Pumper" (IPPC ¶ 46), and that they made purchases "directly from Ferrara Apparatus,

which is owned by REV Group" (DPPC ¶ 10), or "directly from E-One, a brand owned by REV Group" (DPPC ¶ 12), or from REV subsidiaries E-ONE and Ferrera (Prov. Compl. ¶ 199). Because REV Group is not alleged to manufacture fire apparatus *at all*, Plaintiffs' Section 1 claims as to REV Group are implausible: REV Group cannot have unlawfully failed to "add manufacturing capacity" (DPPC ¶192; IPPC ¶ 257) when it does not manufacture trucks to begin with, or unlawfully fixed prices for products that it does not sell.

*Second*, on Plaintiffs' own allegations, REV Group is not a member of FAMA, the trade association through which Plaintiffs speculate that Defendants unlawfully shared information. Rather, Plaintiffs allege that "REV Group *subsidiaries* E-One, Ferrara, KME, and Spartan" were FAMA members (IPPC ¶ 146 (emphasis added); *see also* DPPC ¶ 150; Leo. Compl. ¶ 41; Prov. Compl. ¶ 46), and that employees of those subsidiaries sat on FAMA's board (IPPC ¶ 212; Prov. Compl. ¶ 49). The absence of any such allegations against REV Group itself is unsurprising: As the DPPs themselves allege, "FAMA limits membership to companies that can meet strict eligibility criteria," including that all members must "be engaged in the manufacture of firefighting or fire protection apparatus," or "manufacture components or products which are incorporated by the manufacturer." DPPC ¶ 159; *see also, e.g.*, Prov. Compl. ¶ 92 (same). As explained above, REV Group does neither. Thus, it is not (and cannot be) a member of FAMA.[4]

Plaintiffs' indiscriminate group pleading concerning the "Manufacturer Defendants"—a term that is misleadingly defined to include REV Group (*e.g.*, IPPC ¶ 1; DPPC ¶ 2; Leo. Compl.

[4] Similarly, Class Plaintiffs allege only that "REV Group *subsidiaries*" and other defendants "submitted coordinated pricing data" to a cooperative purchasing organization (IPPC ¶ 238 (emphasis added); *see also* DPPC ¶ 174. To the extent Class Plaintiffs suggest that a conspiracy was entered into between REV Group and its subsidiaries, that theory is foreclosed by *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 777 (1984), which held that a parent corporation and its subsidiary are incapable of conspiring with each other under Section 1 of the Sherman Act.

¶ 11; Prov. Compl. at 1), even though it does not manufacture fire apparatus (IPPC ¶¶ 124; DPPC ¶ 31)—does not salvage their claims. Under Seventh Circuit law, a complaint must allege what *each* defendant did to join or participate in the alleged restraint of trade; it cannot rely on a defined term to collapse distinct legal entities into one undifferentiated actor. Indeed, the requirement of defendant-specific pleading is the "most basic consideration underlying" the pleading standards: "[I]n a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation" so as to provide adequate notice of the claims asserted against it. *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016). This is because "[l]iability is personal." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). "An allegation that someone [engaged in wrongful conduct] does not propound a plausible contention that *a particular person* did anything wrong." *Id.* (emphasis in original); *cf. Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019) (affirming dismissal where amended complaint "merely replaced general allegations against 'the Defendants' or 'Infinium' with lists of the Individual Defendants' names").

For these reasons, Plaintiffs fail to "set forth facts establishing direct participation" by REV Group "in the alleged conspiracy," *In re California Title Ins. Antitrust Litig.*, 2009 WL 1458025, at *7, and their Section 1 claims against REV Group should be dismissed.

## II. Class Plaintiffs, Leominster, and Providence Fail to Plead That REV Group Is Vicariously Liable for Actions of its Subsidiaries Under an Alter-Ego Theory

To the extent Plaintiffs seek to impose Section 1 liability against REV Group on the basis that REV Group is vicariously liable for the acts of its subsidiaries, their claims still fail.

It is black-letter law that a subsidiary's acts are not automatically imputed to its parent. *E.g.*, 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 43 (rev. ed. 2025). Indeed, the Supreme Court has described this general principle as "deeply ingrained in our

economic and legal systems." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also IDS Life Ins. Co. v. SunAmerica, Inc.*, 136 F.3d 537, 540–41 (7th Cir. 1998) (observing that a parent's control, direction, or supervision of subsidiaries is not a basis for piercing the corporate veil to hold a parent corporation liable for acts of its subsidiaries).

In the antitrust context, the default rule of corporate separateness may be disregarded only where a plaintiff pleads facts showing that the subsidiary is a "mere instrumentality" or "sham corporation formed to shield [the parent] from liability." *H.J., Inc. v. Int'l Tel. & Tel. Corp.*, 867 F.2d 1531, 1549 (8th Cir. 1989) (holding parent could not be liable for alleged antitrust violations of subsidiary); *see also Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 820 (7th Cir. 2014) (applying the principle that "American law does not collapse parents and subsidiaries" in antitrust case). Courts will not disregard the corporate form unless the facts alleged reflect far more than mere "control over certain aspects of [a] subsidiary's business[.]" *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 386–88 (M.D. Pa. 2009) (holding parent corporation in Sherman Act action was not alter ego of subsidiary). Ordinary corporate oversight and uniformity in procedures between the parent and subsidiary do not suffice because they are a "practical necessity for [the parent] to monitor corporate growth and maximize efficiency." *Id.* at 386; *see also City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*, 830 F. Supp. 2d 550, 555 (S.D. Ill. 2011) ("[c]ontrol that is consistent with investor status—that is, monitoring the subsidiary's performance, supervising the subsidiary's finance and capital budget decisions, and articulating general policies" cannot be a basis for disregarding the corporate form). Plaintiffs must allege facts showing *complete* disregard for the corporate form through allegations of, for instance, total control by the parent over the day-to-day business and financials of its subsidiaries, a lack of

separate books and financials, and the parent holding the subsidiary out as its agent. *See In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 598–99 (M.D. Pa. 2009).

The Complaints do not come close to meeting this demanding standard. Plaintiffs nowhere allege that REV Group exercised complete domination over its relevant subsidiaries—E-ONE, KME, Ferrara, Spartan, Smeal, Ladder Tower, or DTM—such that any of those entities was a mere instrumentality. In fact, the Complaints affirmatively plead the opposite: that each subsidiary is an independently operating manufacturer (DPPC ¶¶ 32–38; IPPC ¶¶ 128–131; Leo. Compl. ¶¶ 28–29; Prov. Compl. ¶¶ 39–40) that has manufactured Fire Apparatus for decades under its own name—for example, E-ONE since 1974, KME since 1946, Ferrara since 1979, and Smeal since 1955. DPPC ¶¶ 10, 12, 14, 18, 32–38, 105; IPPC ¶¶ 128–13; Leo. Compl. ¶57 These are the hallmarks of legitimate, separately functioning entities.

To the extent Plaintiffs rely on their scattered allegations of parent-level oversight, these fall far short of the domination required to disregard the corporate form. At most, the Complaints allege that REV Group's fire apparatus operations are "center-led," that REV Group manages the execution of "margin improvement actions" across its subsidiaries, and that it coordinates its subsidiaries' brands and dealers. IPPC ¶ 191; DPPC ¶ 116; Leo. Compl. ¶ 63. But the exercise of ordinary parental oversight over a subsidiary's strategy, finances, and general policies is precisely the sort of conduct that courts have found insufficient to disregard the corporate form. *See, e.g.*, *Bestfoods*, 524 U.S. at 61–62, 72 (reasoning that monitoring a subsidiary's performance, supervision of its finance and capital budget decisions, and implementation of general policies are not a basis for piercing the corporate veil). Were it otherwise, the principle of corporate separateness would be rendered a nullity.

Having pleaded that the subsidiaries are the relevant actors, Class Plaintiffs cannot turn around and impute acts to the parent corporation without pleading a basis to disregard the corporate separateness they themselves have alleged.

## III. The Analogous State Law Claims Against REV Group Fail Alongside Plaintiffs' Deficient Section 1 Claims

Plaintiffs' analogous state claims against REV Group fail for the same reasons. "[B]ecause state antitrust law applies the same standards as federal antitrust law under the Sherman Act, plaintiffs' state law claims rise or fall with their federal antitrust claims." *Robinson v. HP, Inc.*, 2025 WL 2802077, at *19 (N.D. Ill. Sept. 30, 2025); *In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 819 (N.D. Ill. 2020), *aff'd sub nom. Mayor & City Council of Baltimore v. AbbVie Inc.*, 42 F.4th 709 (7th Cir. 2022) ("Because the federal antitrust claims fail, the state antitrust claims fail, too."); *In re Tamoxifen Citrate Antitrust Litig.*, 277 F. Supp. 2d 121, 139 (E.D.N.Y. 2003), *aff'd*, 466 F.3d 187 (2d Cir. 2006) ("[S]ince Plaintiffs fail to state a claim under the Sherman Act, and since the state antitrust law claims are based on the same allegations, those claims are also dismissed."). Since Plaintiffs fail to allege any circumstantial evidence that could plausibly give rise to an inference that REV Group entered into any agreement to restrain trade, their state law claims against REV Group premised on those same allegations necessarily fail as well.

## CONCLUSION

For these reasons and those articulated in Defendants' other briefs, Plaintiffs' Section 1 claims against REV Group,[5] and their analogous state law claims against REV Group,[6] should all be dismissed.

[5] DPPC Count 1; IPPC Counts 1 and 2; Leo. Compl. Counts 1 and 2; and Prov. Compl. Count 2.

[6] IPPC Counts 4–9, 12, 14, 16, 18, 21–22, 24–27, 30, 33, 35, 37, 39–40, 42–44, 46, 49, and 51–54; Leo. Compl. Count 3; and Prov. Compl. Count 4.

Dated: August 17, 2026

Respectfully submitted,

s/ *Daniel J. Vaccaro*

Daniel J. Vaccaro (Bar No. 1018037)
Joseph L. Olson (Bar No. 1046162)
Ena M. Allen (Bar No. 1101342)
MICHAEL BEST & FRIEDRICH LLP
790 North Water Street, Suite 2500
(414) 271-6560
djvaccaro@michaelbest.com
jlolson@michaelbest.com
ena.allen@michaelbest.com

Arthur J. Burke (Bar No. 1175568)
DAVIS POLK & WARDWELL LLP
450 Lexington Ave
New York, NY 10017
(212) 450-4000
arthur.burke@davispolk.com

Sean Stefanik (Bar No. 5637913)
DAVIS POLK & WARDWELL LLP
1050 17th Street, NW
Washington, DC 20036
(202) 962-7000
sean.stefanik@davispolk.com

*Counsel for Defendants REV Group, LLC (formerly REV Group, Inc.), E-One, Inc., Kovatch Mobile Equipment Corp., Ferrara Fire Apparatus, Inc., Spartan Fire, LLC, Smeal SFA, LLC, Smeal LTC, LLC, and Detroit Truck Manufacturing, LLC*