**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

| | |
|---|---|
| IN RE: FIRE APPARATUS ANTITRUST LITIGATION | Case No. 2:26-md-03179-WCG<br>MDL No. 3179<br>Hon. William C. Griesbach |
| This document relates to:<br>*Indirect Purchaser Class* | |

**MEMORANDUM IN SUPPORT OF DEFENDANT FIRE APPARATUS MANUFACTURERS' ASSOCIATION'S MOTION TO DISMISS INDIRECT PURCHASER PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

Page(s)


INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 3

I. IPPs Fail to Plead an Agreement by FAMA to Restrain Firetruck Production or Raise Fire Truck Prices (Count I) ........ 3

A. IPPs Do Not Allege Direct Evidence of An Agreement By FAMA to Restrict Output or Raise Prices ........ 4

B. IPPs Do Not Plausibly Allege Circumstantial Evidence of An Agreement by FAMA to Restrict Production or Raise Prices ........ 4

1. FAMA's Role as A Trade Association is Insufficient ........ 5

II. IPPs Fail to Plead that FAMA Facilitated a Conspiracy ........ 7

III. The Plaintiffs Have Not Plausibly Alleged that FAMA Violated Any of the 20 Consumer Protection Laws Claimed ........ 9

IV. The Plaintiffs Have Not Plausibly Alleged that FAMA Was Unjustly Enriched ........ 9

CONCLUSION ........ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*7-UP Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*,
191 F.3d 1090 (9th Cir. 1999)........................................................................................ 8

*Amory Investments LLC v. Utrecht-America Holdings, Inc.*,
74 F.4th 525 (7th Cir. 2023)........................................................................................ 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 2, 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 3

*In re Broiler Chicken Antitrust Litig.*,
702 F. Supp. 3d 635 (N.D. Ill. 2023) .......................................................................... 5

*In re Dealer Mgmt Sys. Antitrust Litig.*,
313 F. Supp. 3d 931 (N.D. Ill. 2018) .......................................................................... 4

*In re High Fructose Corn Syrup Antitrust Litig.*,
295 F.3d 651 (7th Cir. 2002)........................................................................................ 4

*In re ICE LIBOR Antitrust Litig.*,
No. 19-cv-439, 2020 U.S. Dist. LEXIS 53248, (S.D.N.Y. Mar. 26, 2020) ................................ 7

*In re Local TV Advertising Antitrust Litigation*,
2022 U.S. Dist. LEXIS 154551................................................................................ 7, 8

*In re Musical Instruments and Equipment Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015)...................................................................................... 5

*In re Passenger Vehicle Replacement Tires Antitrust Litig.*,
767 F. Supp. 3d 681 (N.D. Oh. 2025) ......................................................................... 7

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622 (7th Cir. 2010)........................................................................................ 4

*In re Turkey Antitrust Litig.*,
642 F. Supp. 3d 711 (N.D. Ill. 2022) .......................................................................... 4

*Kleen Prods. LLC v. Georgia-Pacific LLC*,
910 F.3d 927 (7th Cir. 2018)........................................................................................ 6

*Maple Flooring Manufacturers Ass'n v. United States*,
268 U.S. 563 (1925) .......... 6

*Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*,
29 F.4th 337 (7th Cir. 2022) .......... 3

*Nova Designs, Inc. v. Scuba Retailers Ass'n*,
202 F.3d 1088 (9th Cir. 2000) .......... 5

*Omnicare, Inc. v. Unitedhealth Group, Inc.*,
629 F.3d 697 (7th Cir. 2011) .......... 3, 7

*Santiago v. Tesla*,
757 F. Supp. 3d 831 (N.D. Ill. 2024) .......... 8

*Std. Iron Works v. Arcelormittal*,
639 F. Supp. 2d 877 (N.D. Ill. 2009) .......... 3

*Wash Cty.. Health Care Auth., Inc. v. Baxter Int'l Inc.*,
328 F. Supp. 3d 824 (N.D. Ill. 2018) .......... 5, 6

*Wilk v. Am. Med. Ass'n*,
895 F.2d 352 (7th Cir. 1990) .......... 5

## INTRODUCTION[1]

Defendant Fire Apparatus Manufacturers' Association ("FAMA") is a not-for-profit trade association for fire apparatus manufacturers.[2] CCAC ¶ 146. Indirect Purchaser Plaintiffs (IPPs) do not, and cannot, allege that (1) FAMA manufactures Fire Apparatus or Fire Apparatus components; (2) FAMA sells any Fire Apparatus or Fire Apparatus components; nor (3) that FAMA has any transactional relationship whatsoever with any plaintiff in this action.

IPPs allege two conspiracies—an agreement among the manufacturers to restrain fire truck production in order to inflate prices (IPPC First Claim for Relief); and an agreement to exchange competitively sensitive information through FAMA (IPPC Second Claim for Relief). First, regarding the IPPC's First Claim for Relief, not only do Plaintiffs fail to plausibly allege agreement among all the defendants, but they specifically fail to allege concrete facts establishing agreement by FAMA to restrain fire truck production to inflate fire truck prices. Alleging no direct evidence of any such conspiracy, Plaintiffs rely on circumstantial evidence but fail to sufficiently plead parallel conduct among Defendants and "plus factors". (*see Twombly* Br.). Much is made of FAMA's role as a trade association, but Manufacturer Defendants' membership in FAMA does not constitute agreement by FAMA to restrain fire truck production in order to inflate prices. Second, in their Second Claim for Relief, the Plaintiffs allege that Defendants conspired by

[1] Defendant FAMA incorporates by reference the background, legal standards, and arguments set forth in Memoranda of Points and Authorities in Support of the Defendants' Joint Motion to Dismiss for Lack of Antitrust Standing, Defendants' Joint Motion to Dismiss Class Plaintiffs' Consolidated Amended Complaints, Defendants' Joint Motion to Dismiss the Indirect-Purchaser Plaintiffs' State Law Claims, and Defendants' Joint Motion to Dismiss the City of Leominster and City of Providence Complaints.

[2] Although the IPPC asserts that FAMA is a "not-for-profit trade association for fire apparatus manufacturers, located in Ocala, Florida", FAMA is actually a Virginia not-for-profit Section 501(c)(6) trade association with its principal office located in Greenwell Springs, Louisiana.

exchanging competitively sensitive information through FAMA. They do not allege any horizontal agreement among all Defendants to share information with each other; rather, they allege a series of discrete vertical agreements with FAMA. (*See Twombly* Br.) They did not plausibly plead that FAMA facilitated a conspiracy, which would have required them to allege facts showing that FAMA's circulation of information enabled the putative co-conspirators to tacitly communicate with one another.

These failures not only doom IPP's federal antitrust claims against FAMA but also the myriad state law antitrust claims that are based on those doomed federal antitrust claims. Similarly, Plaintiffs have swept FAMA into their sprawling state law claims without any differentiation between trade association FAMA and the Manufacturer Defendants. In so doing, Plaintiffs fail to plead facts sufficient to plausibly allege that FAMA violated any of the 20 state consumer protection laws on which the Plaintiffs bring their boilerplate claims. Accordingly, the Court should grant FAMA's motion to dismiss as to the IPPC.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court accepts as true the well-pleaded factual allegations for purposes of a motion to dismiss, but that tenet "is inapplicable to legal conclusions." *Id.* In the Sherman Act context, "only by taking care to require allegations that reach the level of suggesting conspiracy" can the Court "hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence to support a §1 claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) (quotation and alteration omitted).

## ARGUMENT

### I. IPPs Fail to Plead an Agreement by FAMA to Restrain Firetruck Production or Raise Fire Truck Prices (Count I)

"To state a Section 1 claim, a plaintiff must allege that the defendant (1) entered into an agreement that (2) unreasonably restrains trade in the relevant market and (3) caused the plaintiff an antitrust injury." *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 343 (7th Cir. 2022). To allege an unlawful agreement, a plaintiff must allege facts from which the Court can plausibly infer that the defendants "had a conscious scheme designed to achieve an unlawful objective." *Omnicare, Inc. v. Unitedhealth Group, Inc.*, 629 F.3d 697, 706 (7th Cir. 2011). "That is, the circumstances of the case must reveal a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful agreement." *Id.*

Moreover, the complaint "must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *Std. Iron Works v. Arcelormittal*, 639 F. Supp. 2d 877, 900 (N.D. Ill. 2009) (quotes omitted).

A plaintiff may plead an agreement through direct or circumstantial evidence. *In re Dealer Mgmt Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 949 (N.D. Ill. 2018).

### A. IPPs Do Not Allege Direct Evidence of An Agreement By FAMA to Restrict Output or Raise Prices

The IPPC does not allege any direct evidence of conspiracy or agreement —there is no "smoking gun"[3] presented that FAMA had entered into an illegal agreement to fix prices or reduce output with the Manufacturer Defendants. The IPPC makes no such allegations against FAMA. It does not allege any admission of conspiracy by FAMA nor any of its officers or board members. It does not allege any meeting, call, or other setting where FAMA explicitly agreed to a conspiracy.

### B. IPPs Do Not Plausibly Allege Circumstantial Evidence of An Agreement by FAMA to Restrict Production or Raise Prices

IPPs fail to allege parallel conduct, and they fail to allege "plus factors" placing any parallel conduct in the context of a preceding agreement as to all defendants. *See Twombly* Br. What IPPs suggest as evidence of parallel conduct or "plus factors" is largely inapplicable to FAMA.

IPPs group the Defendants into two categories: (1) "Defendants" consists of all named Defendants; IPPC ¶ 2 and (2) "Manufacturing Defendants" consists of Oshkosh Corporation; Pierce Manufacturing, Inc.; REV Group, Inc.; and Rosenbauer America LLC ("including as they acted through, or by directing or controlling, any of their subsidiaries."). IPPC ¶1, n. 2. This differentiation between FAMA and the other Defendants is understandable since FAMA is a not-

[3] "[D]irect evidence in a Section 1 must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted." *In re High Fructose Corn Syrup Antitrust Litig*., 295 F.3d 651, 661 (7th Cir. 2002)(quotation omitted). "Direct evidence is equivalent to a 'smoking gun.;" *In re Turkey Antitrust Litig.,* 642 F. Supp. 3d 711, 722 (N.D. Ill. 2022) (quoting *Omnicare*, 629 F.3d at 706). In the Sherman Act context, direct evidence "usually take[s] the form of an admission by an employee of one of the conspirators[] that officials of the defendants had met and agreed explicitly on the terms of a conspiracy." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010).

for-profit trade association as opposed to a manufacturer. The alleged economic evidence that is the foundation of the IPPs claims against the Manufacturer Defendants is therefore largely irrelevant as to proving agreement by the non-manufacturer FAMA. *See In re Broiler Chicken Antitrust Litig*., 702 F. Supp. 3d. 635, 677 (N.D. Ill. 2023)(granting summary judgment for Agri Stats who, Plaintiffs alleged, participated in the alleged conspiracy as a communications conduit of producer-specific production and price data, but, as a non-producer themselves, did not stand to benefit directly from the object of the conspiracy). The IPPC's central factual allegations—price increases, capacity decisions, acquisitions/roll-ups, backlog strategies, floating prices, and public investor statements—all concern the Manufacturer Defendants. They do not sufficiently allege that FAMA agreed to restrain output to raise prices.

**1. <u>FAMA's Role as A Trade Association is Insufficient</u>**

Plaintiffs cannot satisfy their obligation to plausibly plead an agreement by FAMA to restrain firetruck production and raise prices simply by pointing to FAMA's role as a trade association. *See, e.g., Wilk v. Am. Med. Ass'n*, 895 F.2d 352, 374 (7th Cir. 1990)("a trade association is not, just because it involves action by competitors, a 'walking conspiracy'"); *Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1092 (9th Cir. 2000)("membership [in an association] alone is not proof of an agreement").

"[T]rade organizations are ubiquitous and serve numerous legitimate and procompetitive purposes." *Wash Cty. Health Care Auth., Inc. v. Baxter Int'l Inc*., 328 F. Supp. 3d 824, 843 (N.D. Ill. 2018)(*see also In re Musical Instruments and Equipment Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir. 2015)("[T]rade organizations often serve legitimate functions, such as providing information to industry members, conducting research to further the goals of the industry, and promotion demand for products and services."). Indeed, the Supreme Court ruled over a century

ago that "the members of trade associations [do not] become…conspirators merely because they gather and disseminate information…bearing on the business in which they are engaged and make use of it in the management and control of their individual businesses." *Maple Flooring Manufacturers Ass'n v. United States*, 268 U.S. 563 (1925). Therefore, "absent additional facts addressing the content of defendants' discussions at or the (nefarious) subjects of trade organization meetings, allegations that defendants were members of the same trade organizations are unspectacular and fail to move the needle." *Wash. Cty.*, 328 F. Supp. at 843.

Plaintiffs allege that "FAMA also organizes twice-yearly meetings, in the spring and the fall, to 'provide a forum [for members] to share information.'" IPPC ¶229. Attendees at these meetings "listen to presentations that include economic forecasts regarding the Fire Apparatus manufacturing market", engage in "purchasing roundtables" (which the Plaintiffs do not attempt to define), and "networking". IPPC ¶ 230-232. Based on that, the Plaintiffs summarily conclude, "Manufacturer Defendants had ample time and opportunity to exchange information and coordinate supply restrictions and price hikes at these meetings." IPPC ¶ 232. Nowhere do the Plaintiffs actually allege what was specifically said during these annual meetings, let alone specifically allege any agreement to fix prices or reduce output.

When stripped of their conclusory rhetoric, these paragraphs stand for nothing more than the unremarkable proposition that FAMA held annual meetings attended by its members. Courts repeatedly reject the argument that simply hosting or attending such events raises an inference of conspiracy. *See e.g., Washington Cnty.*, 328 F. Supp. 3d at 843*; Kleen Prods. LLC v. Georgia-Pacific LLC*, 910 F.3d 927, 938 (7th Cir. 2018)(Plaintiffs argued that the defendants' regular communication by phone and at trade association meetings served as opportunities for collusion "[b]ut having the opportunity to conspire does not necessarily imply that wrongdoing occurred.");

*In re Passenger Vehicle Replacement Tires Antitrust Litig*., 767 F. Supp. 3d 681, 712 (N.D. Oh. 2025)("[T]he Court follows the well-trodden path of other courts in concluding that defendants' mere attendance at these trade associations meetings contributes little, if anything, to the plausibility of the alleged conspiracy."); *In re ICE LIBOR Antitrust Litig*., No. 19-cv-439, 2020 U.S. Dist. LEXIS 53248, at*6 (S.D.N.Y. Mar. 26, 2020)("[S]imply alleging an opportunity to conspire without providing any evidence whatsoever that any such discussions actually took place is insufficient to survive a motion to dismiss.").

Because activities such as holding meetings or gathering and disseminating information on topics of interest to the industry are presumptively legitimate, they neither evidence agreement of illicit criminal conspiracy by the trade association nor establish a "conscious commitment to a common scheme designed to achieve an unlawful objective." *See Omnicare, Inc. v. UnitedHealth Group, Inc*., 629 F.3d at 706.

## II. IPPs Fail to Plead that FAMA Facilitated a Conspiracy

IPPs allege that "the Manufacturer Defendants shared competitively sensitive information to facilitate their scheme [to raise prices and restrict output] through…FAMA." IPPC ¶ 7. Further, the Complaint also alleges that the Manufacturer Defendants used FAMA "as a vehicle to improperly share information about supply and price among competitors…" IPPC ¶ 22. As a result, IPPs have attempted to wedge FAMA into the "fairly unique" "conduit" theory of antitrust liability. *See In re Local TV Advertising Antitrust Litigation*, 2022 U.S. Dist. LEXIS 154551, at *19 (N.D. Ill. Aug. 29, 2022). Data "intermediaries can be liable under § 1 if they facilitate the making or enforcement of an agreement among producers." *Amory Investments LLC v. Utrecht-America Holdings, Inc.*, 74 F. 4th 525, 527 (7th Cir. 2023). Under this theory, IPPs were required to set forth concrete allegations that FAMA (1) circulated information that "enabled co-

conspirators to tacitly communicate with one another," and (2) "compromised 'the ostensible anonymity' of any competitively sensitive information [allegedly] circulated." *See Loc. TV*, 2022 U.S. Dist. LEXIS 154551 at *25. IPPs have failed to do both. As addressed in the *Twombly* Br., the data involved in the alleged exchange of information—like the data at issue in *Local TV*—is aggregated and anonymized sales and order statistics that "conceal the identity of [a] company or of any specific transaction."[4] Although IPPs allege that "FAMA . . . guide[d] members on how to derive their own market share from FAMA data on the website" ¶ 215 (emphasis added) — presumably implying that FAMA compromised the anonymity of its website data to help members find data **specific to them**—nowhere do IPPs allege that FAMA compromised the anonymity of its website data in such a way that would have allowed members to view data **specific to an individual competitor.** Without asserting as much, IPPs effectively eliminate any possibility of members tacitly communicating with each other, as opposed to a pool of information collected by FAMA. *See, e.g., Loc. TV*, 2022 U.S. Dist. LEXIS 154551 at *7 (dismissing a data intermediary from an information exchange claim under § 1 because, among other things, plaintiffs "lack[ed] any well-pled allegation that [its] circulation of . . . data secretly served to channel Defendant [] A's . . . [deanonymized] data to Defendant [] B."); *See also, 7-UP Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*, 191 F.3d 1090, 1098 (9th Cir. 1999) ("[g]athering information about pricing and competition in the industry is standard fare for trade associations. If we allowed conspiracy to be inferred from such activities alone, we would have to allow an inference of conspiracy whenever a trade association took almost any action.").

---

[4] As noted in n. 10 in the *Twombly* Br., this information comes from FAMA's Data & Research Committee's webpage. Because the Plaintiffs reference that page in their Complaints, its contents are incorporated by reference into the Complaint and may be considered on a motion to dismiss. *See Santiago v. Tesla*, 757 F. Supp. 3d 831, 842 n.1 (N.D. Ill. 2024).

## III. The Plaintiffs Have Not Plausibly Alleged that FAMA Violated Any of the 20 Consumer Protection Laws Claimed

Not only are the IPP's threadbare consumer-protection claims insufficient against all Defendants, but they are particularly lacking regarding FAMA. Using nearly identical boilerplate language across the 20 alleged state consumer protection law violations, Plaintiffs merely claim action by "Defendants" without differentiating between the manufacturer Defendants and non-manufacturer Defendant, FAMA. In so doing, they fail to sufficiently plead how FAMA—a not-for-profit trade organization that does not manufacture, sell, or distribute fire apparatus or components, nor have any transactional relationship whatsoever with "consumers" of fire apparatus—violated any of those 20 state consumer protection laws.

## IV. The Plaintiffs Have Not Plausibly Alleged that FAMA Was Unjustly Enriched

In addition to the reasons put forth in the Defendant's Joint Motion to Dismiss the IPP State Law Claims, the IPPC's unjust enrichment claim (Claim 55) specifically fails as to FAMA because Plaintiffs have not sufficiently pled the essential elements of the claim against FAMA. Plaintiffs again lump FAMA in with the qualitatively different manufacturer Defendants and then summarily claim "Defendants have and will continue to be unjustly enriched by the receipt of unlawfully inflated prices and unlawful profits." IPPC ¶ 421. This cannot apply to FAMA. The IPPC does not specifically allege that FAMA received any portion of the alleged overcharges paid by Plaintiffs for fire apparatus.

Because the Complaint fails to allege that any benefit was conferred upon FAMA by Plaintiffs, or that FAMA retained any benefit derived from the alleged overcharges, the unjust enrichment claim fails to state a claim against FAMA and must be dismissed.

## CONCLUSION

For the foregoing reasons, as well as those stated in Defendants' Joint Motion to Dismiss for Lack of Antitrust Standing, Defendants' Joint Motion to Dismiss Class Plaintiffs' Consolidated Amended Complaints, and Defendants' Joint Motion to Dismiss the Indirect-Purchaser Plaintiffs' State Law Claims, the Court should grant FAMA's motion to dismiss the IPPC.

Dated this 17th day of August 2026.

*/s/ Marcella S. Spoto* .
Marcella S. Spoto
John P. Loringer
Wilson Elser Moskowitz Edelman & Dicker, LLP
555 E. Wells Street, Suite 1730
Milwaukee, WI 53202
P: 414-276-8816
marcella.spoto@wilsonelser.com
john.loringer@wilsonelser.com

*Attorneys for Defendant, Fire Apparatus Manufacturers' Association*