**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

| | |
|---|---|
| IN RE: FIRE APPARATUS ANTITRUST LITIGATION | Case No. 2:26-md-03179-WCG<br><br>MDL No. 3179<br><br>Hon. William C. Griesbach |
| This document relates to:<br><br>*City of Leominster v. Oshkosh Corp., et al.*, Case No. 26-cv-01105<br><br>*City of Providence v. Oshkosh Corp., et al.*, Case No. 26-cv-01198 | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS CITY OF LEOMINSTER AND CITY OF PROVIDENCE COMPLAINTS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 1

LEGAL STANDARD ..... 3

ARGUMENT ..... 3

I. Leominster and Providence Fail to State a Section 1 Sherman Act Claim ..... 4

A. Leominster Fails to Plausibly Allege a Conspiracy to Restrict Production (Count 1) ..... 4

B. Leominster and Providence Fail to Plausibly Allege a Conspiracy to Exchange Information (Count 2) ..... 6

II. Providence Fails to State a Section 7 Clayton Act Claim (Count 1) ..... 8

III. Providence Fails to State a Clayton Act Section 3 Claim (Count 3) ..... 10

IV. Leominster's and Providence's State Law Claims Fall with Their Federal Claims ..... 11

CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**CASES**

*Action Ambulance Service, Inc. v. Atlanticare Health Services, Inc.*,
815 F. Supp. 33 (D. Mass. 1993) ........................................................................ 11

*Agnew v. National Collegiate Athletic Ass'n*,
683 F.3d 328 (7th Cir. 2012) ........................................................................ 6, 7

*Audo Car Stereo, Inc. v. Little Guys, Inc.*,
2004 WL 3019298 (N.D. Ill. Dec. 28, 2004) ........................................................ 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................ 3, 5

*Birkley v. Amazon.com Services LLC*,
813 F. Supp. 3d 906 (E.D. Wis. 2025) ........................................................ 3

*Choh v. Brown University*,
753 F. Supp. 3d 117 (D. Conn. 2024) ........................................................ 7

*In re Dealer Management System Antitrust Litigation*,
313 F. Supp. 3d 931 (N.D. Ill. 2018) ........................................................ 10

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
504 U.S. 451 (1992) ........................................................................ 10

*ERI Max Entertainment, Inc. v. Streisand*,
690 A.2d 1351 (R.I. 1997) ........................................................................ 11

*FTC v. Advocate Health Care Network*,
841 F.3d 460 (7th Cir. 2016) ........................................................................ 8

*MJ's Marketing, Inc. v. Jushi Holdings, Inc.*,
766 F. Supp. 3d 197 (D. Mass. 2025) ........................................................ 11

*Ohio v. American Express Co.*,
585 U.S. 529 (2018) ........................................................................ 6

*Reilly v. Apple Inc.*,
578 F. Supp. 3d 1098 (N.D. Cal. 2022) ........................................................ 7

*Santiago v. Tesla, Inc.*,
757 F. Supp. 3d 831 (N.D. Ill. 2024) ........................................................ 8

*Siva v. American Board of Radiology*,
38 F.4th 569 (7th Cir. 2022) ........................................................................ 3

*Tampa Electric Co. v. Nashville Coal Co.*,
365 U.S. 320 (1961)........................................................................................ 10

**STATUTES**

Mass. Gen. Laws Ann. Ch. 93, § 1 ............................................................................ 11

Mass. Gen. Laws Ann. Ch. 93A, § 11........................................................................... 11

## INTRODUCTION[1]

Leominster's and Providence's complaints recycle the same deficient claims as Class Plaintiffs and NCAPs. Their stray differences add nothing material so both complaints fail for the same reasons already briefed. Start with conspiracy: neither plausibly alleges an agreement among Defendants or any anticompetitive information exchange. Providence's acquisition claims fail too, because it never alleges facts showing that the Maxi-Métal or BME acquisitions substantially lessened competition, among other defects. Nor does Providence's piggyback replacement parts claim fare any better than NCAPs' identical theory: both rest on a legally deficient single-brand aftermarket theory and fail to plead substantial foreclosure. And because Leominster's and Providence's state law claims depend on the same deficient federal theories, they fall too. For these reasons, both complaints should be dismissed.

## BACKGROUND[2]

As detailed in Defendants' contemporaneously filed briefs, the cases within this MDL arise out of the fire truck industry. Fire trucks are specialty vehicles designed for use under emergency conditions to support the suppression of fires or the mitigation of other hazardous conditions. Leo. Compl. ¶¶ 4, 147; Prov. Compl. ¶¶ 146, 171; *see also* Class Br. § A; Non-Class Br. § A. They are "expensive, made-to-order" equipment, often built to customers' custom specifications, with long lead times for delivery. Leo. Compl. ¶¶ 147, 149; Prov. Compl. ¶¶ 171, 174. The COVID-19 pandemic—which brought unprecedented demand, supply chain and labor shortages, and inflation—resulted in increased lead times and prices. *See* Leo. Compl. ¶¶ 117–18, 130, 152; Prov. Compl. ¶¶ 105, 111, 114.

---

[1] Defendants incorporate by reference the glossary set forth in their Class Brief.

[2] Defendants assume (but do not concede) the truth of the well-pleaded allegations.

Plaintiff Leominster is a municipality in Massachusetts, Leo. Compl. ¶ 19, and Plaintiff Providence is a municipality in Rhode Island, Prov. Compl. ¶ 26. Like the other Plaintiffs in this MDL, both allege that they purchased fire trucks for their fire departments at inflated prices due to Defendants' anticompetitive conduct. *See* Leo. Compl. ¶¶ 1, 17, 20–22; Prov. Compl. ¶ 199–206, 216.

Leominster's and Providence's complaints each name the same five Defendants: Oshkosh, Pierce, REV Group, Rosenbauer, and FAMA.[3] Oshkosh and REV Group are parent corporations of subsidiaries that manufacture fire trucks (among other products). *See* Leo. Compl. ¶¶ 26, 28–29, 33–35; Prov. Compl. ¶¶ 31–34, 37–40, 42; *see also* Class Br.§ B; Non-Class Br. § B.[4]

Leominster and Providence assert a mix of claims asserted by the other plaintiffs:

- Leominster copies the Class Plaintiffs' complaints, asserting five claims—two under the Sherman Act and three under Massachusetts state law—based on the same conspiracies to restrict production and exchange competitively sensitive information through FAMA since 2016. Leo. Compl. ¶¶ 168–230; *cf.* Class Br. § C.

- Providence's complaint is a patchwork of claims lifted from the Class Plaintiffs' and NCAPs' complaints. Like Class Plaintiffs (and Leominster), it alleges the same conspiracy to exchange anticompetitive information through FAMA under Section 1 of the Sherman Act and the Rhode Island Antitrust Act. Prov. Compl. ¶¶ 228–34, 240–46. Like NCAPs and DPPs, it asserts a Section 7 Clayton Act claim against Oshkosh and Pierce based on Oshkosh's acquisition of Maxi-

[3] Providence originally named Terex Corporation, REV Group's parent corporation following a February 2026 merger, Prov. Compl. ¶ 37, but stipulated with REV Group to substitute Terex Corporation with REV Group, ECF No. 137 ¶ 3. Leominster names "REV Group, Inc." Following REV Group's merger with Terex Corporation, Leo. Compl. ¶ 30, "REV Group, LLC" became the surviving entity to REV Group, Inc. *See* ECF No. 136 ¶ 2.

[4] Leominster ignores Rosenbauer's manufacturer subsidiaries. *See* Leo. Compl. ¶ 38.

Métal and Pierce's acquisition of a 25% interest in Boise Mobile. *Id.* ¶¶ 223–27; *see also id.* ¶¶ 62–63.[5] And like NCAPs, it asserts an "exclusive dealing" claim against Oshkosh and Pierce under Section 3 of the Clayton Act and the Rhode Island Antitrust Act based on the same alleged agreements between Pierce and its authorized replacement parts dealers that supposedly force customers to purchase Pierce-branded replacement parts. Prov. Compl. ¶¶ 235–39, 247–51; *see also id.* ¶¶ 181–87. Lastly, Providence asserts a Rhode Island common law unjust enrichment claim based on all the same alleged conduct underlying its federal claims. *Id.* ¶¶ 252–56.

## LEGAL STANDARD[6]

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). It must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory," and "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555, 562. Adherence to the plausibility standard is particularly important in antitrust cases "to avoid the potentially enormous expense of [antitrust] discovery in cases with no reasonably founded hope of success." *Siva v. Am. Bd. of Radiology*, 38 F.4th 569, 575 (7th Cir. 2022).

## ARGUMENT

Leominster's and Providence's complaints largely cut and paste the theories and allegations from other Plaintiffs' consolidated amended complaints. Because their allegations add nothing materially different, both complaints fail for the reasons set forth in Defendants' briefs

[5] Providence does not specify the percentage of Pierce's ownership interest, unlike NCAPs or DPPs. *See* NCAPC ¶¶ 80, 135, 280; DPPC ¶¶ 29, 306.

[6] Unless stated otherwise, all quotes herein are "cleaned up." *See Birkley v. Amazon.com Servs. LLC*, 813 F. Supp. 3d 906, 910 (E.D. Wis. 2025) (Griesbach, J.) (adopting this convention).

supporting the joint motions to dismiss the consolidated amended complaints—incorporated by reference and summarize below—as well as for additional reasons.

## I. Leominster and Providence Fail to State a Section 1 Sherman Act Claim

Leominster's and Providence's Section 1 conspiracy claims depend on the same legal theories and essentially the same factual allegations as Class Plaintiffs' Section 1 claims. These Plaintiffs therefore equally fail to allege any plausible agreement among Defendants, and their information exchange claim fails for additional independent reasons. Their Section 1 claims should be dismissed.

### A. Leominster Fails to Plausibly Allege a Conspiracy to Restrict Production (Count 1)

Like Class Plaintiffs, Leominster fails to plead an agreement to restrict production of fire trucks amongst Defendants. *See* Class Br. § I.A. It relies on essentially the same alleged circumstantial evidence of an agreement as Class Plaintiffs, and therefore fails to plausibly allege either parallel conduct or plus factors for the same reasons.

*First*, Leominster's parallel conduct allegations are thin, conclusory, and reliant on impermissible group pleading. With respect to production, it alleges that only one non-defendant subsidiary of REV Group, KME, consolidated two manufacturing facilities in 2021, while otherwise relying on a conclusory allegation that Defendants have not increased production—an allegation contradicted by other allegations showing that *production has increased* industry wide over the alleged Class Period, including since the pandemic. *See* Leo. Compl. ¶¶ 130, 134–135; Class Br. 13. With respect to pricing, Leominster pleads no allegations about the price of fire trucks manufactured by Pierce, Rosenbauer, or REV Group's manufacturer subsidiaries during the Class Period, relying solely on the same few allegations about industry-wide average price increases as IPPs. *See* Leo. Compl. ¶¶ 5, 138; Class Br. 16. Like Class Plaintiffs, Leominster also tries to plead

parallel conduct through supposedly parallel acquisitions, but those alleged actions neither constitute evidence of parallel conduct nor actually occurred in parallel. *See* Leo. Compl. ¶¶ 56, 58, 72; Class Br. 16–17. Leominster further compounds its deficient allegations with pervasive group pleading, lumping REV Group, Oshkosh, and Rosenbauer together as "Manufacturer Defendants." *See, e.g.*, Leo. Compl. ¶¶ 118, 121, 137, 139, 141; Class Br. 17.

*Second*, Leominster pleads the same deficient plus factor allegations as Class Plaintiffs. Parroting them, Leominster claims Defendants' alleged failure to increase production ran against their independent self-interest in the absence of an agreement because "[u]nder typical competitive market conditions," the surge in demand during the pandemic "would be met with a corresponding increase in manufacturing capacity." Leo. Compl. ¶ 134. But as Defendants have explained, the antitrust laws do not require a firm to invest, expand, or compete harder than its own interests dictate. And like Class Plaintiffs, Leominster's own allegations point to the same "obvious alternative explanation," *Twombly*, 550 U.S. at 567: fire truck production requires "large capital outlays," the pandemic demand spike was short-lived, and "supply chain and labor shortage challenges" would have blocked any capacity increase regardless. *See* Leo. Compl. ¶¶ 130, 149, 152; Class Br. § I.A.2.b.i. Leominster's remaining plus factors fare no better: it fails to plead that any Defendants' membership in FAMA is anticompetitive or that a market in which upwards of 50 non-defendant manufacturers allegedly control 30% is highly concentrated or marked by high entry barriers, and market structure allegations are insufficient standing alone regardless. *See* Leo. Compl. ¶¶ 31, 36, 40–41, 114, 146–49; Class Br. § I.A.2.b.ii–iii.

In short, Leominster's claim fails alongside the Class Plaintiffs' identical claim for the same reason: it satisfies neither element of its burden to plead a conspiracy to restrict production.

### B. Leominster and Providence Fail to Plausibly Allege a Conspiracy to Exchange Information (Count 2)

Leominster and Providence both copy Class Plaintiffs' FAMA information-exchange claim, and these claims fail for the same three independent reasons. *See* Class Br. § I.B.

*First*, both fail to allege direct or circumstantial evidence of an agreement to exchange information amongst all Defendants. Like Class Plaintiffs, they allege a hub-and-spoke conspiracy in which "Manufacturer Defendants" exchanged information through FAMA statistical reports. *E.g.*, Leo. Compl. ¶ 12; Prov. Compl. ¶ 48. But, for the same reasons as Class Plaintiffs, they plead only vertical agreements between Manufacturer Defendant "spokes" and the FAMA "hub,"—not the horizontal "rim" agreement among Manufacturer Defendants that a hub and spoke conspiracy claim requires. *See* Class Br. 24.[7]

*Second*, both allege legally deficient relevant markets. Leominster copied IPPs' flawed market allegations, *compare* Leo. Compl. ¶¶ 142–44, *with* IPPC ¶¶ 280–82, so its putative "all fire trucks market" fails the interchangeability requirement for the same reasons. *See* Class Br. § I.B.2.

Providence fares even worse. Rather than commit to a market definition, it hedges: the market "is no broader than all fire trucks, and may be as narrow as custom fire trucks." Prov. Compl. ¶ 140. That deliberate equivocation falls well short of satisfying Providence's burden to plead an accurate, defined relevant market. *See Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018) ("[C]ourts usually cannot properly apply the rule of reason without an accurate definition of the relevant market."). Because Providence's alleged market could be anywhere between custom fire trucks and all fire trucks, its pleading fails. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d

[7] Leominster and Providence also fail to plead an agreement to exchange information because they allege that only two "Manufacturer Defendants"—Pierce and Rosenbauer—are members of FAMA, and they cannot plead Oshkosh's or REV Group's participation in FAMA through their subsidiary members. *See* Leo. Compl. ¶ 41; Prov. Compl. ¶ 46; *see also* REV Group Br. §§ I–II; Oshkosh Defs.' Br. § I.

328, 346 (7th Cir. 2012) (affirming dismissal where "the confines of that market [were] far too unclear" because it could have encompassed both "an overall market" or any of multiple "subsidiary market[s]"); *Audo Car Stereo, Inc. v. Little Guys, Inc.*, 2004 WL 3019298, at *7 (N.D. Ill. Dec. 28, 2004) (dismissing claims where plaintiffs alleged multiple products markets); *Choh v. Brown Univ.*, 753 F. Supp. 3d 117, 133 (D. Conn. 2024) (same where plaintiffs failed to "propose the contours of a relevant market"), *aff'd*, 2026 WL 1210124 (2d Cir. May 1, 2026).

The two putative markets Providence hedges between are legally deficient. *First*, a potential "fire trucks generally" market is based on the same allegations as Leominster's and Class Plaintiffs' proposed markets and fails for the same reasons—it groups together many types of trucks with many different purposes. *See* Prov. Compl. ¶¶ 146–56; Class Br. § I.B.2.a.

*Second*, the "custom fire trucks" market fails because Providence does not allege facts showing that custom fire trucks are interchangeable with each other but not with commercial fire trucks, as required. *See Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1108–09 (N.D. Cal. 2022). To the contrary, Providence alleges that custom trucks are built to fire departments' "diverse needs," Prov. Compl. ¶ 141, describing a universe of custom trucks nearly as vast as that of commercial trucks, *id.* ¶¶ 34, 43, 58. And the congressional testimony Providence cites shows only that customers prefer custom trucks, not that commercial trucks are never reasonable alternatives. *Id.* ¶¶ 143–44. Providence further muddles this market's scope, suggesting it may be as narrow as custom aerials and/or custom pumpers. *See id.* ¶ 168. That internal inconsistency compounds Providence's failure to give Defendants fair notice of the market it means to plead. *See Audo Car Stereo*, 2004 WL 3019298, at *7 (holding that inconsistent product market allegations failed to provide adequate notice under Rule 8(a)).

*Third*, both Leominster and Providence fail to plead that the alleged information exchange has anticompetitive potential for the same reasons as Class Plaintiffs. For starters, Leominster and Providence describe the information as aggregated and anonymized "sales and order statistics"—precisely the type that courts consistently hold does not violate the rule of reason. *See* Leo. Compl. ¶¶ 105, 110; Prov. Compl. ¶ 47; Class Br., Ex. A; *see also* Class Br. § I.B.2.b.i.[8] Furthermore, Leominster and Providence describe an industry structure that is not conducive to collusion in that fire trucks are non-fungible, "made-to-order" vehicles of which "[e]nd-users can specify nearly every aspect," and demand is elastic because customers can time their orders around price. *See* Leo. Compl. ¶¶ 147, 154–55; Prov. Compl. ¶¶ 196–97; Class Br. § I.B.2.b.ii. And they fail to allege a highly concentrated market for the same reasons discussed above. *See supra* p. 5; *see also* Class Br. 32.

Accordingly, like Class Plaintiffs, Leominster's and Providence's FAMA information-exchange claims fail every element of a Rule of Reason claim and should be dismissed.

## II. Providence Fails to State a Section 7 Clayton Act Claim (Count 1)

Providence alleges that Oshkosh's acquisition of Maxi-Métal and Pierce's acquisition of an ownership in interest in Boise Mobile violated Section 7 of the Clayton Act "whether considered individually or as a series of acquisitions." Prov. Compl. ¶ 225. But this is just a thinner rehash of NCAPs' allegations and fails for the same reasons.

*First*, Providence fails to allege a plausible product market, which is required for a Section 7 claim as well, for the same reasons discussed above. *FTC v. Advoc. Health Care Network*, 841 F.3d 460, 467 (7th Cir. 2016); *supra* pp. 6–7. Because Providence asserts its Section 7 claim across

---

[8] The Data & Research Committee's webpage is incorporated by reference in Leominster's and Providence's complaints and may be considered on a motion to dismiss. *See* Leo. Compl. ¶ 105; Prov. Compl. ¶ 47. *Santiago v. Tesla, Inc.*, 757 F. Supp. 3d 831, 842 n.1 (N.D. Ill. 2024).

all of the same indefinite, unsupported alleged markets, Prov. Compl. ¶¶ 223–24, that claim fails for the same reasons as its Section 1 claim.

*Second*, Providence fails to show a reasonable probability that either acquisition lessened or may lessen competition, much less substantially. *See* Non-Class Br. 24. Its allegations are the same conclusory ones NCAPs make and that the Non-Class Brief shows are insufficient under *Twombly*. *See* Prov. Compl. ¶¶ 24, 206, 225; Non-Class Br. §§ IV–V.A. If anything, Providence's version is thinner. Maxi-Métal is a Canadian manufacturer, Prov. Compl. ¶¶ 9, 63, and Pierce acquired only a partial interest in Boise Mobile, *id.* ¶ 62. Yet Providence never pleads facts showing that Maxi-Métal would have meaningfully entered the U.S. market or produced significant anticompetitive effects in the U.S. market, absent the acquisition, resting instead on a naked assertion that it was "poised" to expand. *Id.* ¶ 9; *see also* Non-Class Br. § IV. And Providence never explains how a partial interest lets Pierce control Boise Mobile's competitive conduct or lessen competition. *See* Non-Class Br. § V.A. Like NCAPs, Providence pleads facts cutting the other way, alleging the BME acquisition "enabled Pierce to expand its operations on the West Coast," where Boise Mobile primarily markets its wildland trucks. Prov. Compl. ¶ 62. That is a procompetitive effect, not an anticompetitive one.

*Third*, Providence's theory that the two acquisitions collectively lessened competition ignores that Section 7 analysis is transaction specific, *see* Non-Class Br. § III.A, and fails regardless because neither acquisition is plausibly anticompetitive on its own.

*Fourth*, Providence's claim, like NCAPs' identical claim, is untimely as to the BME acquisition. *See id.* § I.

Accordingly, Providence's Section 7 claims should be dismissed because it suffers all the same deficiencies as NCAPs' claim and more.

## III. Providence Fails to State a Clayton Act Section 3 Claim (Count 3)

Providence's Section 3 exclusive dealing claim is yet another retread of NCAP's deficient theory and fails for the same two independent reasons.

*First*, Providence's exclusive dealing claim rests on the same legally deficient single-brand "Pierce Replacement Parts" aftermarket that NCAPs allege. Prov. Compl. ¶ 188; *see* Non-Class Br. § VII.A. That market is legally deficient under *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992), because the viability of a single-brand market "depends on the consumer's unawareness of the supplier's aftermarket power and its terms when it purchased the primary-market product." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 962–63 (N.D. Ill. 2018). That rule forecloses Providence's alleged market: like NCAPs, Providence alleges that "Pierce requires its customers to purchase Pierce replacement parts *through provisions in product warranties provided to customers as part of the purchase agreement*." Prov. Compl. ¶ 187 (emphasis added); *see also* Non-Class Br. 42–43. The alleged aftermarket independently fails because Providence pleads no facts showing that competition in the foremarket is insufficient to discipline allegedly anticompetitive practices in the aftermarket. *See* Non-Class Br. 44.

*Second*, like NCAPs, Providence fails to plead that Pierce's alleged exclusive dealing arrangements substantially foreclose competition in the alleged aftermarket under *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961). *See* Non-Class Br. § VII.B. Like NCAPs, Providence alleges no facts going to the factors courts consider in this analysis. *See* Non-Class Br. 45–46. It also alleges that the arrangements include "White-Label" parts *manufactured by third parties*, Prov. Compl. ¶¶ 183, 189, and that customers can still buy other third-party parts—just at the risk of voiding their warranties, which is not a sufficient deterrent to switching. *Id.* ¶ 187; *see* Non-Class Br. 46–47. Providence thus shows no foreclosure, just as NCAPs did not.

## IV. Leominster's and Providence's State Law Claims Fall with Their Federal Claims

Leominster and Providence do not try to plead independent state law theories. Instead, they simply recycle the same conduct and hope different labels yield a different result. Not so: each state statute at issue applies the same standards as federal antitrust law, so each claims fails for the identical reasons as its federal counterpart, among others.

- **Rhode Island Antitrust Act (Providence Counts 4–5):** applies the same standards as federal antitrust law. *ERI Max Ent., Inc. v. Streisand*, 690 A.2d 1351, 1353 n.1. (R.I. 1997). These claims also fail because Providence does not allege that it provided notice to the Rhode Island attorney general. *See* IPP Br. § II.D; *id.*, App. B at 9b.

- **Massachusetts Antitrust Act (Leominster Count 3):** likewise applies federal antitrust standards. *MJ's Mkt., Inc. v. Jushi Holdings, Inc.*, 766 F. Supp. 3d 197, 219–20 (D. Mass. 2025). For the same reason, Leominster independently lacks antitrust standing under to recover damages under *Illinois Brick* for this claim. *See* Antitrust Standing Br. § IV.

- **Massachusetts Consumer Protection Act, Section 11 (Leominster Count 4):** must be interpreted in harmony with the Massachusetts Antitrust Act, Mass. Gen. Laws Ann. Ch. 93A, § 11, which in turn tracks federal antitrust law, *id.* ch. 93, § 1; *see Action Ambulance Serv., Inc. v. Atlanticare Health Servs., Inc.*, 815 F. Supp. 33, 38 (D. Mass. 1993). This claim also fails because Leominster does not allege specific facts sufficient to satisfy the Rule 9(b) pleading standard. *See* IPP Br. § III.G; *id.*, App. C at 7c. And Leominster independently lacks antitrust standing to recover damages under *Illinois Brick* for this claim as well. *See* Antitrust Standing Br. § IV.

- **Unjust enrichment (Leominster Count 5 and Providence Count 6):** rests on the same alleged conduct as their statutory claims and falls with them. *See* Leo. Compl. ¶¶ 226–29; Prov. Compl. ¶¶ 252–55; IPP Br. § IV.

## CONCLUSION

For the foregoing reasons, the Court should dismiss City of Leominster's and City of Providence's complaints.

Dated: August 17, 2026

Respectfully submitted,

s/ *Daniel T. Flaherty*
Daniel T. Flaherty (Bar No. 1011357)
GODFREY & KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 273-5198
dflaherty@gklaw.com

Reid Schar (Bar No. 6243821)
JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105
(628) 267-6800
rschar@jenner.com

Douglas E. Litvack (Bar No. 1024973)
Jariel A. Rendell (Bar No. 1027023)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 637-6357
dlitvack@jenner.com
jrendell@jenner.com

Jacob P. Wentzel (Bar No. 6333530)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
jwentzel@jenner.com

*Counsel for Defendants Oshkosh Corporation and Pierce Manufacturing, Inc.*

s/ *Daniel J. Vaccaro*
Daniel J. Vaccaro (Bar No. 1018037)

Joseph L. Olson (Bar No. 1046162)
Ena M. Allen (Bar No. 1101342)
MICHAEL BEST & FRIEDRICH LLP
790 North Water Street, Suite 2500
Milwaukee, WI 53202
(414) 271-6560
djvccaro@michaelbest.com
jlolson@michaelbest.com
ena.allen@michaelbest.com

Arthur J. Burke (Bar No. 1175568)
DAVIS POLK & WARDWELL LLP
450 Lexington Ave
New York, NY 10017
(212) 450-4000
arthur.burke@davispolk.com

Sean Stefanik (Bar No. 5637913)
DAVIS POLK & WARDWELL LLP
1050 17th Street, NW
Washington, DC 20036
(202) 962-7000
mari.grace@davispolk.com
sean.stefanik@davispolk.com

*Counsel for Defendant REV Group, LLC (formerly REV Group, Inc.)*

s/ *Ashley B. Eickhof*
Ashley B. Eickhof (Bar No. 307143)
Creighton J. Macy (Bar No. 1002479)
Stephen T. Loertscher (Bar No. 18995)
BAKER & McKENZIE LLP
815 Connecticut Ave NW
Washington, DC 20006
(202) 452-7000
ashley.eickhof@bakermckenzie.com
creighton.macy@bakermckenzie.com
stephen.loertscher@bakermckenzie.com

David J. Turek (Bar No. 1035356)
Joshua S. Greenberg (Bar No. 1107959)
GASS TUREK LLC
241 North Broadway, Suite 300
Milwaukee, WI 53202
(414) 224-3445

turek@gassturek.com
greenberg@gassturek.com

*Counsel for Defendant Rosenbauer America, LLC*

s/ *John P. Loringer*
John P. Loringer
Marcella S. Spoto
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
555 East Wells Street, Suite 1730
Milwaukee, WI 53202
(414) 292-3019
john.loringer@wilsonelser.com
marcella.spoto@wilsonelser.com

*Counsel for Defendant Fire Apparatus Manufacturers' Association*