**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

| | |
|---|---|
| IN RE: FIRE APPARATUS ANTITRUST LITIGATION | Case No. 2:26-md-03179-WCG<br>MDL No. 3179<br>Hon. William C. Griesbach |
| This document relates to:<br>*All Actions* | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT**
**MOTION TO DISMISS FOR LACK OF ANTITRUST STANDING**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 3

I. NCAPs Lack Antitrust Standing for Many of Their Claims ........ 4

  A. Twenty NCAPs Lack Antitrust Standing to Challenge the REV Group and AIP Fund IV acquisitions ........ 4

    1. Four NCAPs Did Not Purchase Any Custom Fire Trucks ........ 4

    2. Sixteen NCAPs Did Not Purchase Custom Fire Trucks from the REV Group Defendants ........ 5

    3. Four NCAPs Additionally Lack Standing Under *Illinois Brick* ........ 6

  B. Sixteen NCAPs Lack Antitrust Standing to Assert Claims Against the Oshkosh Defendants Based on the Maxi-Métal Acquisition ........ 7

    1. Four NCAPs Did Not Purchase Any Custom Pumpers ........ 7

    2. Nine NCAPs Did Not Purchase Custom Pumpers from the Oshkosh Defendants ........ 7

    3. Four NCAPs Rely on Pre-Acquisition Purchases ........ 8

    4. Two NCAPs Lack Antitrust Standing Under *Illinois Brick* ........ 8

  C. All NCAPs Lack Antitrust Standing to Assert Claims Against the Oshkosh and BME Defendants Related to the BME Acquisition ........ 9

    1. NCAPs' Federal Damages Claims Based on the BME Acquisition Are Categorically Barred by *Illinois Brick* ........ 9

    2. Twenty-One NCAPs Did Not Purchase Any Wildland Fire Trucks ........ 9

    3. Three NCAPs Fail to Show a Direct Link Between Their Wildland Apparatus Purchases and the BME Acquisition ........ 10

  D. All NCAPs Lack Antitrust Standing to Assert Claims with Respect to the U.S. Custom Chassis Market ........ 10

E. All NCAPs Lack Antitrust Standing to Assert Claims with Respect to the US. Custom Quints Market ........ 11

F. Two NCAPs Lack Antitrust Standing to Assert Claims with Respect to the Custom Aerials Market ........ 12

G. Four NCAPs Lack Antitrust Standing to Challenge Pierce's Replacement Parts Practices ........ 12

H. NCAPs' *AGC* Deficiencies Extend to Their State Law Claims ........ 13

II. Class Plaintiffs Lack Antitrust Standing to Challenge Defendants' Acquisitions ........ 13

A. Most Class Plaintiffs Did Not Purchase from All Merging Parties ........ 13

B. All Class Plaintiffs Lack Antitrust Standing with Respect to Their Putative Submarkets ........ 14

III. Providence Lacks Antitrust Standing with Respect to the Custom Fire Truck Markets ........ 15

IV. Leominster's Damages Claims Are Barred by *Illinois Brick* ........ 15

CONCLUSION ........ 15



Case 2:26-md-03179-WCG Filed 08/17/26 Page 3 of 24 Document 161

## TABLE OF AUTHORITIES

**CASES**

*In re Aluminum Warehousing Antitrust Litig.*,
833 F.3d 151 (2d Cir. 2016) .......... 4

*Animal Sci. Prods., Inc. v. China Minmetals Corp.*,
34 F. Supp. 3d 465 (D.N.J. 2014) .......... 13

*Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*,
116 F. Supp. 2d 1159 (C.D. Cal. 2000) .......... 6

*In re Asacol Antitrust Litig.*,
2016 WL 4083333 (D. Mass. July 20, 2016) .......... 15

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) .......... 1, 2, 6

*Birkley v. Amazon.com Servs. LLC*,
813 F. Supp. 3d 906 (E.D. Wis. 2025) .......... 2

*Boos v. Abbott Lab'ys*,
925 F. Supp. 49 (D. Mass. 1996) .......... 15

*Carefirst of Md., Inc. v. Johnson & Johnson*,
745 F. Supp. 3d 288 (E.D. Va. 2024) .......... 13

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
911 F. Supp. 2d 857 (N.D. Cal. 2012) .......... 10, 11

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) .......... 3, 11

*Gross v. New Balance Athletic Shoe, Inc.*,
955 F. Supp. 242 (S.D.N.Y. 1997) .......... 6

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) .......... 1, 2

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
19 F.4th 127 (2d Cir. 2021) .......... 6

*Loeb Indus., Inc. v. Sumitomo Corp.*,
306 F.3d 469 (7th Cir. 2002) .......... 2

*McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*,
937 F.3d 1056 (7th Cir. 2019) .......... 2, 3, 4, 5

*Motorola Mobility LLC v. AU Optronics Corp.*,
775 F.3d 816 (7th Cir. 2015)........................................................................... 10

*In re Outpatient Med. Ctr. Emp. Antitrust Litig.*,
630 F. Supp. 3d 968 (N.D. Ill. 2022).................................................................... 4

*Sanner v. Bd. of Trade of City of Chi.*,
62 F.3d 918 (7th Cir. 1995)............................................................................... 3

*Santiago v. Tesla, Inc.*,
757 F. Supp. 3d 831 (N.D. Ill. 2024).................................................................. 15

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
22 F.4th 103 (2d Cir. 2021)............................................................................... 6

*Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*,
950 F.3d 911 (7th Cir. 2020)........................................................................... 3, 7

*Supreme Auto Transp. LLC v. Arcelor Mittal*,
238 F. Supp. 3d 1032 (N.D. Ill. 2017)................................................................ 11

*Viamedia, Inc. v. Comcast Corp.*,
951 F.3d 429 (7th Cir. 2020)............................................................................. 4

## INTRODUCTION

In this MDL, dozens of public entities bring antitrust claims on behalf of themselves or a putative class based (in part) on various acquisitions in the fire truck industry occurring over more than a decade. While consolidation brought these claims into one courtroom, it does not relieve any Plaintiff of its burden to show a direct connection between the challenged conduct and its own purchases. That burden is called antitrust standing, and the complaints do not meet it. Each complaint instead asserts its acquisition claims on behalf of all of its Plaintiffs alike, leaving to the Court the task of matching each Plaintiff to the transactions that could have affected it. For many of these claims, no such match exists.

Antitrust standing is a threshold requirement, separate from and more demanding than Article III standing. Because the antitrust laws do not award a remedy to everyone potentially affected by a violation, a court must determine whether each plaintiff is a "proper plaintiff" to challenge the conduct at issue. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519, 544–45 (1983). A proper plaintiff must plead a direct link between the challenged conduct and its own injury under *AGC*, and under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), it must have purchased directly from the alleged violator to recover damages. These rules operate at the pleading stage—*AGC* itself upheld a dismissal under Rule 12(b)(6), citing the strong interest in "keeping the scope of complex antitrust trials within judicially manageable limits." 459 U.S. at 543. They require dismissal of many of Plaintiffs' claims.

*First*, many Plaintiffs cannot plead the direct link—i.e., proximate cause—that *AGC* demands. Plaintiffs' own allegations show that they purchased no trucks in the putative markets affected by an allegedly anticompetitive transaction, purchased only from manufacturers with no role in the transaction they challenge, or made their purchases years before a transaction closed. All NCAPs, for example, allege that the REV Group and AIP Fund IV acquisitions harmed

competition in a custom quints market. Yet only one of them has ever purchased a custom quint, and it did so more than a decade before the acquisitions allegedly harmed that market. Such alleged injuries are not traceable to the acquisitions Plaintiffs attack, so there is no antitrust standing to challenge them.

*Second*, *Illinois Brick* independently bars many of the federal damages claims. Numerous Plaintiffs allege that they purchased fire trucks from independent dealers rather than Defendant Manufacturers. And every Plaintiff's claim concerning custom chassis rests on a component that only truck manufacturers, not fire departments, purchase directly. Indirect purchasers may not recover damages under federal antitrust law.

Antitrust standing is not the only ground for dismissal. As Defendants' separate motions show, Plaintiffs' claims should be dismissed in full for multiple independent reasons. But the Court should at a minimum dismiss every claim brought by a Plaintiff that fails to plead a direct connection between its alleged injuries and the challenged conduct.

## LEGAL STANDARD[1]

Plaintiffs' Complaints implicate two interrelated strands of antitrust standing that courts are tasked with enforcing on a motion to dismiss: (1) "the proximate cause requirements of *AGC*, 459 U.S. at 544–45," and (2) "the direct purchaser rule of *Illinois Brick*, 431 U.S. at 729–30." *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 481 (7th Cir. 2002).[2]

Proximate cause. *AGC* identified three factors that determine whether a plaintiff has antitrust standing, including: (1) "[t]he directness between the injury and the market restraint," (2)

---

[1] Defendants incorporate by reference the background sections of their other joint briefs and the glossary set forth in their Class Brief.

[2] Unless stated otherwise, all quotes herein are "cleaned up." *See Birkley v. Amazon.com Servs. LLC*, 813 F. Supp. 3d 906, 910 (E.D. Wis. 2025) (Griesbach, J.) (adopting this convention).

"[t]he speculative nature of the damages," and (3) "[t]he risk of duplicate recoveries or complex damages apportionment." *McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*, 937 F.3d 1056, 1065 (7th Cir. 2019). The directness factor has two components—"(1) the chain of causation alleged by the plaintiffs" and (2) the existence of "more immediate victims of an antitrust violation," "whose self-interest would normally motivate them" to bring suit. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *12, *14 (N.D. Ill. Aug. 23, 2013). "Because the concept of antitrust standing was developed with common law proximate causation standards in mind, directness is a particularly important factor in the Court's analysis." *Id.* at *12. Indeed, a plaintiff *must* "demonstrate a direct link between the antitrust violation and the antitrust injury." *Sanner v. Bd. of Trade of City of Chi.*, 62 F.3d 918, 926–27 (7th Cir. 1995).

Direct Purchaser Rule. *AGC* drew upon the reasoning of *Illinois Brick*, which held that "customers of parties more directly injured by an alleged antitrust violation do not have standing to assert their own claims for damages." *Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 915 (7th Cir. 2020). The *Illinois Brick* doctrine "bar[s] claims by indirect purchasers . . . even if they were the ultimate victims of the violations" in that the direct purchaser passed price increases along to them. *Id.*

**ARGUMENT**

Plaintiffs' antitrust standing defects come in four varieties: Plaintiffs that (i) did not purchase in the relevant market, (ii) did not purchase from the relevant manufacturers, (iii) purchased before the relevant acquisition, or (iv) purchased indirectly. The sections below apply those four defects, complaint by complaint, identifying which Plaintiffs' claims fail and why.[3]

---

[3] For the Court's convenience, Defendants summarize the bases for dismissal by mapping each of the arguments below onto the relevant counts of each operative complaint in Appendices A and B.

## I. NCAPs Lack Antitrust Standing for Many of Their Claims

All 27 NCAPs lack antitrust standing for some or all of their claims challenging Defendants' acquisitions and Pierce's alleged exclusive dealing arrangements with its dealers for replacement parts. Because standing turns on the match between each NCAP's purchases and the challenged conduct, this section addresses each challenged act or series of acts in turn.

### A. Twenty NCAPs Lack Antitrust Standing to Challenge the REV Group and AIP Fund IV acquisitions

NCAPs bring claims under Clayton Act Section 7 and Sherman Act Section 2 against the REV Group and AIP Defendants related to the acquisitions of E-ONE, KME, Ferrara, and Spartan. Twenty NCAPs lack antitrust standing to assert these claims.

#### 1. Four NCAPs Did Not Purchase Any Custom Fire Trucks

Plaintiffs: Butte County, Hartford, Des Moines, and Tacoma.

Antitrust standing defect: NCAPs allege that the REV Group and AIP Fund IV acquisitions harmed competition in the putative U.S. Custom Pumpers, Custom Aerials, and Custom Quints markets (in addition to the putative U.S. Custom Chassis market, discussed *infra* § I.D). NCAPC ¶ 472. But these four NCAPs do not allege that they purchased *any* fire trucks in those markets. Courts "usually presume that competitors and consumers in the relevant market are the only parties who suffer antitrust injuries and are in a position to efficiently vindicate the antitrust laws." *McGarry*, 937 F.3d at 1065; *see also Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 482 (7th Cir. 2020) ("The general rule is that customers and competitors in the affected market have antitrust standing.").[4] Because these NCAPs do not participate in the alleged markets affected by the REV

[4] Some courts frame this defect as one of antitrust injury. *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 161 (2d Cir. 2016). The Seventh Circuit, however, appears to view it as a defect of antitrust standing under *AGC*. *See, e.g.*, *McGarry*, 937 F.3d at 1065 (citing *AGC*); *Viamedia*, 951 F.3d at 482 (same); *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 630 F. Supp. 3d 968, 982–83 (N.D. Ill. 2022) (analyzing this issue under directness factor of *AGC*).

Group and AIP Fund IV acquisitions, they lack standing to assert antitrust claims against the REV Group and AIP Defendants. *See McGarry*, 937 F.3d at 1066 (affirming dismissal on this basis).

It does not suffice that these NCAPs alleged they suffered injuries from purchases of *other* types of fire trucks. *See* NCAPC ¶¶ 426–27, 448; Des Moines Compl. ¶ 322; Tacoma Compl. ¶ 326. Nor can they solve their standing deficiency with conclusory assertions of generalized harm to the putative broader U.S. Fire Apparatus market. NCAPC ¶ 472. The U.S. Fire Apparatus market allegedly consists of "constituent antitrust markets" for particular types of trucks. *Id.* ¶ 228. Because the REV Group and AIP Fund IV acquisitions did not impact the constituent markets in which these NCAPs purchased trucks, the acquisitions could not have affected the price or availability of those trucks—any alleged impact on the U.S. Fire Apparatus market flows from constituent markets in which these NCAPs are not consumers. Their alleged antitrust injuries therefore lack any link, much less a direct link, to the REV Group and AIP Fund IV acquisitions.

**2. Sixteen NCAPs Did Not Purchase Custom Fire Trucks from the REV Group Defendants**

Plaintiffs: LA County, San Diego, Ebbetts Pass, Santa Barbara, UFA, Portland, Allentown, Oakland, Portsmouth, Tucson, Albuquerque, Emeryville, Tuscaloosa, Tampa, Gilbert, and Oxnard.

Antitrust standing defect: These NCAPs fail to allege a direct link between the REV Group and AIP Fund IV acquisitions and their alleged injuries arising from purchases of custom pumpers or aerials because they did not purchase from any of REV Group Defendants. Rather, they allege that they purchased custom pumpers or aerials manufactured by Pierce or one of two non-defendant manufacturers, Rosenbauer AG and Seagrave. NCAPC ¶¶ 387, 396, 407, 418, 422, 434, 445, 452, 456, 460, 469; Albuquerque Compl. ¶ 319; Emeryville Compl. ¶ 317; Tuscaloosa Compl. ¶ 321; Tampa Compl. ¶ 319; Gilbert Compl. ¶ 321; Oxnard Compl. ¶ 320. Because they did not

purchase trucks from the REV Group Defendants, they lack antitrust standing to challenge the REV Group or AIP Fund IV acquisitions. *See Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*, 116 F. Supp. 2d 1159, 1166–70 (C.D. Cal. 2000).

This conclusion follows from the "first-step rule," under which only "injuries that happen at the first step following the harmful behavior are considered proximately caused by that behavior." *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 116 (2d Cir. 2021); *see AGC*, 459 U.S. at 534 ("The general tendency of the law, in regard to damages at least, is not to go beyond the first step."). The rule "require[s] drawing a line between those whose injuries resulted from their direct transactions with the [parties responsible for the behavior] and those whose injuries stemmed from their deals with third parties." *Schwab*, 22 F.4th at 116. That is because third parties' independent decisions "snap the chain of causation linking Plaintiffs' injur[ies] to the [challenged] misconduct." *Id.*

The "first-step rule" is fatal to these claims. Even assuming the REV Group and AIP Fund IV acquisitions "enabled" competitors to raise prices, as NCAPs allege (*e.g.*, NCAPC ¶ 400), this "does not establish the 'direct relation' between injury and antitrust violation that the first-step rule requires," *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 141 (2d Cir. 2021). And there are "more direct victims" of any antitrust violation arising out of these acquisitions—customers "who purchased directly" from the REV Group Defendants—"such that denying Plaintiffs a remedy . . . is 'not likely to leave a significant antitrust violation undetected or unremedied.'" *Gross v. New Balance Athletic Shoe, Inc.*, 955 F. Supp. 242, 247 (S.D.N.Y. 1997) (quoting *AGC,* 459 U.S. at 542). NCAPs who purchased trucks from other manufacturers thus fail to establish antitrust standing under *AGC*. *See Schwab*, 22 F.4th at 118.

### 3. Four NCAPs Additionally Lack Standing Under *Illinois Brick*

Plaintiffs: Santa Barbara, San Diego, Gilbert, and Oxnard.

Antitrust standing defect: These NCAPs independently lack antitrust standing to pursue damages under the indirect purchaser rule of *Illinois Brick* because they allege that they purchased their custom fire trucks indirectly from Pierce dealers. *See* NCAPC ¶¶ 172, 407–11, 422; Gilbert Compl. ¶¶ 110, 322; Oxnard Compl. ¶¶ 109, 321. They try to avoid that rule by alleging that the dealers were "mere conduit[s]" for their purchases, yet they also allege they contracted with the dealers, not Pierce, and that Pierce's pricing "pass[ed] through" the dealers. NCAPC ¶¶ 169–75; *see also* Gilbert Compl. ¶¶ 118, 322; Oxnard Compl. ¶¶ 117, 321. That is precisely the pass-through damages scenario that *Illinois Brick* bars. *Sharif*, 950 F.3d at 915.

### B. Sixteen NCAPs Lack Antitrust Standing to Assert Claims Against the Oshkosh Defendants Based on the Maxi-Métal Acquisition

NCAPs also bring claims under Clayton Act Section 7 and Sherman Act Section 2 against the Oshkosh Defendants based on Oshkosh's acquisition of Maxi-Métal. Sixteen NCAPs lack antitrust standing to assert these claims.

#### 1. Four NCAPs Did Not Purchase Any Custom Pumpers

Plaintiffs: Butte County, Hartford, Des Moines, and Tacoma.

Antitrust standing defect: NCAPs allege that the Maxi-Métal acquisition, like the REV Group and AIP Fund IV acquisitions, harmed competition in the U.S. Custom Pumpers market (again in addition to the putative U.S. Custom Chassis market, *see infra* § I.D). NCAPC ¶ 482. But these NCAPs do not allege any purchases of custom pumpers, as noted above, and their alleged purchases of other types of fire trucks in other constituent markets do not suffice for standing. *See supra* § I.A.1. They therefore lack antitrust standing to challenge this acquisition as well.

#### 2. Nine NCAPs Did Not Purchase Custom Pumpers from the Oshkosh Defendants

Plaintiffs: Shasta County, San Diego County, UFA, Allentown, Green Bay, Santa Clara, Yonkers, Tempe, and Baltimore.

Antitrust standing defect: These NCAPs lack antitrust standing to challenge the Maxi-Métal acquisition because they allege that they purchased custom pumpers from the REV Group Defendants, Rosenbauer AG, Seagrave, or unspecified third parties, rather than any Oshkosh Defendants. NCAPC ¶¶ 400, 431, 438, 445, 456, 463, 466; Tempe Compl. ¶ 281; Baltimore Compl. ¶ 319. Under the "first step" rule, the Maxi-Métal acquisition did not proximately cause any alleged antitrust injury arising from purchases from manufacturers unrelated to that acquisition, so antitrust standing fails under *AGC*. *See supra* § I.A.2.

**3. Four NCAPs Rely on Pre-Acquisition Purchases**

NCAPs: Oakland, Santa Barbara, UFA, and Santa Clara.

Antitrust standing defects: These NCAPs (including two not yet mentioned in Section I.B, Oakland and Santa Barbara) allege that they purchased custom pumpers before Oshkosh acquired Maxi-Métal in June 2022. NCAPC ¶¶ 422, 434, 438, 445. Their alleged injuries therefore could not have been caused, much less proximately caused, by the Maxi-Métal acquisition. Accordingly, they lack antitrust standing under *AGC* to assert claims related to that acquisition.

**4. Two NCAPs Lack Antitrust Standing Under *Illinois Brick***

Plaintiffs: Santa Barbara and San Diego.

Antitrust standing defects: These NCAPs lack antitrust standing under *Illinois Brick*. As discussed above, they allege that they purchased Pierce custom pumpers from a dealer rather than directly from Pierce and assert pass-through damages claims. *See supra* § I.A.3. *Illinois Brick* thus bars their federal damages claims with respect to the Maxi-Métal acquisition.

### C. All NCAPs Lack Antitrust Standing to Assert Claims Against the Oshkosh and BME Defendants Related to the BME Acquisition

NCAPs assert claims under Clayton Act Section 7 and Sherman Act Sections 1 and 2 against the Oshkosh and BME Defendants related to Pierce's acquisition of a 25% interest in BME and related collaboration with Boise Mobile. No NCAPs have antitrust standing for these claims.

#### 1. NCAPs' Federal Damages Claims Based on the BME Acquisition Are Categorically Barred by *Illinois Brick*

Plaintiffs: All NCAPs.

Antitrust standing defects: NCAPs allege that the BME acquisition harmed competition in the putative U.S. Wildland Fire Apparatus market. NCAPC ¶ 490. But NCAPs are indirect purchasers who lack antitrust standing to bring federal damages claims with respect to the BME acquisition. NCAPs allege that the BME Defendants began to sell their trucks "exclusively . . . through Pierce dealers" after the BME acquisition, *id.* ¶ 281, making Pierce dealers the relevant direct purchasers and NCAPs—as end customers who bought from those dealers—indirect purchasers. *Illinois Brick* thus categorically precludes NCAPs from pursuing federal damages claims challenging the BME acquisition. *See supra* § I.A.3.

#### 2. Twenty-One NCAPs Did Not Purchase Any Wildland Fire Trucks

Plaintiffs: Ebbetts Pass, Santa Barbara, Hartford, Portland, Allentown, Oakland, Portsmouth, Green Bay, Santa Clara, Yonkers, Tucson, Albuquerque, Emeryville, Tempe, Baltimore, Des Moines, Tacoma, Tuscaloosa, Tampa, Gilbert, and Oxnard.

Antitrust standing defects: These NCAPs also lack antitrust standing to challenge the BME acquisition because they allege no purchases of wildland fire trucks. They therefore are not consumers in the U.S. Wildland Fire Apparatus market, and their alleged purchases of other types of fire trucks in other constituent markets do not suffice for standing. *See supra* § I.A.1.

### 3. Three NCAPs Fail to Show a Direct Link Between Their Wildland Apparatus Purchases and the BME Acquisition

NCAPs: Butte County, San Diego County, and UFA.

Antitrust standing defects: These NCAPs lack antitrust standing because they allegedly purchased wildland trucks from the REV Group Defendants, Rosenbauer AG, or other unspecified third parties, not the Oshkosh or BME Defendants. NCAPC ¶¶ 400, 427, 443. Under the "first-step" rule, the BME acquisition could not have proximately caused their alleged injuries, and they lack antitrust standing under *AGC*. *See supra* § I.A.2.

## D. All NCAPs Lack Antitrust Standing to Assert Claims with Respect to the U.S. Custom Chassis Market

Plaintiffs: All NCAPs.

Antitrust standing defects: Custom chassis "are inputs that Fire Apparatus builders use to assemble their Custom Pumpers, Custom Quints, and Custom Aerials," consisting of "the frame material, engine and transmission compatibility, front and rear axle suspension, and electrical system, among other components." NCAPC ¶¶ 122, 183. NCAPs allege that REV Group's, AIP Fund IV's, and Oshkosh's acquisitions harmed competition in the putative U.S. Custom Chassis market. *See id.* ¶¶ 257, 285, 310, 472, 482. But NCAPs admittedly are not direct purchasers of custom chassis—the direct purchasers are other fire truck manufacturers. *See id.* ¶¶ 184, 201. That dooms NCAPs' antitrust standing with respect to the U.S. Custom Chassis market in two ways.

*First*, NCAPs' custom chassis claims "colli[de] with the indirect-purchaser doctrine of *Illinois Brick*." *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 821 (7th Cir. 2015). In *Motorola*, for example, the Seventh Circuit reasoned that customers of Motorola cell phones incorporating allegedly price-fixed LCD panels as a component were indirect purchasers of the panels who could not pursue damages claims under *Illinois Brick*. *Id.* at 823; *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d 857, 864 (N.D. Cal. 2012) (holding that

plaintiffs who purchased TV sets and computer monitors incorporating allegedly price-fixed components fell "squarely within the scope of the *Illinois Brick* rule"). NCAPs occupy the same position here. Because they purchase custom chassis as a component of a completed custom fire truck, they lack antitrust standing for federal damages claims.

*Second*, the same remoteness problem defeats standing under *AGC*'s directness factor. This issue frequently arises in cases where indirect purchasers sue under state antitrust laws with *Illinois Brick* repealer provisions. *See In re Dairy Farmers*, 2013 WL 4506000, at *12 (collecting cases). As the court explained in *In re Dairy Farmers*, "downstream participants" in an allegedly restrained component market lack antitrust standing under *AGC* because any injury would have "occurred in a market secondary to the allegedly monopolized market," rendering the causal connection "too remote and attenuated to support antitrust standing." *Id.* (collecting cases); *see also Supreme Auto Transp. LLC v. Arcelor Mittal*, 238 F. Supp. 3d 1032, 1040–41 (N.D. Ill. 2017) (plaintiffs that purchased steel "only as a component part" lacked antitrust standing under *AGC*). Here, any alleged injury to NCAPs would have occurred in a putative fire truck market, not a chassis market. And directness "weighs particularly heavily" here because NCAPs allege "the presence of more immediate victims" who could more efficiently vindicate any antitrust violation in the U.S. Custom Chassis market: fire truck manufacturers that directly purchase custom chassis from Defendants, including at least several third parties. *In re Dairy Farmers*, 2013 WL 4506000, at *14; *see* NCAPC ¶¶ 98, 143.

For each reason, NCAPs lack antitrust standing to the extent their claims challenge alleged anticompetitive conduct in the U.S. Custom Chassis market.

### E. All NCAPs Lack Antitrust Standing to Assert Claims with Respect to the U.S. Custom Quints Market

Plaintiffs: All NCAPs.

Antitrust standing defect: NCAPs allege that the REV Group and AIP Fund IV acquisitions harmed competition in the putative U.S. Custom Quints market (NCAPC ¶ 472), but they all lack antitrust standing to assert claims with respect to that market. The only NCAP to allege that it even purchased custom quints is LA County, and it made those purchases more than a decade ago—well before the acquisitions allegedly harmed competition.[5] Thus, NCAPs either are not consumers in the U.S. Custom Quints market or have not been consumers since the alleged anticompetitive conduct caused harm in that market. Either way, they all fail to allege a direct link between that challenged conduct and their alleged injuries. *See supra* § I.A.1.

### F. Two NCAPs Lack Antitrust Standing to Assert Claims with Respect to the U.S. Custom Aerials Market

Plaintiffs: Shasta County and Santa Clara.

Antitrust standing defects: NCAPs allege that the REV Group and AIP Fund IV acquisitions harmed competition in the putative U.S. Custom Aerials market (NCAPC ¶ 472), but these two NCAPs lack antitrust standing to assert claims with respect to that market because they either did not purchase custom aerials (Shasta County) or purchased custom aerials from Pierce, which has nothing to do with the challenged conduct (Santa Clara). *See id.* ¶¶ 431, 438. They each lack antitrust standing for these respective reasons. *See supra* §§ I.A.1, I.A.2.

### G. Four NCAPs Lack Antitrust Standing to Challenge Pierce's Replacement Parts Practices

Plaintiffs: Ebbetts Pass, Emeryville, Des Moines, and Gilbert.

Antitrust standing defects: Twenty NCAPs, dubbed "Pierce Parts Plaintiffs," NCAPC ¶ 62, also assert claims under Clayton Act Section 3 and Sherman Act Section 2 based on Pierce's

[5] LA County alleges that it purchased custom quints in 2010 and 2015, and that the "going price" has since doubled. NCAPC ¶ 388. The KME, Ferrara, and Spartan acquisitions, however, all occurred *after* those purchases (*id.* ¶¶ 64–67), and NCAPs do not allege that the E-ONE acquisition alone did anything to impact the prices that LA County paid under those contracts.


Case 2:26-md-03179-WCG Filed 08/17/26 Page 17 of 24 Document 161

alleged exclusivity agreements with its replacement parts dealers and suppliers. But these four "Pierce Parts Plaintiffs" do not allege any purchases of replacement parts for Pierce trucks. They therefore are not consumers in the alleged replacement parts aftermarkets relevant to these claims, *see id.* ¶ 347, and lack antitrust standing to assert them, *see supra* § I.A.1.

### H. NCAPs' *AGC* Deficiencies Extend to Their State Law Claims

In addition to their federal claims, NCAPs assert claims under the antitrust laws of California, Wisconsin, Arizona, Iowa, Utah, Connecticut, Oregon, New York, New Mexico, and Maryland. *AGC* applies to each of these statutes. *Carefirst of Md., Inc. v. Johnson & Johnson*, 745 F. Supp. 3d 288, 322 & n.23 (E.D. Va. 2024). NCAPs' state law claims should be dismissed to the extent they relate to conduct NCAPs lack antitrust standing under *AGC*.

## II. Class Plaintiffs Lack Antitrust Standing to Challenge Defendants' Acquisitions

DPPs challenge the same acquisitions as NCAPs under Clayton Act Section 7 and Sherman Act Section 2. DPPC ¶¶ 114, 122, 124, 282–310. IPPs also challenge REV Group's acquisitions under Section 7. IPPC ¶¶ 357–62. All Class Plaintiffs lack antitrust standing for those claims.[6]

### A. Most Class Plaintiffs Did Not Purchase from All Merging Parties

<u>Plaintiffs</u>: All DPPs and 11 IPPs—Arcadia, Claverack, Commack, Fountain Valley, Fullerton, Las Vegas, New Brighton, Onalaska, Ridgeland, Wyandotte County, and Water Witch.

<u>Antitrust standing defects</u>: Four DPPs (Augusta, Newstead, Philadelphia, and Revere) allege purchases only from the REV Group Defendants. DPPC ¶¶ 10, 12, 14, 18. They therefore lack antitrust standing for claims challenging Oshkosh and Pierce's acquisitions under the "first-step" rule flowing from *AGC*. *See supra* § I.A.2. Roseland alleges purchases only from Pierce,

[6] For Class Plaintiffs, each named plaintiff must establish its own antitrust standing and cannot rely on other putative class members' antitrust standing. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 34 F. Supp. 3d 465, 502 (D.N.J. 2014).

DPPC ¶ 20, so it lacks antitrust standing for claims challenging the REV Group and AIP Fund IV acquisitions under the "first-step" rule. *See supra* § I.A.2. The remaining DPP, Nashville, alleges purchases only from Rosenbauer, DPPC ¶ 16, so it lacks antitrust standing with respect to all challenged acquisitions under the "first-step" rule. *See supra* § I.A.2.

Furthermore, the 11 IPPs identified above each alleges purchases only from Pierce or Rosenbauer. IPPC ¶¶ 28–31, 40, 42–43, 60–62, 64–66, 71, 88–91, 94–96, 101–04, 120, 122. Accordingly, they all lack antitrust standing for their Section 7 claim (which challenges only REV Group's acquisitions) under the "first-step" rule as well. *See supra* § I.A.2.

### B. All Class Plaintiffs Lack Antitrust Standing with Respect to Their Putative Submarkets

Plaintiffs: All Class Plaintiffs.

Antitrust standing defects: DPPs allege putative Fire Apparatus Chassis and Wildland Fire Apparatus submarkets with respect to their Section 7 and Section 2 claims. DPPC ¶¶ 90, 283. IPPs allege a putative Custom Fire Apparatus Specialty Cab Chassis submarket with respect to their Section 7 claim. IPPC ¶ 358. But no Class Plaintiffs allege any purchases in these submarkets. They acknowledge that chassis and specialty cab chassis (consisting of the chassis combined with the front cabin of the vehicle) are components of a completed fire truck, and that other fire truck manufacturers—not themselves—are the direct purchasers of these components. DPPC ¶¶ 82, 113; IPPC ¶¶ 180–87. Class Plaintiffs therefore all lack antitrust standing with respect to these markets under *Illinois Brick* and *AGC* for the same reason as NCAPs. *See supra* § I.D. Further, no DPPs allege any purchases of wildland trucks, so they are not consumers in the putative Wildland Fire Apparatus market and lack antitrust standing with respect to that market, too. *See supra* § I.A.1.

## III. Providence Lacks Antitrust Standing with Respect to the Custom Fire Truck Markets

Providence asserts a Section 7 claim based on Oshkosh's and Pierce's acquisitions with respect to a putative general fire truck market and one or more putative custom fire truck submarkets. *See* Prov. Compl. ¶¶ 140–45, 168, 223, 225; *see also* Leo & Prov. Br. 6–7. But Providence does not allege any custom fire truck purchases. *See id.* ¶¶ 199–205. It is therefore not a consumer in the alleged custom submarket or submarkets, and its Section 7 claim should be dismissed with respect to them. *See supra* § I.A.1.

## IV. Leominster's Damages Claims Are Barred by *Illinois Brick*

Leominster asserts claims under Section 1 of the Sherman Act. Leo. Compl. ¶¶ 168–204. But Leominster alleges only *indirect* purchases—i.e., purchases from dealers rather than directly from Defendant Manufacturers. *See id.* ¶ 21 nn.5–6.[7] *Illinois Brick* thus precludes Leominster's Section 1 damages claims. *See supra* § I.A.2. The same is true of Leominster's damages claims under the Massachusetts Antitrust Law and Section 11 of the Massachusetts Consumer Protection Act. *See* Leo. Compl. ¶¶ 205–23. *Illinois Brick* extends to each of these statutes. *See Boos v. Abbott Lab'ys*, 925 F. Supp. 49, 51 (D. Mass. 1996); *In re Asacol Antitrust Litig.*, 2016 WL 4083333, at *13 (D. Mass. July 20, 2016). Leominster thus lacks antitrust standing to pursue any damages.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims as set forth above and summarized in Appendices A and B for lack of antitrust standing, including dismissal of three NCAPs' claims in their entirety—Butte County, Hartford, and Allentown.

---

[7] These footnotes cite webpages showing that Leominster purchased trucks from Allegiance Fire & Rescue, a Pierce dealer. *See* Pierce, Leominster Fire Department – Pumper, https://www.piercemfg.com/customers/new-deliveries/leominster-fire-department-pumper-31050; https://www.piercemfg.com/customers/leominster-fire-department-pumper-38228. The webpages are thus incorporated by reference in the complaint and may be considered on a motion to dismiss. *See Santiago v. Tesla, Inc.*, 757 F. Supp. 3d 831, 842 n.1 (N.D. Ill. 2024).

Dated: August 17, 2026

Respectfully submitted,

s/ *Daniel T. Flaherty*

Daniel T. Flaherty (Bar No. 1011357)
GODFREY & KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 273-5198
dflaherty@gklaw.com

Reid Schar (Bar No. 6243821)
JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105
(628) 267-6800
rschar@jenner.com

Douglas E. Litvack (Bar No. 1024973)
Jariel A. Rendell (Bar No. 1027023)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 637-6357
dlitvack@jenner.com
jrendell@jenner.com

Jacob P. Wentzel (Bar No. 6333530)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
jwentzel@jenner.com

*Counsel for Defendants Oshkosh Corporation, Pierce Manufacturing, Inc., and Maxi-Métal, Inc.*

s/ *Daniel J. Vaccaro*

Daniel J. Vaccaro (Bar No. 1018037)
Joseph L. Olson (Bar No. 1046162)
Ena M. Allen (Bar No. 1101342)
MICHAEL BEST & FRIEDRICH LLP
790 North Water Street, Suite 2500
Milwaukee, WI 53202

(414) 271-6560
djvccaro@michaelbest.com
jlolson@michaelbest.com
ena.allen@michaelbest.com

Arthur J. Burke (Bar No. 1175568)
DAVIS POLK & WARDWELL LLP
450 Lexington Ave
New York, NY 10017
(212) 450-4000
arthur.burke@davispolk.com

Sean Stefanik (Bar No. 5637913)
DAVIS POLK & WARDWELL LLP
1050 17th Street, NW
Washington, DC 20036
(202) 962-7000
mari.grace@davispolk.com
sean.stefanik@davispolk.com

*Counsel for Defendants REV Group, LLC (formerly REV Group, Inc.), E-One, Inc., Kovatch Mobile Equipment Corp., KME Global, LLC, KME Holdings, LLC, KME RE Holdings, LLC, Ferrara Fire Apparatus, Inc., FFA Holdco, Inc., FFA Acquisition Co., Inc., Ferrara Fire Apparatus Holding Company, Inc., Spartan Fire, LLC, Smeal SFA, LLC, Smeal LTC, LLC, Smeal Holding, LLC, and Detroit Truck Manufacturing, LLC*

s/ *Ashley B. Eickhof*

Ashley B. Eickhof (Bar No. 307143)
Creighton J. Macy (Bar No. 1002479)
Stephen T. Loertscher (Bar No. 18995)
BAKER & McKENZIE LLP
815 Connecticut Ave NW
Washington, DC 20006
(202) 452-7000
ashley.eickhof@bakermckenzie.com
creighton.macy@bakermckenzie.com
stephen.loertscher@bakermckenzie.com

David J. Turek (Bar No. 1035356)
Joshua S. Greenberg (Bar No. 1107959)
GASS TUREK LLC

241 North Broadway, Suite 300
Milwaukee, WI 53202
(414) 224-3445
turek@gassturek.com
greenberg@gassturek.com

*Counsel for Defendants Rosenbauer America, LLC, Rosenbauer South Dakota, LLC, and Rosenbauer Minnesota, LLC*

s/ *Paul C. Cuomo*

Paul C. Cuomo (Bar No. 457793)
Ed Duffy (Bar No. 359847)
Megan Tankel (Bar No. 90003303)
Alexander Kraszewski (Bar No. 1781948)
BAKER BOTTS LLP
700 K Street, NW
Washington, DC 20001
(202) 639-7700
paul.cuomo@bakerbotts.com
ed.duffy@bakerbotts.com
megan.tankel@bakerbotts.com
alexander.kraszewski@bakerbotts.com

Daniel E. Conley (Bar No. 1009443)
QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
(414) 277-5000
daniel.conley@quarles.com

*Counsel for Defendants AIP, LLC, American Industrial Partners Capital Fund IV, LP, American Industrial Partners Capital Fund IV (Parallel), LP, AIP/CHC Holdings, LLC, AIP CF IV, LLC, and AIP/CHC Investors, LLC*

s/ *John P. Loringer*

John P. Loringer
Marcella S. Spoto
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
555 East Wells Street, Suite 1730
Milwaukee, WI 53202
(414) 292-3019

john.loringer@wilsonelser.com
marcella.spoto@wilsonelser.com

*Counsel for Defendant Fire Apparatus Manufacturers' Association*

s/ *Leo Caseria*
Leo Caseria (D.C. Bar No. 1655936)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006
(202) 747-1900
lcaseria@sheppard.com

Joy O. Siu (Cal. Bar No. 307610)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
(415) 774-3108
jsiu@sheppard.com

*Counsel for Defendants Boise Mobile Equipment, Inc. and BME Fire Trucks LLC for all matters other than People of the State of California, et al. v. REV Group, LLC, et al., No. 2:26-cv-00632*

s/ *Benjamin Price*
Benjamin Price (Cal. Bar No. 267400)
Keith G. Bremer (Cal. Bar No. 155920)
BREMER WHYTE BROWN & O'MEARA, LLP
20320 SW Birch Street
Newport Beach, CA 92660
(949) 221-1013
bprice@bremerwhyte.com

*Counsel for Boise Mobile Equipment, Inc. and BME Fire Trucks LLC in People of the State of California, et al. v. REV Group, LLC, et al., No. 2:26-cv-00632*