UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| IN RE: FIRE APPARATUS ANTITRUST LITIGATION | Case No. 2:26-md-3179-WCG<br><br>Hon. William C. Griesbach<br><br>**NON-CLASS ACTION PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS FOR LACK OF ANTITRUST STANDING (ECF NO. 160)** |

*This Document Relates To: Non-Class Action Plaintiff Track*

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the Los Angeles County Counsel; COUNTY OF LOS ANGELES; CONSOLIDATED FIRE PROTECTION DISTRICT OF LOS ANGELES COUNTY,<br><br>*Plaintiffs*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants.* | Case No. 2:26-cv-00632-WCG |
| PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the Office of County Counsel, County of San Diego; COUNTY OF SAN DIEGO; SAN DIEGO COUNTY FIRE PROTECTION DISTRICT,<br><br>*Plaintiffs*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants.* | Case No. 2:26-cv-00635-WCG |

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the San Diego City Attorney's Office; and THE CITY OF SAN DIEGO,<br><br>*Plaintiffs*,<br><br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-00729-WCG |
| EBBETTS PASS FIRE PROTECTION DISTRICT,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-00633-WCG |
| CITY OF SANTA BARBARA,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-00634-WCG |
| COUNTY OF BUTTE,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-00727-WCG |

| | |
|---|---|
| COUNTY OF SHASTA,<br>*Plaintiff*,<br>v.<br>REV GROUP, INC., et al.,<br>*Defendants*. | Case No. 2:26-cv-00728-WCG |
| CITY OF OAKLAND,<br>*Plaintiff*,<br>v.<br>REV GROUP, INC., et al.,<br>*Defendants*. | Case No. 2:26-cv-00810-WCG |
| CITY OF SANTA CLARA,<br>*Plaintiff*,<br>v.<br>REV GROUP, INC., et al.,<br>*Defendants*. | Case No. 2:26-cv-00891-WCG |
| UNIFIED FIRE AUTHORITY,<br>*Plaintiff*,<br>v.<br>REV GROUP, INC., et al.,<br>*Defendants*. | Case No. 2:26-cv-00684-WCG |

| | |
|---|---|
| CITY OF HARTFORD,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-00731-WCG |
| CITY OF PORTLAND, OREGON,<br><br>*Plaintiff*,<br><br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-00732-WCG |
| CITY OF ALLENTOWN,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-00811-WCG |
| CITY OF PORTSMOUTH,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-00737-WCG |
| CITY OF GREEN BAY,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-00819-WCG |

| | |
|---|---|
| CITY OF YONKERS,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-00974-WCG |
| CITY OF TUCSON,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-00972-WCG |
| CITY OF EMERYVILLE,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-01030-WCG |
| CITY OF ALBUQUERQUE,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-01031-WCG |
| CITY OF TEMPE,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-01098-WCG |

| | |
|---|---|
| MAYOR & CITY COUNCIL OF BALTIMORE,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, INC., et al.,<br><br>*Defendants*. | Case No. 2:26-cv-01099-WCG |
| CITY OF DES MOINES,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, LLC, et al.,<br><br>*Defendants*. | Case No. 2:26-cv-01104-WCG |
| CITY OF TACOMA,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, LLC, et al.,<br><br>*Defendants*. | Case No. 2:26-cv-01106-WCG |
| CITY OF TUSCALOOSA,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, LLC, et al.,<br><br>*Defendants*. | Case No. 2:26-cv-01119-WCG |
| CITY OF TAMPA,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, LLC, et al.,<br><br>*Defendants*. | Case No. 2:26-cv-01120-WCG |

| | |
|---|---|
| TOWN OF GILBERT,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, LLC, et al.,<br><br>*Defendants*. | Case No. 2:26-cv-01253-WCG |
| CITY OF OXNARD,<br><br>*Plaintiff*,<br>v.<br><br>REV GROUP, LLC, et al.,<br><br>*Defendants*. | Case No. 2:26-cv-01254-WCG |

## TABLE OF CONTENTS

**Page**

I. Introduction .......... 1

II. NCAPs Establish They Are Entitled to Some Relief, So No Claim Can Be Dismissed .......... 2

III. NCAPs Have Standing to Seek Injunctive Relief .......... 3

A. All NCAPs Face Threatened Injury in One or More Relevant Fire Apparatus Markets, Regardless of the Past Purchases They Identified in the Complaints .......... 4

B. All NCAPs Face Threatened Injury Resulting from All Defendants' Unlawful Acquisitions, Regardless of Which Defendants' Apparatuses They Purchased .......... 6

C. *Illinois Brick* Is Irrelevant to Standing Under Clayton Act § 16 .......... 8

D. All NCAPs Face Threatened Future Injury in the Custom Chassis Market .......... 9

E. All Pierce Parts NCAPs Face Threatened Future Injury in Parts Markets .......... 10

F. NCAPs Have Standing Under State Law .......... 11

IV. *Illinois Brick* Does Not Bar NCAPs' Standing to Recover Damages .......... 11

V. Conclusion .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accord Campos v. Ticketmaster Corp.*,
140 F.3d 1166 (8th Cir. 1998) .......... 8

*Accord Laidlaw Acquisition Corp. v. Mayflower Grp., Inc.*,
636 F. Supp. 1513 (S.D. Ind. 1986) .......... 4

*Arizona v. Shamrock Foods Co.*,
729 F.2d 1208 (9th Cir. 1984) .......... 14

*Associated General Contractors v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) .......... 1, 2, 3, 4, 9

*BBL, Inc. v. City of Angola*,
809 F.3d 317 (7th Cir. 2015) .......... 3

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*,
152 F.3d 588 (7th Cir. 1998) .......... 5

*Blue Shield of Va. v. McCready*,
457 U.S. 465 (1982) .......... 12, 14

*Bontkowski v. Smith*,
305 F.3d 757 (7th Cir. 2002) .......... 2, 3

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962) .......... 6

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) .......... 1, 4

*Carefirst of Md., Inc. v. Amgen, Inc.*,
2025 U.S. Dist. LEXIS 278922 (E.D. Va. Sep. 30, 2025) .......... 9

*Cargill Inc. v. Monfort of Colorado Inc.*,
479 U.S. 104 (1986) .......... 1, 4, 5, 8

*Chun v. Korean Air Lines Co.*,
2012 U.S. Dist. LEXIS 202328 (C.D. Cal. Jan. 17, 2012) .......... 13

*City of Moundridge, KS v. Exxon Mobil Corp.*,
471 F. Supp. 2d 20 (D.D.C. 2007) .......... 15

*Dale v. Deutsche Telekom AG*,
2023 U.S. Dist. LEXIS 196872 (N.D. Ill. Nov. 2, 2023) ........ 7

*Diskin v. Daily Racing Form*,
1994 U.S. Dist. LEXIS 9129 (S.D.N.Y. July 7, 1994) ........ 13

*Hawaii v. Standard Oil Co.*,
405 U.S. 251 (1972) ........ 4

*Healey v. Andrews*,
2026 U.S. Dist. LEXIS 89637 (N.D. Ill. Apr. 23, 2026) ........ 3

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
424 F.3d 363 (3rd Cir. 2005) ........ 14

*Ill. Brick Co. v. Illinois*,
431 U.S. 720 (1977) ........ 4

*In re Ariz. Dairy Prods. Litig.,*
627 F. Supp. 233 (D. Ariz. 1985) ........ 7

*In re Brand Name Prescription Drugs Antitrust Litig.*,
123 F.3d 599 (7th Cir. 1997) ........ 12, 14, 15

*In re Broiler Chicken Antitrust Litig.*,
290 F. Supp. 3d 772 (N.D. Ill. 2017) ........ 6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
911 F. Supp. 2d 857 (N.D. Cal. 2012) ........ 10

*In re Copper Antitrust Litig.*,
2000 U.S. Dist. LEXIS 23741 (W.D. Wis. Jul. 7, 2000) ........ 7

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
2013 U.S. Dist. LEXIS 119962 (N.D. Ill. Aug. 23, 2013) ........ 10

*In re Dealer Mgmt Sys Antitrust Litig.,*
362 F. Supp. 3d 510 (N.D. Ill. 2019) ........ 3, 9

*In re Deere & Co. Repair Serv. Antitrust Litig.*,
703 F. Supp. 3d 862 (N.D. Ill. 2023) ........ 12, 13, 14

*In re Flat Glass Antitrust Litig.*,
191 F.R.D. 472, (W.D. Pa. 1999) ........ 10

*In re Generic Pharms. Pricing Antitrust Litig.*,
338 F. Supp. 3d 404 (E.D. Pa. 2018) ........ 9

*In re Linerboard Antitrust Litig.*,
305 F.3d 145 (3d Cir. 2002) .......... 10

*In re Microsoft Corp. Antitrust Litig.*,
127 F. Supp. 2d 702 (D. Md. 2001) .......... 15

*In re Mushroom Direct Purchaser Antitrust Litig.*,
2016 U.S. Dist. LEXIS 177839 (E.D. Pa. Dec. 13, 2016) .......... 14

*In re Sugar Indus. Antitrust Litig.*,
579 F.2d 13 (3d Cir. 1978) .......... 10

*In re Surescripts Antitrust Litig.*,
608 F. Supp 3d 629 (N.D. Ill. 2022) .......... 3, 13

*In re TFT-LCD Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010) .......... 10

*In re Uranium Antitrust Litig.*,
552 F. Supp. 518 (N.D. Ill. 1982) .......... 7

*In re Warfarin Sodium Antitrust Litig.*,
214 F.3d 395 (3d Cir. 2000) .......... 4, 6, 8

*Int'l Ass'n of Machinists & Aero. Workers, Local Lodge No. 1821 v. Verso Paper Corp.*,
80 F. Supp. 3d 247 (D. Me. 2015) .......... 5

*Johnson v. Rapid Sheet Metal, LLC*,
560 F. Supp. 3d 623 (D.N.H. 2020) .......... 3

*Jones v. Butler*,
663 F. App'x 468 (7th Cir. 2016) .......... 2

*Kentucky v. Marathon Petroleum Co. LP*,
2018 U.S. Dist. LEXIS 165270 (W.D. Ky. Sep. 26, 2018) .......... 14

*Kirby v. United States Dep't of Housing & Urban Dev.*,
745 F.2d 204 (3d Cir. 1984) .......... 3

*Kloth v. Microsoft Corp.*,
444 F.3d 312 (4th Cir. 2006) .......... 15

*Loeb Indus. v. Sumitomo Corp.*,
306 F.3d 469 (7th Cir. 2002) .......... 12

*Lucas Auto. Eng'g, Inc. v. Bridgestone/ Firestone, Inc.*,
140 F.3d 1228 (9th Cir. 1998) .......... 8

*Mid-West Paper Prods. Co. v. Cont'l Group*,
596 F.2d 573 (3d Cir. 1979) .... 4, 8, 9

*Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*,
156 F.4th 68 (2d Cir. 2025) .... 8, 12

*Motorola Mobility LLC v. AU Optronics Corp.*,
775 F.3d 816 (7th Cir. 2015) .... 10

*O'Neill v. Coca-Cola Co.*,
669 F. Supp. 217 (N.D. Ill. 1987) .... 4

*Ohio-Sealy Mattress Mfg. Co. v. Kaplan*,
545 F. Supp. 765 (N.D. Ill. 1982) .... 4

*Pecover v. Elec. Arts, Inc.*,
633 F. Supp. 2d 976 (N.D. Cal. 2009) .... 9

*Quillman v. IDOC*,
2018 U.S. Dist. LEXIS 126046 (S.D. Ill. July 27, 2018) .... 3

*Royal Printing Co. v. Kimberly Clark Corp.*,
621 F.2d 323 (9th Cir. 2012) .... 14

*Sanner v. Bd. of Trade*,
62 F.3d 918 (7th Cir. 1995) .... 12

*Schoonover v. Schoonover*,
172 F.2d 526 (10th Cir. 1949) .... 2

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp, PLC,*
22 F.4th 103 (2nd Cir. 2021) .... 8

*Supreme Auto Transp. LLC v. Mittal*,
238 F. Supp. 3d 1032 (N.D. Ill. 2017) .... 10

*Tasty Baking Co. v. Ralston Purina Inc.*,
653 F. Supp. 1250 (E.D. Pa. 1987) .... 8

*U.S. Gypsum Co. v. Indiana Gas Co.*,
350 F.3d 623 (7th Cir. 2003) .... 7, 8

*Viamedia, Inc. v. Comcast Corp.*,
951 F.3d 429 (7th Cir. 2020) .... 6

*Weser v. Prof'l Golfers' Ass'n*,
1979 U.S. Dist. LEXIS 11552 (N.D. Ill. June 21, 1979) .... 4

*Wilk v. Am. Med. Assn*,
895 F.2d 352 (7th Cir. 1990) ........................................................................................ 1, 4

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop*.,
2021 U.S. Dist. LEXIS 90488 (E.D. Pa. May 12, 2021) ......................................................... 15

*Z Channel Ltd. Partnership v. Home Box Office, Inc.*,
931 F.2d 1338 (9th Cir. 1991) ........................................................................................ 3

**Statutes**

Clayton Act § 16,
15 U.S.C. § 26 ........................................................................................................ 5

Clayton Act § 4,
15 U.S.C. § 15 ........................................................................................................ 1

**Other Authorities**

10 Moore's Federal Practice - Civil § 54.70 (2026) ........................................................................ 2

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1255 (2d ed. 1990) 2

Ahmed Alfaris, *Antitrust Standing for Umbrella Purchasers*, 58 U.S.F. L. Rev. 1, 27 (2023) ...... 7

Phillip Areeda & Herbert Hovenkamp,
Antitrust Law ¶ 347 (3d ed. 2008 & Supp. 2026)........................................................................ 8

**Rules**

Fed. R. Civ. P. 54 ........................................................................................................ 3

## I. Introduction

Defendants devote their Standing Brief to challenging Non-Class Action Plaintiffs' ("NCAPs") standing to recover *damages* under Clayton Act § 4. They ignore the § 16 injunction standard and the pleaded facts that every NCAP satisfies it. Because a claim cannot be dismissed if a plaintiff is entitled to any relief, this omission alone is dispositive of Defendants' Motion.

Defendants rely almost entirely on *Associated General Contractors v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983). They ignore that the *AGC* factors they discuss in their brief do not apply to the question whether a plaintiff has standing to seek injunctive relief. *See AGC*, 459 U.S. at 524 n.5. For injunctive relief, "a private plaintiff must [only] allege 'threatened loss or damage "of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful."'"[1] NCAPs satisfy this standard. All are past and/or future purchasers in the Custom Apparatus, Custom Chassis, and Fire Apparatus markets, with several also in the Wildland market. The Pierce Parts Plaintiffs, NCAP CAC (ECF No. 53) ("CAC") ¶ 62, are similarly past and/or future purchasers in the Pierce parts markets. All NCAPs allege that if Defendants' anticompetitive conduct remains unchecked, they face future injury through supracompetitive prices and delayed deliveries. This threatened injury, stemming from Defendants' competition-reducing conduct, confers antitrust standing.

Regarding damages, Defendants mount an *Illinois Brick* standing challenge as to only *four* NCAPs, plus purchasers from BME, relying entirely on supposed dealer involvement. However, the Complaints allege Pierce and BME were the direct sellers to NCAPs; any dealers were agents of, and effectively owned and controlled by, Pierce. Indeed, the Complaints allege

[1] *Wilk v. Am. Med. Ass'n*, 895 F.2d 352, 364 (7th Cir. 1990) (quoting *Cargill Inc. v. Monfort of Colorado Inc.*, 479 U.S. 104, 113 (1986) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

that in paperwork with cities and counties, the dealer expressly:

> "recognize[s] that in actual economic practice, overcharges by the [dealer's] suppliers [e.g., Pierce] resulting from violations of state or federal antitrust laws are in fact borne by the City [or county]" and "assigns to the City [or county] any and all causes of action both now and in the future that it may have against [Pierce] under all state and federal antitrust laws for the [apparatuses] that are the subject of this Contract."

CAC ¶ 176; *see* Baltimore FAC ¶ 321. To hold on these facts, at this stage, that the dealers—and not NCAP cities and counties—were the direct purchasers would be error.

Under *AGC*, NCAPs are the paradigmatic victims antitrust laws were designed to protect and provide relief to: "consumer[s] . . . in the market in which trade was restrained . . . marketwide," where "output has been curtailed or prices enhanced." 459 U.S. at 539 & n.40. These U.S. localities suffer ongoing multi-year delays and supracompetitive prices for the Fire Apparatuses and parts needed to protect their communities as a result of Defendants' antitrust violations. CAC ¶¶ 378-470. If they do not have standing to seek relief, no one does.

## II. NCAPs Establish They Are Entitled to Some Relief, So No Claim Can Be Dismissed

Defendants' challenge to NCAPs' standing to seek certain forms of relief, even if meritorious, would not allow the Court to dismiss NCAPs' claims. This is because a request for relief "is not itself a part of the plaintiff's claim." *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002).[2] Thus:

> so long as the complaint sets out facts sufficient to support a reasonable inference that the plaintiff is entitled to *any* relief the court can grant, that the complaint does not demonstrate that plaintiff is entitled to a specific form of relief is not grounds for dismissal.

[2] *See Schoonover v. Schoonover*, 172 F.2d 526, 530 (10th Cir. 1949); *Jones v. Butler*, 663 F. App'x 468, 470 (7th Cir. 2016); 10 Moore's Federal Practice (Civil) § 54.70 (2026) ("The demand for judgment is not a part of the pleader's claim for relief, so the fact that the relief requested cannot be awarded does not justify a dismissal of the pleading for legal insufficiency."); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1255 (2d ed. 1990) (same).

*Johnson v. Rapid Sheet Metal, LLC*, 560 F. Supp. 3d 623, 629-30 (D.N.H. 2020) (quotation marks omitted). Indeed, under Rule 54(c), "a prevailing party may obtain any relief to which he's entitled even if he 'has not demanded such relief in [his] pleadings.'" *Bontkowski*, 305 F.3d at 762 (quoting Fed. R. Civ. P. 54(c)). Thus for example, in *In re Surescripts Antitrust Litig.*, the court declined to address defendants' *Ill. Brick* arguments because their federal-law counts (to which *Ill. Brick* applied) were effectively the same *claims* as their state-law counts (to which *Ill. Brick* did not apply), and "courts have the authority to dismiss deficient claims, but cannot dismiss legal theories." 608 F. Supp. 3d 629, 640 (N.D. Ill. 2022) (citing *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)).[3] Defendants' assertion that "[t]he Court may dismiss Plaintiffs' damages claims even if it declines to dismiss Plaintiffs' claims for injunctive relief" (Joint MTD NCAP Compl. at 14) is thus wrong. Defendants cite *In re Dealer Mgmt. Sys. Antitrust Litig.*, but there, unlike here, plaintiffs asserted separate *counts* for damages and injunctive relief. 362 F. Supp. 3d 510, 530-31 (N.D. Ill. 2019).

**III. NCAPs Have Standing to Seek Injunctive Relief**

Defendants misread *AGC*. *AGC* articulated the standard for *damages* standing under § 4 and expressly did not "consider" standing for "injunctive relief." *AGC*, 459 U.S. at 524. The Supreme Court has since explained that "the potential for duplicative recovery, the complexity of apportioning damages, and the existence of other parties that have been more directly harmed" are not "examined" for purposes of § 16 standing. *Cargill*, 479 U.S. at 111 n.6 (citing *AGC*, 459

[3] *See also, e.g.*, *Quillman v. IDOC*, 2018 U.S. Dist. LEXIS 126046, *7 (S.D. Ill. July 27, 2018) ("Plaintiff's only requested relief"—injunctive relief—was "not properly before the Court," but court nevertheless ordered "the case shall proceed" and "[t]he Court can ascertain whether Plaintiff wants to pursue other forms of relief as the case progresses."); *Kirby v. U.S. Dep't of Housing & Urban Dev.*, 745 F.2d 204, 207-08 (3d Cir. 1984); *Z Channel Ltd. P'ship v. Home Box Office, Inc.*, 931 F.2d 1338, 1340-42 (9th Cir. 1991); *Healey v. Andrews*, 2026 U.S. Dist. LEXIS 89637, *10 (N.D. Ill. Apr. 23, 2026).

U.S. at 544-45; *Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977)).[4] These § 4 inquiries are not relevant to § 16 because "one injunction is as effective as 100, and, concomitantly, . . . 100 injunctions are no more effective than one." *Mid-West Paper Prods.*, 596 F.2d at 594 n.85 (quoting *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 261 (1972)). Thus, for injunctive relief, "a private plaintiff must [only] allege 'threatened loss or damage "of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful."'" *Wilk*, 895 F.2d at 364 (quoting *Cargill*, 479 U.S. at 113 (quoting *Brunswick*, 429 U.S. at 489)).[5]

### *A. All NCAPs Face Threatened Injury in One or More Relevant Fire Apparatus Markets, Regardless of the Past Purchases They Identified in the Complaints*

Defendants first point out that not all NCAPs purchased a product in each relevant market.[6] As an initial matter, Defendants do not dispute that each NCAP ordered or purchased at least one Fire Apparatus in the Fire Apparatus market. It is thus irrelevant whether they also participated in any other market. Every single claim alleges anticompetitive harm in the Fire Apparatus market. NCAPs thus have standing under Defendants' own test. Br. at 4-5.

Furthermore, contrary to Defendants' assertions, *every* NCAP ordered or purchased at least one *Custom* Fire Apparatus (and thus a Custom Chassis), including Butte County, Hartford, Des Moines, and Tacoma. The Complaints define "Custom Pumpers" as "includ[ing] pumpers as

---

[4] *See also O'Neill v. Coca-Cola Co.*, 669 F. Supp. 217, 221 (N.D. Ill. 1987) ("[T]he various 'target area,' 'direct injury,' and 'zone of interest' tests devised to determine standing under Section 4 have not been adopted as Section 16 standing requirements" and "the proximity required under Section 16 is 'less constrained' than that required under Section 4") (quoting *Mid-West Paper Prods. Co. v. Cont'l Group*, 596 F.2d 573, 592 (3d Cir. 1979)).

[5] *Accord Laidlaw Acquisition Corp. v. Mayflower Grp., Inc.*, 636 F. Supp. 1513, 1516 (S.D. Ind. 1986); *O'Neill*, 669 F. Supp. at 221; *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 545 F. Supp. 765, 775 n.15 (N.D. Ill. 1982); *see, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 401, 399 (3d Cir. 2000) (reversing district court's denial of § 16 standing based on § 4 analysis); *Weser v. Prof'l Golfers' Ass'n*, 1979 U.S. Dist. LEXIS 11552, *23 (N.D. Ill. June 21, 1979).

[6] *See* Br. at 4-5 (§ I.A.1), 7 (I.B.1), 8 (§ I.B.3), 9 (§ I.C.2), 12 (§ I.F), 11-12 (§ I.E).

well as pumper-tankers," CAC ¶ 103; distinguish "light" (commercial) from "heavy" (Custom) rescues, ¶ 293; and nowhere allege that these NCAPs' apparatuses were built on commercial chassis.[7] But regardless, a plaintiff need not have *already* suffered "actual injury" for standing to obtain injunctive relief for *future* threatened harm in that market; rather, "§ 16 requires a showing only of 'threatened' loss or damage." *Cargill*, 479 U.S. at 110-11 (quoting 15 U.S.C. § 26).[8] Here, all NCAPs allege they are tasked with providing "essential fire suppression services" to their constituents, CAC ¶ 26; *see also id.* ¶¶ 25-61, and that Fire Apparatuses "are a necessity" to NCAPs' ability to carry out those services, *id.* ¶ 258. Cities and counties "currently have no choice but to continue to make purchases in the relevant markets to source this critical equipment." *Id.* ¶ 385; *see id.* ¶¶ 21-22, 258, 333. As the Complaints explain:

> Absent Court intervention, fire departments will continue to pay extractive prices . . . and suffer reduced choice, worsened terms, delivery delays, and other harms, which they must endure as they meet their obligations to protect the public safety far into the future.

*Id.* ¶ 385. NCAPs thus unquestionably allege future threatened harm in the Fire Apparatus markets from Defendants' anticompetitive conduct. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 814 (N.D. Ill. 2017); *Warfarin Sodium*, 214 F.3d at 402.[9]

---

[7] *See* App. E, E7 (Butte), E13 (Hartford), E18 (Tacoma), H27 (Des Moines). Indeed, the prices these NCAPs paid further confirm they purchased Custom Apparatuses. *See* CAC ¶ 215 (alleging Custom Pumpers "generally cost several hundreds of thousands of dollars more than commercial pumpers"); *compare* App. E, E7 (Butte, $874,000), E13 (Hartford, $874,000), E18 (Tacoma, $925,000), *with* CAC ¶¶ 407, 469 & Albuquerque Compl. ¶ 319 (Custom Pumpers costing around $900,000 around same time periods).

[8] *See also Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 591-92 (7th Cir. 1998); *Int'l Ass'n of Machinists & Aero. Workers, Loc. Lodge No. 1821 v. Verso Paper Corp.*, 80 F. Supp. 3d 247, 270-71 (D. Me. 2015).

[9] To be clear, the Fire Apparatus market is not merely a collection of "constituent" markets (*contra* Br. at 5, 9). Rather, it is a broader, self-standing relevant market that includes Custom,

More specifically, the Complaints allege fire departments require vehicles for (1) fire-suppression (Custom Pumpers) and (2) search-and-rescue (Custom Aerials), or both (Custom Quints), which constitute the majority of Fire Apparatus purchases. CAC ¶¶ 102-21, 120. NCAPs' fleets reflect these requirements. *See* App. E. Because Fire Apparatuses have a 10-20 year lifespan, NCAPs must continually replace these aging, purpose-built vehicles. CAC. ¶¶ 383. NCAPs will thus necessarily continue purchasing Custom Pumpers, Aerials, and/or Quints (and their underlying Custom Chassis) to serve their communities, alongside future purchases in the broader Fire Apparatus market. *See id*. ¶ 385. Likewise, NCAPs in wildland regions will continue purchasing in the Wildland Fire Apparatus market. *See id*.; *id.* ¶ 146; App. E, col. J. Because every NCAP alleges it is a "customer[] . . . in the affected market[s]," every NCAP "ha[s] antitrust standing." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 482 (7th Cir. 2020).

### ***B. All NCAPs Face Threatened Injury Resulting from All Defendants' Unlawful Acquisitions, Regardless of Which Defendants' Apparatuses They Purchased***

Defendants' next argument, that only NCAPs alleging past actual injury from purchasing a REV Group-, Pierce-, or BME-branded apparatus have standing to sue that defendant-group, is incorrect.[10] As an initial matter, no NCAP alleges it intends to purchase exclusively from one defendant-family's brand in the future.[11] But even if an NCAP never intended to purchase a

---

Wildland, and commercial apparatuses. CAC ¶¶ 182, 227-31; *see Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962) (relevant market can include valid antitrust submarkets); NCAP Opp. to Joint MTD NCAP Compl. at 19-22. The premise underlying Defendants' standing argument is thus wrong; the Complaints allege that the challenged acquisitions have impacted, and continue to impact, the broader Fire Apparatus market directly, as its own relevant antitrust market, not merely derivatively by virtue of impacting "constituent" markets.

[10] Br. at 5 (§ I.A.2), 12 (§ I.F), 7-8 (§ I.B.2), 10 (§ I.C.3).

[11] To the contrary, the Complaints show numerous NCAPs have a mix of REV Group-, Pierce-, and/or BME-branded apparatuses. *See* App. E., cols. A-D. Furthermore, the Complaints allege municipalities frequently consider multiple manufacturers for new apparatuses, regardless of their most recent purchase. *See, e.g.*, CAC ¶¶ 304, 395-96, 466.

specific defendant's Fire Apparatus, that would not alter its standing to sue that defendant. As alleged, Defendants' combinations caused marketwide effects, suppressing output to create a "price umbrella." This enabled all manufacturers to increase prices, which caused injury to NCAPs for which *Defendants* are liable. CAC ¶¶ 286, 379-82. The Seventh Circuit recognized such "umbrella damages" standing in *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 627 (7th Cir. 2003) (Easterbrook, J.).[12] Defendants ignore this authority and rely exclusively on out-of-circuit cases, at different procedural postures or on materially different facts, and employing reasoning Seventh Circuit courts have expressly rejected, to argue NCAPs who bought from other suppliers lack standing because their overcharges were not proximately caused by Defendants' conduct. Br. at 10-11. But as in-circuit precedent makes clear, umbrella damages may be "injuries proximately caused by defendants' antitrust violations." *In re Uranium*, 552 F. Supp. at 526.[13]

[12] Numerous courts inside and outside the Seventh Circuit recognize that "umbrella" plaintiffs may sue under antitrust laws. *See, e.g.*, *In re Uranium Antitrust Litig.*, 552 F. Supp. 518, 524 (N.D. Ill. 1982); *see id.* at 524-26 (immunizing defendants from paying the full overcharges they caused would undermine deterrence); *In re Copper Antitrust Litig.*, 2000 U.S. Dist. LEXIS 23741, *46-51 (W.D. Wis. Jul. 7, 2000) (denying motion to dismiss where plaintiff paid inflated prices to non-conspirators under the "price umbrella" created by conspiring defendants); *In re Ariz. Dairy Prods. Litig.,* 627 F. Supp. 233, 236 (D. Ariz. 1985); *Dale v. Deutsche Telekom AG*, 2023 U.S. Dist. LEXIS 196872, *33-34 (N.D. Ill. Nov. 2, 2023) (denying dismissal where an alleged merger curbed competition, causing "market-wide prices to be higher than they would have been otherwise"). These precedents align with scholarly commentary recognizing umbrella standing serves the policy goals of antitrust law. *See* Ahmed Alfaris, *Antitrust Standing for Umbrella Purchasers*, 58 U.S.F. L. Rev. 1, 27 (2023).

[13] *Schwab Short-Term Bond Mkt. Fund. v. Lloyds Banking Grp. PLC* is inapposite. *Schwab* involved a "unique" situation wherein defendants manipulated an index interest rate that "unlimited" numbers of third-party sellers of financial products could choose to reference or incorporate in their varying products. 22 F.4th 103, 117 (2nd Cir. 2021). In contrast, here, "the umbrella theory of standing makes a great deal of sense [because Defendants] and [their] competitors sell the same product[s], and the competitor is able to ride its price up on [Defendants'] price increase." Phillip Areeda & Herbert Hovenkamp, Antitrust Law ¶ 347 (3d ed. 2008 & Supp. 2026) (distinguishing *Schwab*).

### *C. Illinois Brick Is Irrelevant to Standing Under Clayton Act § 16*

Defendants next argue that under *Ill. Brick*, Santa Barbara, San Diego, Gilbert, and Oxnard lack standing to challenge certain acquisitions and all NCAPs lack standing to challenge the Pierce-BME combination. Br. at 7 (§ I.A.3), 8 (§ I.B.4), 9 (§ I.C.1). Factually, Defendants are incorrect; these plaintiffs were direct purchasers. *See infra*, Section IV. But even if NCAPs were indirect purchasers, they would still—and do—have standing. That is because "the direct-purchaser doctrine does not foreclose equitable relief." *U.S. Gypsum*, 350 F.3d at 627.[14] Indeed, the court can grant the same injunction to the indirect purchaser, dealer, and any other reseller in the chain, creating no risk of duplicative recoveries or difficulty in apportionment. *See Cargill*, 479 U.S. at 111 n.6. Thus, courts that deny indirect purchasers damages under § 4 routinely recognize those same plaintiffs' standing to obtain an injunction under § 16. *See, e.g.*, *Lucas Auto. Eng'g, Inc. v. Bridgestone/ Firestone, Inc.*, 140 F.3d 1228, 1235 (9th Cir. 1998) (district court erred in failing to "distinguish[] [plaintiff's] equitable claim from its treble damage claim" and in holding plaintiff "must buy directly from [defendant] to have standing to sue for any price increases [defendant] puts into effect") (collecting cases).[15]

Under this established precedent, all NCAPs have § 16 standing to enjoin Defendants'

---

[14] *Accord Campos v. Ticketmaster Corp.*, 140 F.3d 1166, 1172 (8th Cir. 1998) ("Indirect purchaser status does not bar the plaintiffs from seeking injunctive relief."); *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 80 (2d Cir. 2025) ("*Illinois Brick* does not preclude Plaintiffs from pursuing . . . injunctive relief."); *Mid-West Paper Prods.*, 596 F.2d at 594 (same); *Tasty Baking Co. v. Ralston Purina Inc.*, 653 F. Supp. 1250, 1255 (E.D. Pa. 1987) ("[T]he requirement of direct injury does not apply to claims for injunctive relief.").

[15] *See also, e.g.*, *Campos*, 140 F.3d at 1172; *Warfarin Sodium*, 214 F.3d at 399 ("Indirect purchaser status, however, is not fatal" to request for injunctive relief); *Mid-West Paper Prods.*, 596 F.2d at 594; *Pecover v. Elec. Arts, Inc.*, 633 F. Supp. 2d 976, 980 (N.D. Cal. 2009) (*Ill. Brick* did not bar injunctive relief); *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 456-57 (E.D. Pa. 2018) (same); *Carefirst of Md., Inc. v. Amgen, Inc.*, 2025 U.S. Dist. LEXIS 278922, *26-27 (E.D. Va. Sep. 30, 2025); *In re Dealer Mgmt.*, 362 F. Supp. 3d at 533-34 (same).

anticompetitive conduct. They allege clear proximate cause: Defendants' acquisitions increased market concentration, lessened competition, and enabled Defendants to reduce output, raise prices, and impose worsened terms like delivery delays on NCAPs. CAC ¶¶ 285-470. It is clear that NCAPs' "interests would be served . . . by enhanced competition in the market[s]" that an injunction can provide. *AGC*, 459 U.S. at 539 & n.40.

### *D. All NCAPs Face Threatened Future Injury in the Custom Chassis Market*

For the same reasons, all NCAPs face threatened future injury in the Custom Chassis market, conferring § 16 standing. Because every NCAP is a past and future consumer of Custom Fire Apparatuses, *see* App. E, col. I, each necessarily consumes Custom Chassis—the frames on which these apparatuses are built. Defendants' acquisitions harmed competition in both markets, enabling Custom Chassis manufacturers to impose higher prices and worse terms, thus threatening each NCAP with future injury. CAC ¶¶ 184; *see also id.* ¶¶ 304, 307-09, 311-14.

Defendants argue NCAPs "are not direct purchasers of custom chassis—the direct purchasers are other fire truck manufacturers." Br. at 10 (§ I.D). Defendants are simply wrong. While some manufacturers (mainly Spartan) supply chassis to smaller, non-vertically integrated builders, CAC ¶¶ 129, 143-44, 201, most—including REV Group and Pierce—manufacture their chassis. *Id*. ¶¶ 100, 126-29, 134, 137-43. Therefore, every NCAP Custom Apparatus purchase from these manufacturers constitutes a direct Custom Chassis purchase.

That NCAPs "purchase custom chassis as a component of a completed custom fire truck" (Br. at 11) does not make them indirect purchasers. To the contrary, courts consistently "have found antitrust standing where," as here, "plaintiffs purchased downstream goods" (Custom Fire Apparatuses) "directly from a . . . manufacturer[] who made, and [overcharged for], a component of those goods" (Custom Chassis). *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 291, 306 (N.D.

Cal. 2010) (citing *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 159-60 (3d Cir. 2002)). That is a "purchase[] directly from an alleged [monopolist]."[16]

As the foregoing makes clear, NCAPs are not "'downstream participants' in an allegedly restrained component market." Br. at 11 (quoting *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 U.S. Dist. LEXIS 119962, *44 (N.D. Ill. Aug. 23, 2013)). Nor were the Custom Chassis prices they paid merely "bas[ed]" on price-fixed products in a "separate" market. *In re Dairy Farmers*, 2013 U.S. Dist. LEXIS 119962, *33, *44-45. NCAPs are *direct* participants in the restrained market for Custom Chassis, unlike plaintiffs in Defendants' cited cases,[17] making proximate causation and directness of injury undeniable. Defendants argue that any injury occurred solely in the apparatus, not chassis, market. Br. at 11. But standing is not either/or; NCAPs participate in both markets. To be clear, non-vertically integrated builders who purchase Custom Chassis from Spartan *also* have standing to sue for *their* injuries, but those injuries are distinct from and in addition to—not duplicative of—NCAPs' direct injuries.

### *E. All Pierce Parts NCAPs Face Threatened Future Injury in Parts Markets*

Defendants concede 16 NCAPs have standing to challenge the Oshkosh Defendants' conduct in the Pierce parts market, but argue four NCAPs—Ebbetts Pass, Emeryville, Des

---

[16] *See also, e.g.*, *In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13, 18 (3d Cir. 1978); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 480 (W.D. Pa. 1999).

[17] *See Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 821 (7th Cir. 2015) (*Ill. Brick* barred § 4 standing not because only a component of the finished product plaintiff purchased was price-fixed, but because plaintiff was an indirect purchaser of the price-fixed product); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d 857, 863 (N.D. Cal. 2012) (plaintiffs "admi[tted]" that they "had never purchased [the price-fixed input], as opposed to a[] [finished product] containing [the price-fixed input]"); *Supreme Auto Transp. LLC v. Mittal*, 238 F. Supp. 3d 1032, 1040-41 (N.D. Ill. 2017) (denying standing to indirect purchasers based on numerous deficiencies, including that plaintiffs did "not even identify whether the steel in these products came from defendants' steel mills at all").

Moines, and Gilbert—lack standing because they purportedly "do not allege any purchases of replacement parts for Pierce trucks." Br. at 12-13 (§ I.G). Defendants are simply wrong as to Ebbetts Pass, Emeryville, and Gilbert. *See* App. E, col. K. As for Des Moines, it does not allege past purchases of Pierce parts but does allege threatened future injury given it has ordered a Pierce apparatus whose parts may need to be replaced in the future. *See id.*, K27.

### *F. NCAPs Have Standing Under State Law*

Because NCAPs suffer threatened injury caused by Defendants' illegal acts, they also have standing under state antitrust laws. *See* App. D, col. I. But Defendants' standing arguments do not apply to County and City Counsel's UCL claims, as no statutory standing requirements apply to these public law enforcers. *See id.*; Opp. to Joint MTD NCAP Compl. at 12-13.

## IV. *Illinois Brick* Does Not Bar NCAPs' Standing to Recover Damages

Because NCAPs have standing to seek injunctive relief for all claims, the inquiry ends. Every NCAP will benefit from a Court order restoring competition in the markets. But regardless, all of Defendants' Clayton Act § 4-specific standing challenges fail.

As discussed above, all NCAPs allege they have incurred injuries by paying overcharges and/or suffering delivery delays with respect to at least one Fire Apparatus (and indeed, at least one Custom Fire Apparatus and Custom Chassis) as a result of Defendants' anticompetitive conduct. *See supra*, Section III.A; App. E.[18] They thus have standing to recover damages.[19]

[18] Des Moines alleges it ordered, but has not yet purchased, an apparatus at a supracompetitive price. Des Moines FAC ¶ 322-23. Once it completes the purchase, it too will suffer damage.

[19] Notably, NCAPs are direct purchasers with respect to their umbrella damages claims, i.e., they purchased directly from competing manufacturers. *See* CAC ¶¶ 397, 427, 444, 457, 466; Tacoma Compl. ¶ 326; Baltimore FAC ¶ 320. "From the perspective of *Illinois Brick*," these damages "[a]re not derivative of" injuries from Defendants' direct sales; "[i]nstead, they form a separate and compensable injury," *Loeb Indus. v. Sumitomo Corp.*, 306 F.3d 469, 482-83 (7th Cir. 2002), as in *Sanner v. Bd. of Trade*, 62 F.3d 918, 929-30 (7th Cir. 1995).

Defendants overlook that NCAPs seek not just overcharge damages, but also delivery-delay damages. Fire departments now wait three, four, and in some cases five years for the fire trucks they ordered—multiples of historic delivery timelines. CAC ¶¶ 383, 393. The cost of delay is substantial and can be quantified. *Id.* These claimed delivery-delay damages raise none of the concerns with partial pass-through, apportionment, and duplication of damages that overcharge damages involve. It is the city or county—not any involved dealer—that suffers when delivery of lifesaving equipment is delayed. At a minimum, then, NCAPs have standing to pursue their delivery-delay damages. *See In re Deere & Co. Repair Serv. Antitrust Litig.*, 703 F. Supp. 3d 862, 877 (N.D. Ill. 2023) (*Ill. Brick* concerns do not apply where no "charge is being passed on from a direct purchaser to an indirect purchaser").[20]

As for apparatus overcharge damages, Defendants argue only that Santa Barbara's, San Diego's, Gilbert's, and Oxnard's claims are precluded by *Ill. Brick* on the ground "they allege that they purchased their custom fire trucks indirectly from Pierce dealers." Br. at 6-7. But:

> [I]t would be premature to address application of the [*Ill. Brick*] rule to the claims set forth in the [Complaints] . . . because the [NCAPs] . . . also invoke state law theories of relief that are ostensibly indifferent to direct purchaser status, making resolution of the defendants' *Illinois Brick* argument superfluous . . . .

*In re Surescripts*, 608 F. Supp. 3d at 639; App. D, col. J. Further militating against dismissal on *Ill. Brick* grounds is the fact-intensive nature of the inquiry (as illustrated by the discussion below) and NCAPs' satisfaction of the requirement to plausibly *allege* that they "b[o]r[e] . . . overcharge[s] directly." CAC ¶ 176. *See, e.g.*, *In re Deere*, 703 F. Supp. 3d at 874-75; *Chun v.*

[20] *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 606 (7th Cir. 1997) (Posner, C.J.) ("[T]he *Illinois Brick* rule, which is a rule concerning overcharges, would fall away" if the plaintiff asserted non-overcharge damages); *see, e.g.*, *Blue Shield of Va. v. McCready*, 457 U.S. 465, 474-75 (1982); *Mosaic Health*, 156 F.4th at 80 (finding standing where "[p]laintiffs seek damages" other than "for losses incurred due to increasing prices").

*Korean Air Lines Co.*, 2012 U.S. Dist. LEXIS 202328, *12-13 (C.D. Cal. Jan. 17, 2012).

First, NCAPs allege that even when involved in a purchase, dealers serve as mere conduits or agents for Pierce. CAC ¶¶ 148-149, 155-57, 160-81; Gilbert Compl. ¶¶ 322-23; Oxnard Compl. ¶ 321. Pierce works directly with purchasers to spec the apparatus, with dealers acting only as facilitators. *Id.* ¶¶ 148, 156, 163-65, 172, 179. Pierce—not the dealer—quotes the agreed price, with the dealer merely passing paperwork. *Id.* ¶¶ 166-72, 174-75, 177-78; Gilbert Compl. ¶¶ 322-23; Oxnard Compl. ¶ 321. The purchasing municipality, not the dealer, travels to Pierce's Wisconsin factories for manufacturing inspections. *E.g.*, CAC ¶ 173. Transaction paperwork confirms that if Pierce exercises its right to raise prices for supply chain costs, those increases are passed directly from Pierce to the purchaser, bypassing the dealer entirely. *Id.* ¶¶ 170, 174, 177-78; Oxnard Compl. ¶ 321.[21] There is no allegation that the dealer purchases the apparatus from Pierce, incurs the overcharge, and then re-sells the apparatus to the city or county. *See, e.g.*, *Diskin v. Daily Racing Form*, 1994 U.S. Dist. LEXIS 9129, *12-16 (S.D.N.Y. July 7, 1994) (jury could conclude from facts including that supplier set price end-users paid that supplier's "distributors [we]re merely agents" as opposed to "a distinct entrepreneurial link in the chain of distribution," and therefore *Ill. Brick* did not apply).

Indeed, Pierce's dealers expressly admit that "overcharges by [Pierce] resulting from violations of state or federal antitrust laws are in fact borne by the City [or county]." CAC ¶ 176; *see* Baltimore FAC ¶ 321. That is because cities and counties, "rather than [the dealer], [are] the one[s] who [are] shortchanged in the first instance by the alleged [anticompetitive conduct]"—

---

[21] Defendants misconstrue this provision of Santa Barbara's contract with a Pierce dealer as establishing that *the dealer* will pass a price increase imposed by Pierce on the dealer, through to Santa Barbara. To the contrary, as alleged in the Complaints, the language specifies that *Pierce* will pass on cost increases it experiences directly to Santa Barbara. CAC ¶ 174.

"both the first and only ones to have allegedly had to pay an overcharge for [apparatuses]." *In re Deere*, 703 F. Supp. 3d at 879 (citing *McCready*, 457 U.S. at 475).[22] Indeed, Pierce's dealers have neither the ability nor incentive to sue Pierce: In addition to, in some cases, assigning their right to sue to cities and counties, CAC ¶ 176; *see, e.g.*, *Kentucky v. Marathon Petroleum Co. LP*, 2018 U.S. Dist. LEXIS 165270, *28-*29 (W.D. Ky. Sep. 26, 2018), Pierce's dealers have directly *benefited* from Pierce's consolidation scheme and have never sued Pierce. CAC ¶¶ 180-81; *see Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 2012).

Further confirming that Pierce's dealers are mere conduits, and not sellers, is that Pierce controls and effectively owns them. CAC ¶¶ 160-81.[23] Oshkosh claims $16.9 million in net book value attributable to its dealers, announces regional dealership consolidations on its own website, and claims its dealer network is a "competitive advantage." CAC ¶¶ 162, 181. Pierce controls these dealers—for example, binding them to distribute BME products after Pierce acquired a 25% stake in BME, and preventing them from selling rival apparatuses. *Id.* ¶¶ 148, 160-61, 281. Pierce also negotiates direct sales contracts at pre-set prices with purchasing cooperatives ("co-ops") like Sourcewell and HGAC. *Id.* ¶¶ 155-57, 164-71, 175, 179; Gilbert Compl. ¶¶ 322-23. Participating municipalities stand in the co-op's shoes, inheriting this direct purchase-and-sale relationship with Pierce. *Id.* These contracts expressly require that if a municipality uses a dealer as a conduit, the dealer must honor Pierce's pre-negotiated co-op price. *E.g.,* CAC ¶¶ 156, 165-

[22] *See Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1212 (9th Cir. 1984) (no *Ill. Brick* bar where overcharges are borne entirely by end purchaser and none absorbed by intermediary).

[23] *See In re Brand Name Prescription Drugs Antitrust Litig.*,123 F.3d at 605 (*Ill. Brick* does not bar standing if the manufacturer exercises "modes of control" over dealer); *In re Mushroom Direct Purchaser Antitrust Litig.*, 2016 U.S. Dist. LEXIS 177839, *28 (E.D. Pa. Dec. 13, 2016) ("'functional economic or other unity'" between manufacturer and its dealer such that there has effectively been only one sale renders *Ill. Brick* inapplicable) (quoting *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 372 (3rd Cir. 2005)).

71, 175; Gilbert Compl. ¶¶ 322-23.[24] All of these facts plausibly allege Pierce controls its dealers and therefore is properly treated as the direct seller. *See Kloth v. Microsoft Corp.*, 444 F.3d 312, 321 (4th Cir. 2006) (citing *In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d at 605-06).[25] NCAPs' robust allegations go far beyond what many other courts have held sufficient at the pleading stage to allege direct-purchaser standing. *See, e.g.*, *City of Moundridge, KS v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 31-32 (D.D.C. 2007).

As for BME purchases, CAC ¶ 281 does not allege BME sells exclusively through Pierce dealers. It alleges instead that Pierce dealers are BME's exclusive distributors—i.e., no other dealers sell BME trucks, but BME may still sell direct to customers. Indeed, in August 2021, the LA County Plaintiffs placed a purchase order directly with BME for eight apparatuses. *Id.* ¶ 389.

## V. Conclusion

NCAPs have standing. The Court should deny Defendants' Motion.

Dated October 16, 2026

Respectfully Submitted,

By: /s/ Catherine S. Simonsen

Catherine S. Simonsen (CA SBN 307325)
Thomas G. Mattes (CA SBN 355010)
**SIMONSEN SUSSMAN LLP**
418 Bamboo Lane, Suite C-18
Los Angeles, CA 90012
Tel: (917) 747-5196

---

[24] City of San Diego, Gilbert, and Oxnard all used such co-op contracts with Pierce to purchase directly from Pierce. CAC ¶¶ 169-71, 407-411 (San Diego); Gilbert Compl. ¶¶ 110, 322-23; Oxnard Compl. ¶ 321. Santa Barbara worked directly with Pierce to spec its apparatus, and Pierce (not the dealer) provided the pricing and reserved the right to increase the price to Santa Barbara if Pierce experienced cost increases. CAC ¶¶ 172-74.

[25] *See, e.g.*, *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2021 U.S. Dist. LEXIS 90488, *41-43 (E.D. Pa. May 12, 2021) (denying summary judgment given evidence defendant set minimum prices to be charged by distributor); *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 702, 713 (D. Md. 2001) (setting of prices is "the critical issue" for control exception).

Fax: (646) 357-8447
Email: catherine@simonsensussman.com
E-mail: thomas.mattes@simonsensussman.com

Shaoul Sussman (NY SBN 5820782)
Nico Gurian (NY SBN 5590591)
Nathan Soderstrom (NY SBN 4718847)
Braden Fain (NY SBN 6198287)
**SIMONSEN SUSSMAN LLP**
307 West 38th Street, 16th Floor
New York, NY 10018
Tel: (646) 693-3929
Fax: (646) 357-8447
Email: shaoul@simonsensussman.com
Email: nico.gurian@simonsensussman.com
Email: nathan@simonsensumssman.com
Email: braden.fain@simonsensussman.com

Nicolas A. Stebinger (DC SBN 984080)
**SIMONSEN SUSSMAN LLP**
1629 K Street NW, Suite 300
Washington, DC 20006
Tel: (202) 384-3130
Fax: (646) 357-8447
Email: nicolas@simonsensussman.com

Jason J. Julius (CA SBN 249036)
Lindsay R. Stevens (CA SBN 256811)
**BARON & BUDD, P.C.**
11440 West Bernardo Court, Suite 265
San Diego, CA 92127
Tel: (858) 251-7424
Fax: (214) 523-6600
Email: jjulius@baronbudd.com
Email: lstevens@baronbudd.com

*Lead Counsel for Non-Class Action Plaintiffs People of the State of California, acting by and through the Los Angeles County Counsel, County of Los Angeles, and Consolidated Fire Protection District of Los Angeles County; People of the State of California, acting by and through the Office of County Counsel, County of San Diego, County of San Diego, and San Diego County Fire Protection District; People of the State of California, acting by and through the San Diego City Attorney's Office, and City of San Diego;*

*Ebbetts Pass Fire Protection District; City of Santa Barbara; County of Butte; County of Shasta; City of Oakland; City of Santa Clara; Unified Fire Authority; City of Hartford; City of Portland, Oregon; City of Allentown; City of Portsmouth; City of Green Bay; City of Yonkers; City of Tucson; City of Emeryville; City of Albuquerque; City of Tempe; Mayor & City Council of Baltimore; City of Des Moines; City of Tacoma; City of Tuscaloosa; City of Tampa; Town of Gilbert; City of Oxnard*

# APPENDIX D

## Standing

## APPENDIX D

| Col. | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| **Row** | **Law** | **Plaintiffs** | **Mergers & Acquisi-tions** | **Restraint of Trade/ Trust** | **Monopoliza-tion, Attempt, Conspiracy** | **Exclu-sive Dealing** | **Unfair Competi-tion/ Unfair Practices** | **Harmonization Statute?** |
| 1 | Federal Law | All NCAPs Except People of the State of California | Clayton Act § 7, 15 U.S.C. § 18 | Sherman Act § 1, 15 U.S.C. § 1 | Sherman Act § 2, 15 U.S.C. § 2 | Clayton Act § 3, 15 U.S.C. § 14 | - | N/A |
| 2 | Arizona Uniform State Antitrust Act | CAC Arizona Plaintiff City of Tucson; City of Tempe; Town of Gilbert | - | Ariz. Rev. Stat. § 44-1402 | Ariz. Rev. Stat. § 44-1403 | - | - | Ariz. Rev. Stat. § 44-1412 ("It is the intent of the legislature that in construing this article, the courts may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes.") |

# APPENDIX D

| Col. | A | I | J | K |
|---|---|---|---|---|
| **Row** | **Law** | **Standing-Injunctive Relief** | **Standing-Damages-*Illinois Brick* Applies?** | **Standing-Damages** |
| 1 | Federal Law | CAC ¶ 1098 pursuant to Clayton Act § 16, 15 U.S.C. § 26 ("Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws"); *see Wilk v. Am. Med. Ass'n* , 895 F.2d 352, 364 (7th Cir. 1990) ("To seek an injunction under § 16 of the Clayton Act, a private plaintiff must allege 'threatened loss or damage "of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful."'") (quoting *Cargill, Inc. v. Monfort of Colo. Inc.* , 479 U.S. 104, 113 (1986) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.* , 429 U.S. 477, 489 (1977))). | Yes | CAC ¶ 1098 pursuant to Clayton Act § 4, 15 U.S.C. § 15 ("any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States .... , and shall recover threefold the damages by him sustained")); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* , 459 U.S. 519, 545 (1983) (holding that whether a plaintiff may recover damages under § 4 of the Clayton Act depends on "the nature of the [plaintiff's] injury ... the relationship between the alleged antitrust violation and the [plaintiff's] alleged injury, the potential for duplicative recovery or complex apportionment of damages, and the existence of more direct victims of the alleged conspiracy"). |
| 2 | Arizona Uniform State Antitrust Act | CAC ¶¶ 630, 639, 647 [Arizona Law Pl.: Tucson]; Tempe Compl. ¶¶ 347, 356, 364, 375, 387, 397, 413, 421; Gilbert Compl. ¶¶ 358, 367, 375, 416, 427, 450, 458, 481, 490 (citing Ariz. Rev. Stat. § 44-1408 ("A. The state, a political subdivision or any public agency ... injured in its business or property by a violation of this article may bring an action for ... damages sustained.... B. A person threatened with injury or injured in his business or property by a violation of this article may bring an action for appropriate injunctive or other equitable relief, damages sustained and, as determined by the court, taxable costs and reasonable attorney's fees. If the trier of fact finds that the violation is flagrant, it shall increase recovery to an amount not in excess of three times the damages sustained.")); *see* Ariz. Rev. Stat. § 44-1401 ("'Person' means an individual, corporation, business trust, partnership, association or any other legal entity."); *see also In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.* , 383 F. Supp. 3d 187, 263 (S.D.N.Y. 2019) (holding that "the Arizona Supreme Court would not apply the *AGC* factors" even to damages claims, let alone claims for injunctive relief which have less stringent standing requirements (*see Cargill* , 479 U.S. 104, 111 n.6 ("[S]ome of the factors other than antitrust injury that are appropriate to a determination of standing under § 4 are not relevant under § 16.")). | No. *See Bunker's Glass Co. v. Pilkington PLC* , 206 Ariz. 9 (2003) (holding that indirect purchasers may sue under the Arizona Uniform State Antitrust Act) | CAC ¶¶ 629, 638, 646 [Arizona Law Pl.: Tucson]; Tempe Compl. ¶¶ 346, 355, 363, 373, 385, 396, 412, 420; Gilbert Compl. ¶¶ 357, 366, 374, 415, 426, 449, 457, 480, 489 (citing Ariz. Rev. Stat. § 44-1408 ("A. The state, a political subdivision or any public agency . . . injured in its business or property by a violation of this article may bring an action for ... damages sustained .... B. A person threatened with injury or injured in his business or property by a violation of this article may bring an action for appropriate injunctive or other equitable relief, damages sustained and, as determined by the court, taxable costs and reasonable attorney's fees. If the trier of fact finds that the violation is flagrant, it shall increase recovery to an amount not in excess of three times the damages sustained.")); *see* Ariz. Rev. Stat. § 44-1401 ("'Person' means an individual, corporation, business trust, partnership, association or any other legal entity."); *see also In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.* , 383 F. Supp. 3d 187, 263 (S.D.N.Y. 2019) (holding that "the Arizona Supreme Court would not apply the *AGC* factors") (citing *Bunker's Glass Co. v. Pilkington PLC* , 206 Ariz. 9 (2003); *Bunker's Glass Co. v. Pilkington PLC* , 202 Ariz. 481, 486 (Ct. App. 2002) (Arizona's antitrust law "must be liberally construed to carry out the purpose of protecting consumers."), *aff'd* , 206 Ariz. 9 (2003). |

# APPENDIX D

| Col. | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| **Row** | **Law** | **Plaintiffs** | **Mergers & Acquisi-tions** | **Restraint of Trade/ Trust** | **Monopoliza-tion, Attempt, Conspiracy** | **Exclu-sive Dealing** | **Unfair Competi-tion/ Unfair Practices** | **Harmonization Statute?** |
| 3 | California Unfair Competi-tion Law | People of the State of California, brought by Los Angeles and San Diego County Counsel and San Diego City Counsel | - | - | - | - | Cal. Bus. & Prof. Code § 17200 | No |
| 4 | California Cart-wright Act | CAC California Non-People Plaintiffs, City of Emeryville, City of Oxnard | - | Cal. Bus. & Prof. Code § 16720 | - | Cal. Bus. & Prof. Code § 16727 | - | No |

# APPENDIX D

| Col. | A | I | J | K |
|---|---|---|---|---|
| **Row** | **Law** | **Standing-Injunctive Relief** | **Standing-Damages-*Illinois Brick* Applies?** | **Standing-Damages** |
| 3 | California Unfair Competi-tion Law | CAC ¶¶ 1068, 1073, 1078 (citing Cal. Bus. & Prof. Code § 17203 ("Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, *but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state* .") (emphasis added)); *In re Tobacco II Cases* , 46 Cal. 4th 298, 314 (2009) (quoting *Californians for Disability Rts. v. Mervyn's, LLC* , 39 Cal. 4th 223, 228-29 (2006)) (explaining that § 17204's standing requirements, as incorporated into § 17203 for representative claims, "do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor"). | N/A | N/A |
| 4 | California Cart-wright Act | CAC ¶¶ 864, 982, 989; Emeryville Compl. ¶¶ 401, 421, 428; Oxnard Compl. ¶¶ 406, 426, 433 (citing Cal. Bus. & Prof. Code § 16750(a) ("Any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor ... to recover ... preliminary or permanent injunctive relief when and under the same conditions and principles as injunctive relief is granted by courts generally under the laws of this state and the rules governing these proceedings....")); *see In re Cal. Gasoline Spot Mkt. Antitrust Litig.* , 2022 U.S. Dist. LEXIS 142582, at *14 (N.D. Cal. Aug. 9, 2022) (holding that "in light of the California Supreme Court's repeated instruction that federal antitrust law does not control interpretation of the Cartwright Act, the California Supreme Court would not find the rationale set forth in *Vinci* persuasive and would not apply *AGC* " even to damages claims, let alone claims for injunctive relief which have less stringent standing requirements (*see Cargill* , 479 U.S. 104, 111 n.6 ("[S]ome of the factors other than antitrust injury that are appropriate to a determination of standing under § 4 are not relevant under § 16.")); *see also Cal. Dental Ass'n. v. Cal. Dental Hygienists' Ass'n.* , 222 Cal. App. 3d 49, 61 (1990) (holding that a plaintiff could "bring its claim for injunctive relief, to restrain alleged violations of public law which threaten injury"). | No. *See* Cal. Bus. & Prof. Code § 16750(a) ("This action may be brought by any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, regardless of whether such injured person dealt directly or indirectly with the defendant.") | CAC ¶¶ 863, 981, 988; Emeryville Compl. ¶¶ 400, 420, 427; Oxnard Compl. ¶¶ 405, 425, 432 (citing Cal. Bus. & Prof. Code § 16750(a) ("Any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor ... to recover three times the damages sustained by him or her....")); *see In re Cal. Gasoline Spot Mkt. Antitrust Litig.* , 2022 U.S. Dist. LEXIS 142582, at *14 (N.D. Cal. Aug. 9, 2022) ("In light of the California Supreme Court's repeated instruction that federal antitrust law does not control interpretation of the Cartwright Act, the California Supreme Court would not find the rationale set forth in *Vinci* persuasive and would not apply *AGC* ." (citation omitted)); *see also Kolling v. Dow Jones & Co.* , 137 Cal. App. 3d 709, 723 (1982) (the "'standing to sue' requirement is merely a rule that an action for violation of the antitrust laws may be maintained only by a party within the 'target area' of the antitrust violation, and not by one incidentally injured thereby .... An 'antitrust injury' must be proved; that is, the type of injury the antitrust laws were intended to prevent, and which flows from the invidious conduct which renders defendants' acts unlawful."); *In re Cipro Cases I & II* , 61 Cal. 4th 116, 160-61 (2015) ("The Cartwright Act is broader in range and deeper in reach than the Sherman Act." (citation omitted)). |

## APPENDIX D

| Col. | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| **Row** | **Law** | **Plaintiffs** | **Mergers & Acquisi-tions** | **Restraint of Trade/ Trust** | **Monopoliza-tion, Attempt, Conspiracy** | **Exclu-sive Dealing** | **Unfair Competi-tion/ Unfair Practices** | **Harmonization Statute?** |
| 5 | Connect-icut Antitrust Act | CAC Connecticut Plaintiff | - | Conn. Gen. Stat. §§ 35-26 & 35-28 | Conn. Gen. Stat. § 35-27 | - | - | Conn. Gen. Stat. § 35-44b ("It is the intent of the General Assembly that in construing sections 35-24 to 35-46, inclusive, the courts of this state shall be guided by interpretations given by the federal courts to federal antitrust statutes.") |
| 6 | Connect-icut Unfair Trade Practices Act | CAC Connecticut Plaintiff | - | - | - | - | Conn. Gen. Stat. § 42-110b | No |

# APPENDIX D

| Col. | A | I | J | K |
|---|---|---|---|---|
| **Row** | **Law** | **Standing-Injunctive Relief** | **Standing-Damages-*Illinois Brick* Applies?** | **Standing-Damages** |
| 5 | Connect-icut Antitrust Act | CAC ¶¶ 527, 536, 544, 719, 730, 740, 888, 896 (citing Conn. Gen. Stat. § 35-34 ("The state or any person, including, but not limited to, a consumer, may sue for injunctive relief, both temporary or permanent, against threatened loss or damage to its property or business by any violation of this chapter. In such actions the court shall follow the rules and principles governing the granting of injunctive relief.")); *see Tremont Pub. Advisors, LLC v. Conn. Res. Recovery Auth.* , 333 Conn. 672, 691 (2019) (Connecticut Supreme Court applying federal antitrust standing test because "we follow federal precedent when we interpret the [antitrust] act unless the text of the anti-trust statutes, or other pertinent state law, requires us to interpret it differently" (citation omitted)). | No. *See* Conn. Gen. Stat. § 35-46a ("In any action ... seeking treble damages under section 35-35, a defendant ... [m]ay not assert as a defense that the defendant did not deal directly with the person on whose behalf the action is brought."). | CAC ¶¶ 526, 535, 543, 718, 729, 739, 887, 895 (citing Conn. Gen. Stat. § 35-35 ("The state, or any person, including, but not limited to, a consumer, injured in its business or property by any violation of the provisions of this chapter shall recover treble damages, together with a reasonable attorney's fee and costs.")). The Connecticut Supreme Court "follow[s] federal precedent when we interpret the act unless the text of our anti-trust statutes [i.e., its *Illinois Brick* repealer], or other pertinent state law, requires us to interpret it differently." *Tremont Pub. Advisors, LLC v. Conn. Res. Recovery Auth.* , 333 Conn. 672, 691 (2019). Thus, "to have standing to bring a claim under the [Connecticut] antitrust act, a plaintiff must adequately plead both that it has suffered an antitrust injury and that it is an efficient enforcer of the antitrust act," *id.* at 692, with the efficient enforcer analysis guided by the *AGC* factors as informed by Connecticut's allowance of claims by indirect purchasers, *id.* at 680 n.7; Conn. Gen. Stat. § 35-46a. |
| 6 | Connect-icut Unfair Trade Practices Act | CAC ¶¶ 1084, 1090, 1096 (citing Conn. Gen. Stat. § 42-110g(a) ("Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business .... The court ... may provide such equitable relief as it deems necessary or proper.")); *see Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.* , 287 Conn. 208, 218-19 (2008) ("When plaintiffs seek only equitable relief, ascertainable loss and causation may be proven 'by establishing, through a reasonable inference, or otherwise, that the defendant's unfair trade practice has caused the plaintiff injury. . . . The fact that a plaintiff fails to prove a particular loss or the extent of the loss does not foreclose the plaintiff from obtaining *injunctive relief* and attorney's fees pursuant to CUTPA if the plaintiff is able to prove by a preponderance of the evidence that an unfair trade practice has occurred and a reasonable inference can be drawn by the trier of fact that the unfair trade practice has resulted in a loss to the plaintiff.'" (quoting *Serv. Rd. Corp. v. Quinn* , 241 Conn. 630, 644 (1997) (emphasis in original)); *see also Murphy v. McNamara* , 36 Conn. Supp. 183, 197 (Super. Ct. 1979) ("In order to fulfill its remedial purposes, the [CUTPA] must be construed to give the individual standing to bring suit for an actual or threatened loss. This is made clear by the provision of § 42-110g (d) which allows for attorney's fees in a class action where there is 'no monetary recovery, but other relief is granted.'"). | No. *See Soto v. Bushmaster Firearms Int'l, LLC* , 331 Conn. 53, 89 (2019) ("Nothing in the text of the statute indicates that the right afforded by § 42-110g(a) is enjoyed only by persons who have done business of some sort with a defendant."). | CAC ¶¶ 1084, 1090, 1096 (citing Conn. Gen. Stat. § 42-110g(a) ("Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages .... The court may, in its discretion, award punitive damages ....")); *see Soto v. Bushmaster Firearms Int'l, LLC* , 331 Conn. 53, 89-94 (2019) ("the statute plainly and unambiguously authorizes *anyone* who has suffered an ascertainable financial loss as a result of an unfair trade practice to bring a CUTPA action" as long as "the purportedly unfair trade practice is alleged to have directly and proximately caused the plaintiff's injuries") (emphasis in original). |

| Col. | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| **Row** | **Law** | **Plaintiffs** | **Mergers & Acquisitions** | **Restraint of Trade/ Trust** | **Monopolization, Attempt, Conspiracy** | **Exclusive Dealing** | **Unfair Competition/ Unfair Practices** | **Harmonization Statute?** |
| 7 | Iowa Competition Law | City of Des Moines | - | Iowa Competition Law § 553.4 | Iowa Competition Law § 553.5 | - | - | Iowa Competition Law § 553.2 ("This chapter shall be construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose as this chapter."). |
| 8 | Maryland Antitrust Act | City of Baltimore | - | Md. Code Ann., Com. Law § 11-204(a)(1) | Md. Code Ann., Com. Law § 11-204(a)(2) | - | - | Md. Code Ann., Com. Law § 11-202(a)(2) ("It is the intent of the General Assembly that, in construing this subtitle, the courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters."). |

# APPENDIX D

| Col. | A | I | J | K |
|---|---|---|---|---|
| **Row** | **Law** | **Standing-Injunctive Relief** | **Standing-Damages-*Illinois Brick* Applies?** | **Standing-Damages** |
| 7 | Iowa Competi-tion Law | Des Moines Am. Compl. ¶¶ 390, 401, 412, 419, 435, 458, 475, 484, 492 (citing Iowa Competition Law § 553.12 ("The state or a person who is injured or threatened with injury by conduct prohibited under this chapter may bring suit to . . . [p]revent or restrain conduct prohibited under this chapter and remove the conduct's effect by injunction, divestiture, divorcement, dissolution of domestic enterprises right to do business in this state, compelling the forfeiture or restraint of the issuance of a certificate of incorporation, permit to transact business, license, or franchise, or granting other equitable relief."); *see In re Broiler Chicken Antitrust Litig.* , 290 F. Supp. 3d 772, 816 (N.D. Ill. 2017) (holding that "any state with an *Illinois Brick* repealer would reject application of *AGC* " to damages claims brought by purchaser plaintiffs, let alone claims for injunctive relief which have less stringent standing requirements (*see Cargill* , 479 U.S. 104, 111 n.6 ("[S]ome of the factors other than antitrust injury that are appropriate to a determination of standing under § 4 are not relevant under § 16.")). | No. *See Comes v. Microsoft Corp.* , 646 N.W.2d 440, 445 (Iowa 2002) ("[T]he Iowa Competition Law creates a cause of action for all consumers, regardless of one's technical status as a direct or indirect purchaser"). | Des Moines Am. Compl. ¶¶ 389, 400, 411, 418, 434, 457, 474, 483, 491 (citing Iowa Competition Law § 553.12 ("The state or a person who is injured or threatened with injury by conduct prohibited under this chapter may bring suit to . . . [r]ecover actual damages resulting from conduct prohibited under this chapter [and] [r]ecover, at the court's discretion, exemplary damages which do not exceed twice the actual damages . . . if all of the following apply: a. The trier of fact determines that the prohibited conduct is willful or flagrant. b. The person bringing suit is not the state.")); *see In re Broiler Chicken Antitrust Litig.* , 290 F. Supp. 3d 772, 815-16 (N.D. Ill. 2017) (holding that "any state with an *Illinois Brick* repealer would reject application of *AGC* " to claims brought by purchaser plaintiffs and distinguishing *Southard v. Visa* , 734 N.W.2d 192, 198 (Iowa 2007), where the Iowa Supreme Court applied the *AGC* factors to *non-purchaser* plaintiffs); *see also Nemickas v. Linn Cnty. Anesthesiologists, P.C.* , 2018 Iowa App. LEXIS 474, at *11 (Iowa Ct. App. May 16, 2018) (applying the *AGC* factors to a non-purchaser plaintiff). |
| 8 | Maryland Antitrust Act | Baltimore Am. Compl. ¶¶ 394, 405, 415, 423, 439, 462, 471, 479, 488, 496 (citing Md. Code Ann., Com. Law § 11-209(b) ("The United States, the State, and any political subdivision organized under the authority of the State is a person having standing to bring an action under this subsection ... A person whose business or property has been injured or threatened with injury by a violation of § 11-204 of this subtitle may maintain an action ... for an injunction . . . against any person who has committed the violation regardless of whether the person maintaining the action dealt directly or indirectly with the person who has committed the violation.")); *see In re Broiler Chicken Antitrust Litig.* , 290 F. Supp. 3d 772, 816 (N.D. Ill. 2017) (holding that "any state with an *Illinois Brick* repealer would reject application of *AGC* " to damages claims brought by purchaser plaintiffs, let alone claims for injunctive relief which have less stringent standing requirements (*see Cargill* , 479 U.S. 104, 111 n.6 ("[S]ome of the factors other than antitrust injury that are appropriate to a determination of standing under § 4 are not relevant under § 16."))). | No. *See* Md. Code Ann., Com. Law § 11-209(b)(2)(i) ("A person whose business or property has been injured or threatened with injury by a violation of § 11-204 of this subtitle may maintain an action for damages or for an injunction or both against any person who has committed the violation regardless of whether the person maintaining the action dealt directly or indirectly with the person who has committed the violation."). | Baltimore Am. Compl. ¶¶ 393, 404, 414, 422, 438, 461, 470, 478, 487, 495 (citing Md. Code Ann., Com. Law § 11-209(b) ("The United States, the State, and any political subdivision organized under the authority of the State is a person having standing to bring an action under this subsection ... A person whose business or property has been injured or threatened with injury by a violation of § 11-204 of this subtitle may maintain an action for damages ... against any person who has committed the violation regardless of whether the person maintaining the action dealt directly or indirectly with the person who has committed the violation."); *see In re Broiler Chicken Antitrust Litig.* , 290 F. Supp. 3d 772, 815-16 (N.D. Ill. 2017) (holding that "any state with an *Illinois Brick* repealer would reject application of *AGC* " to claims brought by purchaser plaintiffs); *see also Waldorf Shopping Mall v. Great Atl. & Pac. Tea Co.* , 1984 Md. Cir. Ct. LEXIS 1 (Feb. 16, 1984) (applying *AGC* factors to Maryland Antitrust Act, but before Maryland's *Illinois Brick* repealer was enacted). |

## APPENDIX D

| Col. | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| **Row** | **Law** | **Plaintiffs** | **Mergers & Acquisi-tions** | **Restraint of Trade/ Trust** | **Monopoliza-tion, Attempt, Conspiracy** | **Exclu-sive Dealing** | **Unfair Competi-tion/ Unfair Practices** | **Harmonization Statute?** |
| 9 | New Mexico Antitrust Act | City of Albuquerque | - | N.M. Stat. Ann. § 57-1-1 | N.M. Stat. Ann. § 57-1-2 | - | - | N.M. Stat § 57-1-15 ("Unless otherwise provided in the Antitrust Act, the Antitrust Act shall be construed in harmony with judicial interpretations of the federal antitrust laws."). |
| 10 | New York Donnelly Act | CAC New York Plaintiff, City of White Plains | - | N.Y. Gen. Bus. Law § 340 et seq. | N.Y. Gen. Bus. Law § 340 et seq. | - | - | *People v. Rattenni* , 81 N.Y.2d 166, 171 (1993) (The Donnelly Act "should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result.") (citation omitted). |

# APPENDIX D

| Col. | A | I | J | K |
|---|---|---|---|---|
| **Row** | **Law** | **Standing-Injunctive Relief** | **Standing-Damages-*Illinois Brick* Applies?** | **Standing-Damages** |
| 9 | New Mexico Antitrust Act | Albuquerque Compl. ¶¶ 355, 364, 372, 413, 424, 434, 450, 458, 481, 490 (citing N.M. Stat. Ann. § 57-1-3 ("[A]ny person threatened with injury or injured in his business or property, directly or indirectly, by a violation of Section 57-1-1 or 57-1-2 NMSA 1978 may bring an action for appropriate injunctive relief.")); *see In re Broiler Chicken Antitrust Litig.* , 290 F. Supp. 3d 772, 816 (N.D. Ill. 2017) (holding that "any state with an *Illinois Brick* repealer would reject application of *AGC* " to damages claims brought by purchaser plaintiffs, let alone claims for injunctive relief which have less stringent standing requirements (*see Cargill* , 479 U.S. 104, 111 n.6 ("[S]ome of the factors other than antitrust injury that are appropriate to a determination of standing under § 4 are not relevant under § 16.")). | No. *See* N.M. Stat. Ann. § 57-1-3(A) ("[A]ny person threatened with injury or injured in his business or property, directly or indirectly, by a violation of Section 57-1-1 or 57-1-2 NMSA 1978 may bring an action for appropriate injunctive relief, up to threefold the damages sustained"). | Albuquerque Compl. ¶¶ 354, 363, 371, 412, 423, 433, 449, 457, 480, 489 (citing N.M. Stat. Ann. § 57-1-3 ("Any person threatened with injury or injured in his business or property, directly or indirectly, by a violation of Section 57-1-1 or 57-1-2 NMSA 1978 may bring an action for ... up to threefold the damages sustained, plus costs and reasonable attorneys' fees."); *see In re Broiler Chicken Antitrust Litig.* , 290 F. Supp. 3d 772, 815-16 (N.D. Ill. 2017) (holding that "any state with an *Illinois Brick* repealer would reject application of *AGC* " to claims brought by purchaser plaintiffs and distinguishing *Nass-Romero v. Visa USA, Inc.* , 279 P.3d 772, 780 (N.M. Ct. App. 2012), where a New Mexico appellate court applied the *AGC* factors to non-purchaser plaintiffs). |
| 10 | New York Donnelly Act | CAC ¶¶ 605, 614, 622, 938, 946 (citing N.Y. Gen. Bus. Law § 340 et seq.); *see Eagle Spring Water Co. v. Webb & Knapp, Inc.* , 236 N.Y.S.2d 266, 282 (N.Y. Sup. Ct. 1962) (granting an injunction for violations of the Donnelly Act where the court "found that the plaintiff is threatened with irreparable injury"); *Peekskill Theatre v. Advance Theatrical Co. of N.Y.* , 206 A.D. 138, 140 (N.Y. App. Div. 1923) (in a claim brought under N.Y. Gen. Bus. Law § 340, "the plaintiff is not confined to his action at law for damages; but the strong arm of equity can stop this unlawful interference by injunction; and to this equitable power plaintiff has appealed"); *In re Broiler Chicken Antitrust Litig.* , 290 F. Supp. 3d 772, 816 (N.D. Ill. 2017) (holding that "any state with an *Illinois Brick* repealer would reject application of *AGC* " to damages claims brought by purchaser plaintiffs, let alone claims for injunctive relief which have less stringent standing requirements (*see Cargill* , 479 U.S. 104, 111 n.6 ("[S]ome of the factors other than antitrust injury that are appropriate to a determination of standing under § 4 are not relevant under § 16.")). | No. *See* N.Y. Gen. Bus. Law § 340(6) ("In any action pursuant to this section, the fact that the state, or any political subdivision or public authority of the state, or any person who has sustained damages by reason of violation of this section has not dealt directly with the defendant shall not bar or otherwise limit recovery"). | CAC ¶¶ 605, 614, 622, 938, 946 (citing N.Y. Gen. Bus. Law § 340 et seq. ("The state, or any political subdivision or public authority of the state, or any person who shall sustain damages by reason of any violation of this section, shall recover three-fold the actual damages sustained thereby, as well as costs not exceeding ten thousand dollars, and reasonable attorneys' fees."); *see In re Broiler Chicken Antitrust Litig.* , 290 F. Supp. 3d 772, 815-16 (N.D. Ill. 2017) (holding that "any state with an *Illinois Brick* repealer would reject application of *AGC* " to claims brought by purchaser plaintiffs and distinguishing *Ho v. Visa U.S.A. Inc.* , 787 N.Y.S.2d 677 (Sup. Ct. 2004), where a New York trial court applied the AGC factors to non-purchaser plaintiffs). |

# APPENDIX D

| Col. | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| **Row** | **Law** | **Plaintiffs** | **Mergers & Acquisi-tions** | **Restraint of Trade/ Trust** | **Monopoliza-tion, Attempt, Conspiracy** | **Exclu-sive Dealing** | **Unfair Competi-tion/ Unfair Practices** | **Harmonization Statute?** |
| 11 | Oregon Antitrust Law | CAC Oregon Plaintiff | - | Or. Rev. Stat. § 646.725 | Or. Rev. Stat. § 646.730 | - | - | Or. Rev. Stat. § 646.715(2) ("The decisions of federal courts in construction of federal law relating to the same subject shall be persuasive authority in the construction of ORS 646.705"). |
| 12 | Utah Antitrust Act | CAC Utah Plaintiff | - | Utah Code Ann. § 76-16-510(1) | Utah Code Ann. § 76-16-510(2) | - | - | Utah Code Ann. § 76-16-502(2) ("The Legislature intends that the courts, in construing this part, will be guided by interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes."). |

## APPENDIX D

| Col. | A | I | J | K |
|---|---|---|---|---|
| **Row** | **Law** | **Standing-Injunctive Relief** | **Standing-Damages-*Illinois Brick* Applies?** | **Standing-Damages** |
| 11 | Oregon Antitrust Law | CAC ¶¶ 552, 561, 569, 750, 761, 771, 904, 912, 1016, 1025 (citing Or. Rev. Stat. § 646.770 ("Any person, including the state or a public body, threatened with injury to the person's business or property from a violation of ORS 646.725 (Prohibited acts) or 646.730 (Monopolies prohibited) may prosecute a suit for equitable relief.")); *see In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.* , 383 F. Supp. 3d 187, 261 (S.D.N.Y. 2019) (concluding there is no authority from Oregon state courts regarding the application of the *AGC* factors and therefore refusing to conclude that the Oregon Supreme Court would apply *AGC* to damages claims, let alone claims for injunctive relief which have less stringent standing requirements (*see Cargill* , 479 U.S. 104, 111 n.6 ("[S]ome of the factors other than antitrust injury that are appropriate to a determination of standing under § 4 are not relevant under § 16.")). | No. *See* Or. Rev. Stat. § 646.780(1)(a) ("An action authorized by this paragraph may be brought regardless of whether the plaintiff dealt directly or indirectly with the adverse party."). | CAC ¶¶ 553, 562, 570, 751, 762, 772, 905, 913, 1017, 1026 (citing Or. Rev. Stat. § 646.780 ("A person, the state or a public body may bring an action for an injury to the person's, the state's or the public body's business or property from a violation of ORS 646.705 . . . to 646.805 . . . and, upon prevailing in the action, shall recover three times the damages the person, the state or the public body sustained. An action authorized by this paragraph may be brought regardless of whether the plaintiff dealt directly or indirectly with the adverse party.")); *see In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.* , 383 F. Supp. 3d 187, 261 (S.D.N.Y. 2019) (concluding there is no authority from Oregon state courts regarding the application of the *AGC* factors and therefore refusing to conclude that the Oregon Supreme Court would apply *AGC* , and noting that in the one instance where an Oregon court applied the *AGC* factors, *Or. Laborers-Emp'rs Health & Welfare Tr. Fund v. Philip Morris, Inc.* , 17 F. Supp. 2d 1170 (D. Or. 1998), *aff'd* , 185 F.3d 957 (9th Cir. 1999), the question of whether to apply *AGC* was "not raised by the parties or analyzed by the court"). |
| 12 | Utah Antitrust Act | CAC ¶¶ 502, 511, 519, 688, 699, 709, 872, 880, 998 (citing Utah Code Ann. § 76-16-511 ("A person who is a citizen of this state or a resident of this state and who is injured or is threatened with injury in the person's business or property by a violation of this part may bring an action for injunctive relief and damages, regardless of whether the person dealt directly or indirectly with the defendant.")); *see In re Broiler Chicken Antitrust Litig.* , 290 F. Supp. 3d 772, 816 (N.D. Ill. 2017) (holding that "any state with an *Illinois Brick* repealer would reject application of *AGC* " to damages claims brought by purchaser plaintiffs, let alone claims for injunctive relief which have less stringent standing requirements (*see Cargill* , 479 U.S. 104, 111 n.6 ("[S]ome of the factors other than antitrust injury that are appropriate to a determination of standing under § 4 are not relevant under § 16.")). | No. *See* Utah Code Ann. § 76-16-511 ("A person who is a citizen of this state or a resident of this state and who is injured or is threatened with injury in the person's business or property by a violation of this part may bring an action for injunctive relief and damages, regardless of whether the person dealt directly or indirectly with the defendant."). | CAC ¶¶ 503, 512, 520, 689, 700, 710, 873, 881, 999 (citing Utah Code Ann. § 76-16-511 ("A person who is a citizen of this state or a resident of this state and who is injured or is threatened with injury in the person's business or property by a violation of this part may bring an action for injunctive relief and damages, regardless of whether the person dealt directly or indirectly with the defendant.")); *see In re Broiler Chicken Antitrust Litig.* , 290 F. Supp. 3d 772, 816 (N.D. Ill. 2017) (holding that "any state with an *Illinois Brick* repealer would reject application of *AGC* " to claims brought by purchaser plaintiffs). |

# APPENDIX D

| Col. | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| **Row** | **Law** | **Plaintiffs** | **Mergers & Acquisi-tions** | **Restraint of Trade/ Trust** | **Monopoliza-tion, Attempt, Conspiracy** | **Exclu-sive Dealing** | **Unfair Competi-tion/ Unfair Practices** | **Harmonization Statute?** |
| 13 | Wiscon-sin Antitrust Law | CAC Wisconsin Plaintiff, City of Allentown, City of Portsmouth, City of Green Bay, City of Tacoma, City of Tuscaloosa, City of Tampa | - | Wis. Stat. Ann. § 133.03(1) | Wis. Stat. Ann. § 133.03(2) | - | - | *Carlson & Erickson Builders v. Lampert Yards* , 190 Wis. 2d 650, 665 (1995) ("[T]he Wisconsin legislature intended to follow interpretations of the federal act for those sections of ch. 133 that were patterned after the federal Sherman Act."). |

# APPENDIX D

| Col. | A | I | J | K |
|---|---|---|---|---|
| **Row** | **Law** | **Standing-Injunctive Relief** | **Standing-Damages-*Illinois Brick* Applies?** | **Standing-Damages** |
| 13 | Wiscon-sin Antitrust Law | CAC ¶¶ 578, 588, 597, 782, 794, 805, 930, 1045 [Wisconsin Law Pls.: Allentown, Portsmouth, Green Bay]; Tacoma Compl. ¶¶ 362, 372, 381, 423, 435, 446, 471, 480, 504, 514; Tuscaloosa Compl. ¶¶ 357, 367, 376, 418, 430, 441, 466, 499, 509; Tampa Compl. ¶¶ 360, 370, 379, 421, 433, 444, 469, 478, 502, 512 (citing Wis. Stat. Ann. § 133.16 ("Any circuit court may prevent or restrain, by injunction or otherwise, any violation of this chapter. The department of justice, any district attorney or any person by complaint may institute actions or proceedings to prevent or restrain a violation of this chapter, setting forth the cause and grounds for the intervention of the court and praying that such violation, whether intended or continuing be enjoined or prohibited.")); *see In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.* , 383 F. Supp. 3d 187, 263 (S.D.N.Y. 2019) (finding that Wisconsin courts would not use *AGC* to damages claims, let alone claims for injunctive relief which have less stringent standing requirements (*see Cargill* , 479 U.S. 104, 111 n.6 ("[S]ome of the factors other than antitrust injury that are appropriate to a determination of standing under § 4 are not relevant under § 16.")). | No. *See* Wis. Stat. Ann. § 133.18(1)(a) ("any person injured, directly or indirectly, by reason of anything prohibited by this chapter may sue therefor and shall recover threefold the damages sustained by the person"). | CAC ¶¶ 576, 579, 586, 589, 595, 598, 780, 783, 792, 795, 803, 806, 919, 922, 928, 931, 1033, 1036, 1043, 1046 [Wisconsin Law Pls.: Allentown, Portsmouth, Green Bay]; Tacoma Compl. ¶¶ 363, 370, 373, 379, 382, 421, 424, 433, 436, 444, 447, 469, 472, 478, 481, 502, 505, 512, 515; Tuscaloosa Compl. ¶¶ 355, 358, 365, 368, 374, 377, 416, 419, 428, 431, 439, 442, 464, 467, 473, 476, 497, 500, 507, 510; Tampa Compl. ¶¶ 358, 361, 368, 371, 377, 380, 419, 422, 431, 434, 442, 445, 467, 470, 476, 479, 500, 503, 510, 513 (citing Wis. Stat. Ann. § 133.18 ("[A]ny person injured, directly or indirectly, by reason of anything prohibited by this chapter may sue therefor and shall recover threefold the damages sustained by the person and the cost of the suit, including reasonable attorney fees.")); *see Obstetrical & Gynecological Assocs. of Neenah, S.C. v. Landig* , 129 Wis. 2d 362 (Ct. App. 1986) (assessing antitrust standing under the Wisconsin Antitrust Law without considering the *AGC* factors); *see also In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.* , 383 F. Supp. 3d 187, 263 (S.D.N.Y. 2019) (finding that Wisconsin courts would not use *AGC* factors and that Wisconsin trial court that did so failed to consider *Landig* )). |

# APPENDIX E

## Apparatuses Purchased or in NCAPs' Fleets and NCAP Pierce Parts Purchases Identified in Complaints

## APPENDIX E

| | Column | A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Any Fire Apparatus | | | | **Custom Pumper** | **Custom Aerial** | **Custom Quint** | **Custom Other** | **Custom Chassis/ Apparatus** | **Wildland Apparatus** | **Pierce Replacement Parts** |
| **Row** | **Plaintiff** | **REV Group** | **Pierce** | **BME** | **Other** | **Any Manufacturer** | **Any Manufacturer** | **Any Manufacturer** | **Any Manufacturer** | **Any Manufacturer** | **Any Manufacturer** | **Pierce** |
| 1 | County of Los Angeles and Consolidated Fire Protection District of Los Angeles County | CAC ¶¶ 28, 387-88, 394 | CAC ¶¶ 28, 387, 398 | CAC ¶ 389 | CAC ¶¶ 28, 397 | CAC ¶¶ 28, 387, 393 | CAC ¶ 28 | CAC ¶¶ 28, 388 | | CAC ¶¶ 28, 387-88, 393-94, 397-98 | CAC ¶ 389 | CAC ¶¶ 390-92 |
| 2 | County of San Diego and San Diego County Fire Protection District | CAC ¶¶ 30, 400-03 | CAC ¶ 30 | | CAC ¶ 400 | CAC ¶¶ 400-03 | CAC ¶ 400 | | CAC ¶ 404 | CAC ¶¶ 400-04 | CAC ¶ 400 | CAC ¶ 405 |
| 3 | City of San Diego | | CAC ¶¶ 35, 407-11 | | | CAC ¶ 407 | CAC ¶ 408 | | CAC ¶ 410 | CAC ¶¶ 407-08, 410-11 | CAC ¶ 409 | CAC ¶¶ 413-15 |
| 4 | City of Oakland | | CAC ¶ 434 | | | CAC ¶¶ 46, 434 | CAC ¶¶ 46, 434 | | CAC ¶ 46 | CAC ¶¶ 46, 434 | CAC ¶ 46 | CAC ¶ 436 |
| 5 | City of Santa Barbara | | CAC ¶¶ 40, 422 | | CAC ¶ 422 | CAC ¶ 40 | CAC ¶¶ 40, 422 | | | CAC ¶¶ 40, 422 | CAC ¶¶ 40, 423 | CAC ¶ 424 |
| 6 | County of Shasta | CAC ¶ 431 | | | CAC ¶¶ 431-32 | CAC ¶ 431 | | | | CAC ¶ 431 | CAC ¶ 432 | - |
| 7 | County of Butte | CAC ¶ 426 | | | CAC ¶ 427 | CAC ¶ 426 ("contract[ed] ... to purchase two Smeal Pumpers for approximately $874,000 per unit") | | | CAC ¶¶ 426, 428 (Butte County "contract[ed] ... to purchase two Smeal Pumpers for approximately $874,000 per unit" and "[a] Spartan Heavy Rescue Apparatus.") | CAC ¶¶ 426, 428 | CAC ¶ 427 | - |
| 8 | Ebbetts Pass Fire Protection District | | CAC ¶¶ 38, 418-19 | | | CAC ¶¶ 38, 418-19 | | | CAC ¶ 38 | CAC ¶¶ 28, 418-19 | CAC ¶ 38 | CAC ¶ 420 (Ebbetts Pass "paid overcharges on Pierce replacement parts."); *see* ¶¶ 968-70 (Defendants' conduct "reduced competition" in U.S. Pierce replacement parts markets, causing "significant anticompetitive effects, leading to Plaintiffs' antitrust injury," "substantial injuries to their business and property," and future harm); ¶¶ 975-76, 981-82, 988-89. |

## APPENDIX E

| | Column | A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Any Fire Apparatus | | | | Custom Pumper | Custom Aerial | Custom Quint | Custom Other | Custom Chassis/ Apparatus | Wildland Apparatus | Pierce Replacement Parts |
| Row | Plaintiff | REV Group | Pierce | BME | Other | Any Manufacturer | Any Manufacturer | Any Manufacturer | Any Manufacturer | Any Manufacturer | Any Manufacturer | Pierce |
| 9 | City of Santa Clara | CAC ¶ 438 | CAC ¶ 438 | | | CAC ¶ 438 | CAC ¶¶ 438-39 | | CAC ¶ 47 | CAC ¶¶ 47, 438-39 | | CAC ¶ 440 |
| 10 | City of Emeryville | | Emeryville Compl. ¶¶ 22, 317-18 | | | Emeryville Compl. ¶¶ 22, 317-18 | | | | Emeryville Compl. ¶¶ 22, 317-18 | | Emeryville Compl. ¶ 319 (Emeryville "cannot get the parts they need for their apparatuses in a timely and cost-effective manner."); *see* ¶¶ 407-09 (Defendants' conduct "reduced competition" in U.S. Pierce replacement parts markets, causing "significant anticompetitive effects, leading to Plaintiffs' antitrust injury," "substantial injuries to its business and property," and future harm); ¶¶ 414-15, 420-21, 427-28. |
| 11 | City of Oxnard | | Oxnard Compl. ¶ 320 | | | Oxnard Compl. ¶ 320 | Oxnard Compl. ¶ 320 | | | Oxnard Compl. ¶ 320 | | Oxnard Compl. ¶ 322 |
| 12 | Unified Fire Authority | | CAC ¶¶ 51, 446 | | CAC ¶¶ 51, 442-45 | CAC ¶ 445 | CAC ¶¶ 442, 445 | | | CAC ¶¶ 442, 444-45 | CAC ¶ 443 | CAC ¶ 446 |
| 13 | City of Hartford | CAC ¶¶ 448, 450 | | | CAC ¶ 449 | CAC ¶ 448 ("contracted to purchase two E-ONE Typhoon pumpers, agreeing to pay approximately $874,000 per unit."), 450; *see* ¶ 126 (E-ONE "manufactures its Typhoon ... Custom Chassis" on which its "Custom Pumpers" are built). | | | | CAC ¶¶ 448, 450 | | - |
| 14 | City of Portland | | CAC ¶¶ 452-53 | | | CAC ¶¶ 452-53 | CAC ¶¶ 452-53 | | | CAC ¶¶ 452-53 | | CAC ¶ 454 |

<u>**APPENDIX E**</u>

| | Column | A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Any Fire Apparatus | | | | Custom Pumper | Custom Aerial | Custom Quint | Custom Other | Custom Chassis/ Apparatus | Wildland Apparatus | Pierce Replacement Parts |
| **Row** | **Plaintiff** | **REV Group** | **Pierce** | **BME** | **Other** | **Any Manufacturer** | **Any Manufacturer** | **Any Manufacturer** | **Any Manufacturer** | **Any Manufacturer** | **Any Manufacturer** | **Pierce** |
| 15 | City of Allentown | | | | CAC ¶¶ 56, 456-58 | CAC ¶¶ 456, 458 | CAC ¶¶ 456, 458 | | | CAC ¶¶ 456, 458 | | - |
| 16 | City of Portsmouth | | CAC ¶¶ 57, 460-61 | | CAC ¶ 57 | CAC ¶¶ 460-61 | CAC ¶ 461 | | CAC ¶ 460 | CAC ¶¶ 460-61 | | CAC ¶ 460 |
| 17 | City of Green Bay | CAC ¶¶ 58, 463 | CAC ¶¶ 58, 463 | | CAC ¶ 463 | CAC ¶¶ 463-64 | CAC ¶ 463 | | | CAC ¶¶ 463-64 | | CAC ¶ 463 |
| 18 | City of Tacoma | | Tacoma Compl. ¶ 327 | | Tacoma Compl. ¶¶ 321, 326 | Tacoma Compl. ¶ 326 ("ordered three comparable Rosenbauer pumpers for approximately $925,000 each"; "contracted to purchase two additional Rosenbauer pumpers at $998,000 each"); *see* ¶ 89 (Rosenbauer is one of "only five ... Custom Fire Apparatus builders" other than Defendants), ¶ 90 (same). | | | | Tacoma Compl. ¶ 326 | | Tacoma Compl. ¶ 327 |
| 19 | City of Tuscaloosa | | Tuscaloosa Compl. ¶ 321 | | | Tuscaloosa Compl. ¶ 321 | Tuscaloosa Compl. ¶ 321 | | | Tuscaloosa Compl. ¶ 321 | | Tuscaloosa Compl. ¶ 321 |
| 20 | City of Tampa | | Tampa Compl. ¶¶ 319, 325 | | Tampa Compl. ¶ 319 | Tampa Compl. ¶¶ 319, 325 | Tampa Compl. ¶¶ 319, 325 | | | Tampa Compl. ¶¶ 319, 325 | | Tampa Compl. ¶ 324 |
| 21 | City of Yonkers | CAC ¶¶ 60, 466-67 | | | CAC ¶ 466 | CAC ¶¶ 466-67 | CAC ¶¶ 466-67 | | | CAC ¶¶ 466-67 | | - |
| 22 | City of Tucson | | CAC ¶¶ 61, 469-70 | | CAC ¶ 61 | CAC ¶¶ 469-70 | CAC ¶¶ 469-70 | | | CAC ¶¶ 469-70 | | CAC ¶ 469 |
| 23 | City of Tempe | Tempe Compl. ¶ 281 | | | | Tempe Compl. ¶ 281 | Tempe Compl. ¶ 281 | | Tempe Compl. ¶ 281 | Tempe Compl. ¶ 281 | | - |

## APPENDIX E

| | Column | A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Any Fire Apparatus | | | | Custom Pumper | Custom Aerial | Custom Quint | Custom Other | Custom Chassis/ Apparatus | Wildland Apparatus | Pierce Replacement Parts |
| Row | Plaintiff | REV Group | Pierce | BME | Other | Any Manufacturer | Any Manufacturer | Any Manufacturer | Any Manufacturer | Any Manufacturer | Any Manufacturer | Pierce |
| 24 | Town of Gilbert | | Gilbert Compl. ¶¶ 22, 321, 324 | | | Gilbert Compl. ¶¶ 321, 324 | Gilbert Compl. ¶¶ 321, 324 | | | Gilbert Compl. ¶¶ 321, 324 | | Gilbert Compl. ¶¶ 22, 320 (Gilbert's fleet contains Pierce apparatuses and Defendants "drastically reduced options and increased prices for ... Pierce replacement parts to the Town."); *see* ¶¶ 464-66 (Defendants' conduct "reduced competition" in U.S. Pierce replacement parts markets, causing "significant anticompetitive effects, leading to Plaintiffs' antitrust injury," "substantial injuries to its business and property," and future harm); ¶¶ 471-72, 480-81, 489-90. |
| 25 | City of Albuquerque | Albuquerque Compl. ¶ 21 | Albuquerque Compl. ¶¶ 21, 319-20 | | | Albuquerque Compl. ¶¶ 319, 321 | Albuquerque Compl. ¶¶ 320-21 | | Albuquerque Compl. ¶ 320 | Albuquerque Compl. ¶¶ 83, 124, 319-20 | | Albuquerque Compl. ¶ 321 |
| 26 | City of Baltimore | Baltimore Am. Compl. ¶ 320 | Baltimore Am. Compl. ¶ 320 | | Baltimore Am. Compl. ¶¶ 320, 322 | Baltimore Am. Compl. ¶ 320 | Baltimore Am. Compl. ¶ 320 | | | Baltimore Am. Compl. ¶ 320 | | Baltimore Am. Compl. ¶ 327 |
| 27 | City of Des Moines | | Des Moines Am. Compl. ¶¶ 322-23 | | | | | | Des Moines Am. Compl. ¶ 322 ("contracted to purchase a Pierce Heavy Rescue ... , agreeing to pay approximately $1.5 million."), 323 | Des Moines Am. Compl. ¶¶ 322-23 | | Des Moines Am. Compl. ¶ 323 (Des Moines "may also pay overcharges on Pierce replacement parts as a result of Pierce's anticompetitive conduct" once it receives its Pierce apparatus and needs replacement parts); *see* ¶¶ 441-43 (Oshkosh Defendants' Pierce parts conduct "harmed competition" and "has produced significant anticompetitive effects, leading to the City's ... threatened antitrust injury"); ¶¶ 448-49, 457-58, 466-67. |